## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DELTA AIR LINES, INC.,

      Plaintiff,

    v.

MARRIOTT INTERNATIONAL,
INC.

      Defendant.

CIVIL ACTION NO.
_____

## COMPLAINT

Plaintiff Delta Air Lines, Inc. ("Delta"), for its Complaint against Defendant Marriott International, Inc. ("Marriott") for trademark infringement under federal and state law, trademark dilution under federal and state law, deceptive trade practices, unfair competition, and declaratory judgment, hereby alleges as follows:

## NATURE OF THE CASE

1.     Delta's claims arise out of Marriott's willful infringement and dilution, and efforts to trade off on—for Marriott's own commercial benefit—Delta's famous DELTA trademarks and Delta's hard-earned goodwill therein. Delta's trademarks that include the word DELTA, including along with the below-depicted sans-serif font and dark blue color scheme, are collectively referred to in

1

this Complaint as the "Delta Marks."  Marriott has embarked upon a calculated strategy of not only gratuitously using the name DELTA for its DELTA HOTELS chain of hotels in the United States, but also has adopted a sans-serif font and dark blue color scheme for its DELTA HOTELS business that closely mimics the font and color scheme used by Delta, as seen in the below example images of how each party presents the term DELTA:

**Delta**                              **Marriott**

          

Marriott's trademarks that include the word DELTA, including along with the above-depicted sans-serif font and dark blue color scheme, are collectively referred to in this Complaint as the "Delta Hotels Marks."  Moreover, Marriott has opened numerous "airport hotels" under the Delta Hotels Marks, and marketed the brand to consumers, including airline travelers, all in a concerted effort to sow confusion and trade off on Delta's strong reputation and trademark rights.  As a result of Marriott's conduct, consumers likely will believe that the DELTA HOTELS chain is owned by, affiliated with, or sponsored by Delta, and in particular that the chain is a joint venture or cobranding project between Delta and Marriott.  Such

confusion already has occurred in the marketplace, and will only continue to harm consumers unless Marriott's wrongful conduct is stopped.

2.     Marriott's conduct also is likely to dilute the strong and famous Delta Marks, which are well-recognized throughout the United States, including within the travel industry.  Because long after Delta established itself as the senior user of the DELTA mark, Marriott adopted similar marks and logos in connection with travel and related hospitality services, including airport hotels and airport shuttles, Marriott's use is likely to dilute the famous Delta Marks, thus severely harming Delta.

3.     Furthermore, Marriott has attempted to interfere with Delta's trademark rights by opposing several of Delta's trademark applications in the United States, among other jurisdictions, on the absurd grounds that certain of Delta's well-known Delta Marks in connection with travel and related hospitality services are likely to cause confusion with Marriott's upstart Delta Hotels Marks, notwithstanding Delta's clear priority.  Delta has attempted in good faith to negotiate an amicable resolution of the parties' trademark disputes, but Marriott has refused to cease interfering with Delta's trademark rights and causing consumer confusion.  It now seems apparent that Marriott's plan has been to barrel ahead with its Delta Hotels expansion in the United States, regardless of Delta's

attempts to make Marriott see reason.  As a result, Delta has been left with no choice but to file suit to protect its brand, its shareholders' investments, and its consumers from being confused.

4.    For these reasons, and as explained further below, Delta seeks permanent injunctive relief to stop Marriott's infringing and diluting activity, as well as monetary damages to compensate Delta from the harm suffered as a result of Marriott's use of the Delta Hotels Marks in violation of Delta's prior trademark rights.  Delta also seeks a declaratory judgment that (a) it owns senior trademark rights to the DELTA mark, and that the Delta Marks that Marriott has opposed in the United States thus do not infringe Marriott's subsequent Delta Hotels Marks, and (b) that the 2015 agreement that Delta and Marriott's predecessor in interest signed in order to address certain trademark applications in Hong Kong and China does not contain any binding obligations as to the United States, and does not prevent Delta from defending its rights to the Delta Marks against Marriott's infringement.

## **THE PARTIES**

5.    Plaintiff Delta is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 1030 Delta Boulevard, Atlanta, Georgia, 30320.

6.     Upon information and belief, Defendant Marriott is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 10400 Fernwood Road, Bethesda, Maryland 20817.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202. Delta's claims are based, in part, on violations of the Lanham Act, as amended, 15 U.S.C. §§ 1051–1127.  This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

8.     This Court has personal jurisdiction over Marriott because, upon information and belief, Marriott is registered and licensed to do business in the State of Georgia, and thus is a resident of Georgia.  Moreover, upon information and belief, Marriott conducts business within the State of Georgia and has committed trademark infringement within the State of Georgia.  Upon information and belief, Marriott manages and franchises a broad portfolio of hotels and related lodging facilities in the United States and around the world, including numerous hotels in this District.  Upon information and belief, Marriott also markets and advertises its DELTA HOTELS brand of hotels and provides booking services for those hotels, among other services, to consumers in this District.

9.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because Delta's trademark rights are located in this District and because Marriott resides in this District given that it is subject to personal jurisdiction in this District.

## DELTA, ITS SERVICES AND ITS DELTA TRADEMARKS

10.     Delta is a leader in travel and related services, including flight and hotel bookings, credit card rewards programs, and hospitality services such as providing food and beverages.  Delta also regularly partners with other companies in virtually every industry, including hotels, credit card providers, entertainment venues, sports teams, and charitable organizations, to name a few.  In the almost 100 years since Delta was established in 1925, the company has grown into the world's No. 1 airline by total revenue.  Delta serves nearly 200 million people every day, taking customers across its industry-leading global network to more than 300 destinations in more than 50 countries.  Delta operates significant hubs in the United States at airports in Atlanta, Boston, Detroit, Los Angeles, Minneapolis/St. Paul, New York (LaGuardia and John F. Kennedy), Salt Lake City, and Seattle.

11.     In addition to its air travel services, Delta also offers a range of related travel and hospitality services.  Delta operates lounges at both airports and

elsewhere under its DELTA SKY CLUB, DELTA SKY360 CLUB, and DELTA 360 marks around the world.  For instance, Delta currently operates over 50 Delta Sky Clubs in U.S. airports and has operated at least one DELTA 360 lounge in a hotel associated with a sports team.  Many other Delta lounges are in sports stadiums.

12.    Delta also regularly partners with other well-known brands to offer benefits to its customers.  For instance, through its DELTA VACATIONS brand, Delta partners with hotels and resorts to offer vacation packages that include both air transportation and hotel stays for its customers.  Delta also sometimes offers its customers free or discounted stays in hotels when customers' travel plans are impacted by flight disruptions.  Through its credit card program with American Express, it offers travelers frequent flyer points based on purchases, which cardholders can use for free or upgraded flights and other benefits—similar to credit cards that provide hotel points to customers.  And, through its partnership with Equinox, Delta offers workout classes to travelers aimed at combating jetlag. Delta also has partnered with Lyft to allow customers to link their SkyMiles and Lyft accounts to earn miles with Delta for every Lyft ride that they take in the U.S.

13.    Since its founding in 1925, Delta has developed and invested substantially in promoting a large portfolio of DELTA trademarks, including

DELTA, DELTA VACATIONS, DELTA SKY CLUB, DELTA ONE, DELTA 360, and DELTA SHUTTLE, among others, which consumers have come to associate exclusively with Delta and its services.  Since 2008, Delta has used the below sans-serif font and blue and white colors in connection with its Delta Marks.



14.    Delta has invested significant resources in developing and promoting its business under the Delta Marks.  The Delta Marks appear in a wide variety of advertisements and promotional materials, including billboards, airplanes, clothing, seats, equipment, food and beverage products and utensils, and accessories.  Delta also regularly places conspicuous signage and art including its Delta Marks in venues likely to be trafficked by travelers, such as airports and sports stadiums. Good design, prominence, and ubiquity have contributed to the Delta Marks being widely recognized.

15.    Delta owns hundreds of applications and/or registrations in the U.S. and globally for the Delta Marks.  In the United States, in addition to extensive common law rights in the Delta Marks, Delta owns dozens of federal trademark

registrations for DELTA marks, many of which are incontestable, as well as

pending applications, as reflected in the attached Exhibit A.  Some examples of

Delta's trademark registrations are set forth below:

| Mark | Reg. No. and Date | Goods and/or Services |
|---|---|---|
| DELTA | 654,915 11/19/1957 | Class 39: Air transportation of passengers, mail, express freight and cargo |
| DELTA VACATIONS | 2,408,003 11/28/2000 | Class 39: Passenger air transportation services; Packaged vacation booking services |
| DELTA ONE | 4,769,776 7/7/2015 | Class 39: air transportation services; air transportation services featuring a frequent flier bonus program; transportation services, namely, providing a specialized priority airline service with reservation services, enhanced airport ticketing processing, priority check-in, gate handling and aircraft boarding services, enhanced seating accommodations, enhanced personal space, computer connections and expanded meal services for passengers; delivery of goods by air and land; providing an on-line computer database in the field of travel information services and travel ticket reservations. |
| DELTA SHUTTLE | 1,703,774 7/28/1992 | Class 39: air transportation of persons, property and mail |
| DELTA 360 | 5,453,743 4/24/2018 | Class 35: Providing an incentive award program for customers through the issuance of bonus awards and service incentives for frequent air travel comprising elite passenger access to the following: transit lounge facilities for passenger relaxation, specialized priority airline service comprising reservation |

| Mark | Reg. No. and Date | Goods and/or Services |
|---|---|---|
| | | services, enhanced airport ticketing processing, expedited call waiting procedures, priority check-in, priority lobby check-in, dedicated service centers and club lanes, specialized priority and expedited security processing, expedited gate handling and aircraft boarding services, enhanced seating accommodations, enhanced personal space including specialized entertainment, computer connections, enhanced meal services and voucher values, priority baggage delivery, enhanced and expedited customer service responses for elite passengers.

Class 29: Air transportation services; transit lounge facilities for passenger relaxation; specialized priority airline service, namely, reservation services; enhanced airport ticketing processing; expedited call waiting procedures; priority check-in services; priority airport lobby check-in services featuring a dedicated service center and club lanes for elite passengers, expedited gate handling and aircraft boarding services, enhanced booking of seats for travel, enhanced personal transit lounge facility space with elite accommodations comprising access to computer connection ports, priority baggage delivery, and enhanced and expedited customer service responses for elite passengers. |
| DELTA AIR LINES | 970,418 10/9/1973 | Class 39: air transportation of persons, property, and mail. |
| DELTA CONNECTION | 1,428,763 2/10/1987 | Class 39: air transportation of persons, property, and mail. |
| DELTA EDGE | 4,964,549 5/24/2016 | Class 35: Providing travel management services; Providing business and commercial information in the field of business travel management and the |

| Mark | Reg. No. and Date | Goods and/or Services |
|------|-------------------|------------------------|
|  |  | business travel industry; Corporate travel management services; Sales management services in the field of air travel and air transportation; Preparation of business reports in the field of corporate travel management; Corporate travel management services, namely, providing report generation tools for planning, auditing, and tracking corporate travel expenses; and Providing an incentive award program for corporate travel customers through the issuance of bonus awards and service incentives for frequent corporate air travelers, namely, a specialized priority airline service with reservation services, enhanced airport ticketing processing, expedited call waiting procedures, and enhanced and expedited customer service responses for corporate travel passengers.<br><br>Class 39: Air transportation services; Air transportation services featuring a frequent flier bonus program for corporate travel partners and corporate travelers; Providing premium air transportation services for corporate travel passengers, namely, specialized priority airline service with reservation services, providing automated check-in and ticketing services for air travelers, enhanced airport ticketing processing, enhanced booking of seats for travel, priority airport passenger check-in services, enhanced and expedited customer service responses for corporate passengers; Airport passenger check in services featuring a corporate check-in recognition program; Providing an on-line computer database in the field of travel information services and travel ticket reservations; Travel services, namely, providing real-time monitoring in the nature of flight arrival and departure information, and rebooking services |

| Mark | Reg. No. and Date | Goods and/or Services |
|---|---|---|
| | | during irregular operation; Coordinating travel arrangements for individuals and for groups; On-line transportation reservation and travel ticket reservation services; Providing an on-line computer database in the field of travel information services; Providing an on-line searchable computer database featuring information on corporate travel management; and Providing a website featuring information on corporate travel. |
| DELTA STUDIO | 4,709,485 3/24/2014 | Class 38: Electronic transmission and streaming of digital media content for others via global and local computer networks; video-on-demand transmission services. Class 41: Entertainment and educational services, namely, providing non-downloadable movies, video games, music and television shows via a video-on-demand service. |
| DELTA SKY CLUB | 3,890,727 12/14/2010 | Class 39: Air transportation services featuring transit lounge facilities for passenger relaxation |
| DELTA COMFORT + | 5,492,400 6/12/2018 | Class 39: Air transportation services; air transportation services featuring a frequent flier bonus program; transportation services, namely, providing a specialized priority airline service with reservation services, enhanced airport ticketing processing, priority check-in, gate handling and aircraft boarding services, enhanced seating accommodations, enhanced personal space, computer connections and expanded meal services for passengers; delivery of goods by air and land; providing an on-line computer database in the field of travel information services and travel ticket reservations |

| Mark | Reg. No. and Date | Goods and/or Services |
|------|-------------------|------------------------|
| ▲ D E L T A \| YOUR BEST PARTNER | 5,525,218 7/24/2018 | Class 39:  passenger air transportation services; air transportation of persons, property and mail; transportation of goods, passengers and travelers by air; air transportation services featuring a frequent flier bonus program; airport baggage check in services; airport passenger check in services; arranging travel as a bonus program for credit card users; delivery of goods by air and land; providing an on-line computer database in the field of travel information services and travel ticket reservations; providing flight arrival and departure information; online reservation and booking of seats for travel; providing travel information via the internet; provision of travel information; travel and transport information service. |
| ▲ D E L T A  \| YOUR BEST PARTNER | 5,525,217 7/24/2018 | Class 39:  passenger air transportation services; air transportation of persons, property and mail; transportation of goods, passengers and travelers by air; air transportation services featuring a frequent flier bonus program; airport baggage check in services; airport passenger check in services; arranging travel as a bonus program for credit card users; delivery of goods by air and land; providing an on-line computer database in the field of travel information services and travel ticket reservations; providing flight arrival and departure information; online reservation and booking of seats for travel; providing travel information via the internet; provision of travel information; travel and transport information service |
| ▲ D E L T A OFFICIAL AIRLINE OF CHAMPIONS | 4,749,531 7/5/2015 | Class 39: Air transportation services; air transportation services featuring a frequent flier bonus program; transportation services, namely, |

| Mark | Reg. No. and Date | Goods and/or Services |
|------|------|------|
|  |  | providing a specialized priority airline service with reservation services; delivery of goods by air and land; providing an on-line computer database in the field of travel information services and travel ticket reservations; aircraft charter services; airport baggage check-in services not including security inspection; airline baggage claim services; airport passenger check-in services; airline services, namely, passenger ticketing, gate processing |

16.     The Delta Marks have developed tremendous goodwill and achieved widespread recognition and acclaim.  For instance, Delta's famous DELTA brand is among the 100 most valuable brands in the United States as determined by Kantar in its 2020 BrandZ report on the Top 100 Most Valuable US Brands.  Delta has been recognized on Fortune's top 50 Most Admired Company list for seven years in a row, and named the most admired airline in eight of the last nine years. For four consecutive years, Delta has been named one of the Fortune Best Companies to Work For.  Delta has ranked No. 1 in the Business Travel News Annual Airline survey for nine consecutive years.  It was named one of Fast Company's Most Innovative Companies Worldwide for two consecutive years. The Wall Street Journal named Delta the best U.S. airline for the third year in a row in 2019.

17.     As a result of the long and extensive use of the Delta Marks, and the significant sales, promotion, advertising, third-party acclaim, and commercial success under those marks, the Delta Marks have achieved such widespread public exposure and recognition that they are highly distinctive and have been well-known and famous among the general consuming public of the United States, as well as among consumers in Georgia, for many years.

<u>**MARRIOTT'S INFRINGEMENT AND DILUTION<br>OF THE DELTA MARKS**</u>

18.     Like Delta, Marriott operates in the travel industry and partners with a variety of businesses, including airlines.  Marriott manages and franchises a broad portfolio of hotels and related lodging facilities in the United States and around the world.  Marriott does not only operate under the MARRIOTT name, but rather operates over 30 famous or well-known hotel brands in the United States, including The Ritz-Carlton, St. Regis, W Hotels, JW Marriott, Sheraton, Westin, Le Meridien, Renaissance Hotels, Courtyard, Springhill Suites, AC Hotels, and Residence Inn.

19.     In 2015, Marriott acquired Delta Hotel Limited Partnership ("DHLP"), a hotelier that operated solely in Canada, with no presence in the United States.  Upon information and belief, DHLP or its predecessor previously had operated a Delta Hotel in Hong Kong.  In addition, upon information and

belief, DHLP or its predecessor also had previously operated a hotel called Delta
Court of Flags in Orlando for a brief period of time in the 1990s, but that hotel was
subsequently closed and demolished in or around 1996, after which DHLP
abandoned any rights to the mark in the United States.  DHLP had not otherwise
operated in the United States during the course of its history.

20.    Prior to Marriott's acquisition, DHLP used the below distinctive
logos, which included a highly styled, curling "D" design and serif font
(collectively, the "DHLP Marks").

  

21.    In 2015, long after Delta had established strong rights to its famous
Delta Marks, Marriott acquired DHLP.  Marriott easily could have simply
continued to operate the Delta Hotel chain in Canada under the DHLP Marks.  It
also could have used one of its numerous other hotel brand names, or selected a
new name, if it wanted to further expand its hotel business into Delta's home
market, the United States.  Instead, Marriott rapidly expanded the Delta Hotel
chain to the United States (as well as internationally) and rebranded to the Delta
Hotels Marks, which closely mimic the Delta Marks.  Upon information and belief,

a central reason that Marriott acquired the Canadian Delta Hotel chain was to leverage the DHLP acquisition to trade off Delta's famous Delta Marks and consumer recognition. A review of the changes that Marriott made to the longstanding DHLP Marks, which were used prior to Marriott's acquisition and launch in the United States, makes this clear. For instance, Marriott dispensed with the stylized, curling "D" design and serif font the DHLP Marks depicted in Paragraph 20 and adopted the following logo, which uses a straight "D" design and sans-serif font, as depicted below (the "Delta Hotels Vertical Logo").



22. Notably, in addition to eliminating the stylized, curling "D" design in the DHLP Marks that DHLP had used for decades, Marriott also, not coincidentally, changed DHLP's longstanding color scheme from a bright blue to a dark blue color that more closely mimics and causes confusion with the Delta Marks. As shown below, these changes brought the Delta Hotels Marks much closer to the Delta Marks, thus virtually guaranteeing that confusion would ensue when Marriott expanded the hotel chain to the United States.

| DHLP Mark | Delta Hotels Mark | Delta Mark |
|---|---|---|



23.    Some of Marriott's Delta Hotels in the United States use the Delta Hotels Vertical Logo, such as the Seattle hotel shown below:



24.    Other Delta Hotels instead feature signage using the DELTA HOTELS mark with "Marriott" displayed after it in small capital letters, all using the same font.  For example, below is the signage displayed on Marriott's Delta Hotel in Milwaukee, Wisconsin.

18



25.    Some of the new Delta Hotels do not use the Marriott name at all on their external signage.  For example, below is the signage displayed on Marriott's Delta Hotel in Grand Rapids, Michigan, which uses only the DELTA HOTELS mark.



26.     Regardless, Marriott's inclusion of the Marriott name in connection with the Delta Hotels Marks does nothing to prevent consumers from mistakenly believing there is a connection, sponsorship, or association with Delta.  In fact, the inclusion of the Marriott name serves only to increase the likelihood of confusion as it communicates to consumers that the Delta Hotels chain is a cobranded joint venture or partnership between Delta and Marriott.  This is particularly likely given that both Delta and Marriott regularly partner with other businesses, including that Delta regularly partners with hotels and Marriott regularly partners with airlines.

27.     Marriott further exacerbates the likelihood of confusion by specifically branding various of its Delta Hotels as "airport" hotels and branding its airport shuttles with the Delta Hotels Marks, as shown below.  Such airport shuttles

can regularly be seen arriving, idling at, and leaving the U.S. airports from which Delta flies.





28.    The overall look and presentation of Marriott's advertising also increases the likelihood of confusion as it uses a dark blue and white color scheme and modern design—design elements associated with Delta.  Below is an example of Marriott's website where it uses the Delta Hotels Marks.



29.    Marriott also has promoted an extensive social media campaign that associates Delta Hotels and Delta.  For example, in January 2019 Marriott's official Delta Hotels Instagram account tagged a photo of two dogs at a Delta Hotels location with the hashtag #DogsofDelta, mimicking a Delta campaign from 2014 in which Instagram users tagged photos of their dogs on Delta's airplanes with the same #DogsofDelta hashtag.  Exemplifying the confusion caused by Marriot's deliberate imitation of the Delta Marks, consumers have since used #DogsofDelta to tag photos that they posted of their dogs both while travelling on Delta's airplanes and while staying at Marriott's Delta Hotels.  As a result, when an Instagram user selects the #DogsofDelta hashtag, he or she sees images of both Delta's and Marriott's travel services, as shown in the images below.  Below are

the results shown on Instagram (as of March 6, 2020) based on a search using the #DogsofDelta hashtag.  The image shown on the bottom right is an Instagram user's photo of a dog on a Delta flight, and the two images on the top left are photos of dogs at Delta Hotels locations.



30.    Marriott's marketing of its DELTA HOTELS in the United States using the Delta Hotels Marks has already caused actual confusion among travelers. As one traveler in June 2019 noted on the website TripAdvisor when reviewing a

Delta Hotels location that featured the Delta Hotels Marks, the Delta Hotel "is confusing and misleading as for some reason I thought it is associated with Delta airlines and can get miles, etc."

31.    Actual confusion has also occurred offline.  For example, shortly following the opening of a Delta Hotels property in Minneapolis that featured the Delta Hotels Marks, the President and COO of a multi-million dollar company headquartered in the Twin Cities approached Delta seeking to enter into a partnership with the Delta Hotels hotel chain.  After seeing the Delta Hotels signage, that businessman stated that he assumed that Delta had started offering hotel services under its famous DELTA mark.

32.    This confusion is not surprising given Delta's long history of using the Delta Marks, including its incontestable DELTA VACATIONS mark, which it has used in the United States since at least 2000 to partner with hotels and resorts to offer packages including air travel and lodging to customers both in and out of the United States.

## MARRIOTT'S INTERFERENCE WITH DELTA'S TRADEMARK RIGHTS

33.    Not only has Marriott caused confusion with its deceptively branded Delta Hotels in the United States, but Marriott has also embarked on a campaign to

interfere with Delta's trademark rights in a misguided attempt to create leverage and force Delta to agree to Marriott's expansion plans.

34.     Shortly after Marriott's acquisition of DHLP, Marriott began opposing Delta's pending U.S. trademark applications.  On September 3, 2015, Marriott sought an extension of time to oppose the registration of Delta's DELTA ONE mark.  On January 12, 2016, Marriott sought an extension of time to oppose Delta's DELTA ONE AT LAX mark. On July 24, 2017, Marriott sought an extension of time to oppose Delta's DELTA SKY CLUB mark.  Marriott has since filed oppositions against all three of these applications.  Those oppositions are now pending before the U.S. Patent and Trademark Office ("USPTO"), Trademark Trial and Appeal Board.

35.     Incredibly, in those oppositions Marriott has claimed that Delta's use of its DELTA trademarks in connection with providing food and beverage services to its customers (as Delta has done for many decades, long prior to DHLP's or Marriott's use of the DELTA name for its hotels) is likely to infringe Marriott's rights in its use of DELTA for its hotels.  Marriott contends that Delta's marks are "likely to cause confusion, mistake, and deception as to the source or origin" of Delta's services.  In support of its contention, Marriott has admitted that there is

likely to be overlap between the parties' prospective customers. Yet, Marriott

blithely continues to come closer and closer to Delta's business and its marks.

36.    Marriott has also opposed Delta's application to register its DELTA

SKY CLUB mark in the European Union.

37.    At the same time, Marriott has been demanding that Delta consent to

Marriott's various applications to register the Delta Hotels Marks in various

jurisdictions around the world. Marriott relies on a March 25, 2015 "Trade Mark

Coexistence Agreement" entered into between DHLP and Delta (the "Hong Kong

Agreement"), which expressly was limited to issues relating to trademark

applications in Hong Kong and the People's Republic of China. The Hong Kong

Agreement is governed by Hong Kong law. While Marriott points to Clause 9 of

the Hong Kong Agreement, that clause, by its plain terms, is merely a non-binding

"agreement to agree," simply requiring the parties to discuss "in good faith"

trademark issues in other jurisdictions. It provides:

> Each of Delta Hotels and Delta Air Lines undertakes to the other that
> it will cooperate in good faith to agree upon a mutually acceptable
> compromise, consent and/or co-existence along the lines set forth in
> this Agreement if the Delta Hotel Marks and the Delta Air Lines
> Marks, or similar variations including transliteration in Chinese and
> other languages thereof and marks for or comprising "DELTA" such
> as "DELTA VACATIONS" owned by Delta Air Lines, appear to
> conflict or overlap in other jurisdictions in the future.

The Hong Kong Agreement does not allow Marriott to enter Delta's home market in the United States with marks that will confuse consumers and dilute Delta's famous marks.

38.    To make matters even worse, Marriott has filed over 70 applications around the world in over 40 jurisdictions to register "DELTA" as a trademark on its own, without including the words "HOTELS" or "MARRIOTT" to distinguish Marriott's services from those of Delta.  Thus, upon information and belief, it appears that Marriott intends to use DELTA alone for its hotels.

39.    Because Delta believes that Marriott is a valued business partner, it has engaged in extensive negotiations over the disputes identified above, hoping to get Marriott to realize the commercial harm its activities are causing Delta. Despite the lengthy negotiations between the parties, Marriott has refused to discontinue its confusing practices.

40.    To the contrary, Marriott has expanded its use of the confusingly similar Delta Hotels Marks in the United States.  Even after learning of the instance of actual confusion by the business executive in Minneapolis, Marriott opened more than a dozen additional DELTA HOTELS using the Delta Hotels Marks, including multiple "airport" hotels and has plans to open more.  It now seems apparent that Marriott has been attempting to string Delta along with

virtually endless, spaced-out negotiations that never provide meaningful relief

while at the same time it bulldozes ahead with its plans to trade off the Delta

Marks.

41.     Although Marriott continues to express a purported willingness to

work with Delta to prevent the consumer confusion that is currently occurring in

the marketplace, its failure to take meaningful measures to prevent confusion has

left Delta with no choice but to bring this action.

## COUNT I
## INFRINGEMENT OF REGISTERED TRADEMARKS
## (SECTION 32 OF THE LANHAM ACT, 15 U.S.C. § 1114)

42.     Delta repeats and realleges each and every allegation in paragraphs 1

through 41 as if fully set forth herein.

43.     Delta has prior rights over Marriott in and to the Delta Marks in the

United States by virtue of its use of the Delta Marks in interstate commerce and as

evidenced by Delta's federal trademark registrations, as reflected in the

registrations listed in Exhibit A (the "Registered Delta Marks").

44.     The Registered Delta Marks are valid, subsisting, used in commerce

and inherently distinctive.  The Registered Delta Marks have acquired secondary

meaning in the marketplace.  Many of these marks have been declared

incontestable by the USPTO.

45.    The Delta Hotels Marks are confusingly similar to Delta's Registered Delta Marks.

46.    Marriott's use of the Delta Hotels Marks is likely to cause confusion with the Registered Delta Marks.  Consumers seeking travel accommodations likely will believe that Marriott's hotels are sponsored by, associated with, or otherwise affiliated with Delta because of Marriott's use of the confusingly similar Delta Hotels Marks.

47.    Marriott's use of the confusingly similar Delta Hotels Marks is likely to cause irreparable injury to the name and reputation of Delta, as well as to the goodwill carefully cultivated by Delta.  The extent of this harm cannot be quantified, and therefore leaves Delta with no adequate remedy at law.

48.    Marriott's use of the Delta Hotels Marks constitutes infringement of the Registered Delta Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

49.    By reason of the foregoing, Delta is entitled to permanent injunctive relief against Marriott, restraining it and all those in active concert and participation with Marriott (including its Delta Hotels franchisees) from any further acts of infringement, and to recovery of any damages (to the extent calculable) proven to have been caused by reason of Marriott's aforesaid acts.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## (SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(A))

50.    Delta repeats and realleges each and every allegation in in paragraphs 1 through 49 as if fully set forth herein.

51.    The Delta Marks are protected as common law trademarks by virtue of Delta's longtime use of such marks in the marketplace.

52.    As noted above, the Delta Hotels Marks, which have been promoted, distributed, and used in commerce, are confusingly similar to the Delta Marks. Marriott's use of the Delta Hotels Marks implies to consumers that its services come from the same source as Delta's services.  Such implications are false, confusing to consumers, and material to consumers' purchasing decisions.

53.    Marriott's unauthorized use of the Delta Hotels Marks in connection with the promotion or sale of its services falsely suggests that these services are connected with, sponsored by, affiliated with, or related to, Delta.

54.    Marriott's unauthorized use of the Delta Hotel Marks constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

55.    Marriott's conduct has damaged Delta and, unless enjoined by the Court, will further impair the value of Delta's name, reputation, and goodwill. This harm constitutes an injury for which Delta has no adequate remedy at law.

56.     By reason of the foregoing, Delta is entitled to permanent injunctive relief against Marriott, restraining it and all those in active concert and participation with Marriott (including its Delta Hotels franchisees) from any further acts of trademark infringement, and to recovery of any damages (to the extent calculable) proven to have been caused by reason of Marriott's aforesaid acts.

## COUNT III
## DECEPTIVE TRADE PRACTICES
## (O.C.G.A. § 10-1-372 ET SEQ.)

57.     Delta repeats and realleges each and every allegation in paragraphs 1 through 56 as if fully set forth herein.

58.     The aforementioned acts by Marriott constitute deceptive trade practices in violation of Georgia law, O.C.G.A. § 10-1-372 *et seq.*

59.     Marriott's conduct has damaged Delta and will, unless enjoined by the Court, further impair the value of Delta's name, reputation, and goodwill.  This harm constitutes an injury for which Delta has no adequate remedy at law.

60.     By reason of the foregoing, Delta is entitled to permanent injunctive relief against Marriott, restraining it and all those in active concert and participation with Marriott (including its Delta Hotels franchisees) from any

further acts of deceptive trade practices and recovery of any damages (to the extent calculable) proven to have been caused by reason of Marriott's aforesaid acts.

## COUNT IV
## UNFAIR COMPETITION
## (O.C.G.A. § 23-2-55)

61.    Delta repeats and realleges each and every allegation in paragraphs 1 through 60 as if fully set forth herein.

62.    Georgia's Unfair Competition Law, O.C.G.A. § 23-2-55, prohibits any unlawful, unfair, or fraudulent business act or practice, and unfair, deceptive, untrue or misleading advertising.

63.    The aforementioned acts of Marriott constitute unfair competition in violation of O.C.G.A. § 23-2-55.

64.    Marriott's conduct has damaged Delta and will, unless enjoined by the Court, further impair the value of Delta's name, reputation, and goodwill.  This harm constitutes an injury for which Delta has no adequate remedy at law.

65.    By reason of the foregoing, Delta is entitled to permanent injunctive relief against Marriott, restraining it and all those in active concert and participation with Marriott (including its Delta Hotels franchisees) from any further acts of unfair competition, and to recovery of any damages (to the extent calculable) proven to have been caused by reason of Marriott's aforesaid acts.

**COUNT V**
**FEDERAL DILUTION**
**(SECTION 43(A) OF THE LANHAM ACT)**

66.    Delta repeats and realleges each and every allegation in paragraphs 1 through 65 as if fully set forth herein.

67.    Based at least on the distinctiveness of the Delta Marks; the duration and extent of use of the trademarks; the duration and extent of advertising featuring the trademarks; the geographic area in which products and services have been sold and advertised featuring the trademarks; the nature of the trade channels used to market products and services featuring the trademarks compared to the trade channels through which Marriott sells and intends to sell its products and services; the degree of public recognition of the Delta Marks; and the federal registrations of those trademarks, the Delta Marks have become famous, as that term is used in Section 43(c) of the Lanham Act, and has been famous for many years.

68.    Marriott's actions described above, all occurring after the Delta Marks became famous, are likely to cause dilution of the famous Delta Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

69.    As a direct and proximate result of Marriott's actions alleged above, Delta has been damaged and will continue to be damaged.

## COUNT VI
## GEORGIA STATE DILUTION
## (O.C.G.A. § 10-1-451)

70.    Delta repeats and realleges each and every allegation in paragraphs 1 through 69 as if fully set forth herein.

71.    Based at least on the inherent distinctiveness of the Delta Marks; the duration and extent of use of the trademarks; the duration and extent of advertising featuring the trademarks; the geographic area in which products and services have been sold and advertised featuring the trademarks; the nature of the trade channels used to market products and services featuring the trademarks compared to the trade channels through which Marriott sells and intends to sell its products and services; the degree of public recognition of the Delta Marks; and the federal registrations of those trademarks, the Delta Marks have become distinctive and famous in Georgia.

72.    Marriott's actions described above, all occurring after the Delta Marks became distinctive and famous, are likely to cause dilution of the distinctive and famous Delta Marks in violation of O.C.G.A. § 10-1-451.

73.    As a direct and proximate result of Marriott's actions alleged above, Delta has been damaged and will continue to be damaged.

## COUNT VII
## DECLARATION THAT DELTA'S DELTA SKY CLUB,
## DELTA ONE, AND DELTA ONE AT LAX MARKS DO NOT INFRINGE
## (28 U.S.C. §§ 2201 AND 2202)

74.    Delta repeats and realleges each and every allegation in paragraphs 1 through 73 as if fully set forth herein.

75.    Section 2(d) of the Lanham Act prohibits the registration of marks which are likely to cause confusion, mistake, and/or deception among members of the relevant purchasing public due to their similarity with previously registered trademarks.  15 U.S.C. § 1052(d)

76.    Marriott has opposed Delta's applications to register Delta's DELTA SKY CLUB, DELTA ONE, and DELTA ONE AT LAX marks in the USPTO, claiming that they are in violation of Section 2(d) of the Lanham Act.

77.    There is no violation of Section 2(d) of the Lanham Act arising from Delta's use and registration of the DELTA SKY CLUB, DELTA ONE, and DELTA ONE AT LAX marks because Marriott's rights in its DELTA HOTELS marks are junior to Delta's rights in its DELTA marks and because the relevant class of consumers correctly associate Delta's DELTA SKY CLUB, DELTA ONE, and DELTA ONE AT LAX marks with Delta, not Marriott.

78.    Marriott also has threatened to challenge Delta's use of the DELTA SKY CLUB mark in connection with offering lounge services at hotels.

79.     An actual, present, and justiciable controversy currently exists between Delta and Marriott with respect to whether Delta's applications to register its DELTA SKY CLUB, DELTA ONE, and DELTA ONE AT LAX marks are barred by Section 2(d) of the Lanham Act and whether Delta may use its DELTA marks for lounges in hotels.

80.     Delta seeks a declaration from this Court that Delta is the senior use of the DELTA mark and the Delta has not violated Section 2(d) of the Lanham Act, nor any trademark rights possessed by Marriott, as a result of its applications to register or use of its DELTA SKY CLUB, DELTA ONE, and DELTA ONE AT LAX marks and its use of its DELTA marks for lounges in hotels.

## COUNT VIII
## DECLARATION THAT CLAUSE 9 OF THE HONG KONG AGREEMENT IS A NON-BINDING AGREEMENT TO AGREE
## (28 U.S.C. §§ 2201 AND 2202)

81.     Delta repeats and realleges each and every allegation in paragraphs 1 through 80 as if fully set forth herein.

82.     On March 25, 2015, Delta and DHLP entered into the Hong Kong Agreement that addressed the registration of their respective marks in Hong Kong and China.

83.     Clause 9 of the Hong Kong Agreement provided, in relevant part, that each of Delta and DHLP "undertakes to the other that it will cooperate in good

faith to agree upon a mutually acceptable compromise, consent and/or co-existence along the lines set forth in this Agreement if the Delta Hotels Marks and the Delta Air Lines Marks, or similar variations including transliteration in Chinese and other languages thereof and marks for or comprising 'DELTA' such as 'DELTA VACATIONS' owned by Delta Air Lines, appear to conflict or overlap in other jurisdictions in the future."

84.    Marriott has taken the position that Clause 9 of the Hong Kong Agreement obligates Delta to consent to Marriott's use and registration of the Delta Hotels Marks in any and all jurisdictions throughout the world, regardless of whether any particular use of the Delta Hotels Marks is likely to cause confusion on the part of consumers as to whether Marriott's Delta Hotels are sponsored by or affiliated with Delta.

85.    Delta has repeatedly tried in good faith to resolve such dispute, but has refused to consent to Marriott's use and registration of the Delta Hotels Marks in the United States and other jurisdictions, on the grounds that such use is likely to cause consumer confusion.

86.    Marriott has responded to Delta's refusal to give the requested consent by threatening to bring suit against Delta for breach of Delta's alleged obligations under Clause 9 of the Hong Kong Agreement.

87.    An actual, present, and justiciable controversy currently exists between Delta and Marriott with respect to whether Clause 9 of the Hong Kong Agreement obligates Delta to consent to Marriott's use and registration of the Delta Hotels Marks in any and all jurisdictions, regardless of whether such use is likely to cause consumer confusion.

88.    Delta seeks a declaration from this Court that Delta has not violated Clause 9 of the Hong Kong Agreement, nor any rights possessed by Marriott, as a result of its refusal to consent to Marriot's use and registration of the Delta Hotels Marks in the United States and other jurisdictions, and that the Hong Kong Agreement does not prevent Delta from protecting its Delta Marks against Marriott in the United States.

## PRAYER FOR RELIEF

WHEREFORE, Delta demands trial by jury, and respectfully prays that the Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.    An Order declaring that Marriott's use of the Delta Hotels Marks infringes the Delta Marks, is likely to dilute the Delta Marks, and constitutes deceptive trade practices and unfair competition under federal and/or state law, as detailed above;

38

B.    An injunction permanently enjoining Marriott and all those in active concert or participation with it (including, but not limited to its franchisees and all of their respective officers, directors, agents, principals, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, and contracting parties) from:

    (i)    using anywhere in the United States, applying to register in the United States, or maintaining a registration in the United States for the Delta Hotels Marks, or any other trademark that is confusingly similar to the Delta Marks, in connection with the operation and promotion of hotels in the United States or related services (including but not limited to restaurant and bar services and loyalty membership services), including, but not limited to, on and in their hotels, marketing materials, websites, and/or social media platforms;

    (ii)    using anywhere in the United States, applying to register in the United States, or maintaining a registration in the United States for the Delta Hotels Marks, or any other trademark that is confusingly similar to the Delta Marks, in connection with the

promotion of foreign hotels to United States consumers or related services (including but not limited to restaurant and bar services and loyalty membership services), including, but not limited to, on and in marketing materials, websites, and/or social media platforms;

(iii) representing, by any means whatsoever, that any products or services manufactured, distributed, advertised, offered, or sold by Marriott are Delta's products or services or vice versa, and from otherwise acting in a way likely to cause confusion, mistake, or deception on the part of purchasers or consumers as to the origin or sponsorship of such goods or services; and

(iv) seeking to oppose any of Delta's applications to register its Delta Marks, or seeking to cancel any of Delta's registrations for its Delta Marks, in the USPTO, including but not limited to U.S. Application Serial Nos. 86/620,771, 86,620,722, and 87/347,436.

C.   An Order directing that Marriott and all those in active concert or participation with them (including, but not limited to, their respective officers, directors, agents, principals, servants, wholesalers,

distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, affiliates, successors, assigns, and contracting parties) take affirmative steps in the United States to dispel such false impressions that heretofore have been created by their use of the Delta Hotels Marks, including, but not limited to, recalling from any and all channels of trade any and all infringing services and associated materials and undertaking corrective advertising.

D.      An Order directing that Marriott account to Delta for its profits and any damages sustained by Delta, to the extent calculable, arising from the foregoing acts of trademark infringement, false designation of origin, and deceptive acts and practices in the United States.

E.      An Order requiring that, in accordance with such accounting, Marriott pay to Delta any such profits or damages (whichever is greater), and a trebling of such award, pursuant to 15 U.S.C. § 1117.

F.      An Order requiring that Marriott pay Delta punitive damages pursuant to Georgia law, O.C.G.A. § 51-12-5.1, in view of Marriott's intentional and willful trademark infringement and other conduct.

41

G.      An Order requiring that Marriott compensate Delta for Delta's costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117 and Georgia law, O.C.G.A. § 10-1-373.

H.      An Order requiring that Marriott file with the Court and serve on counsel for Delta within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Marriott has complied with any injunction which the Court may enter in this action.

I.      An Order declaring that Delta's trademark applications for DELTA SKY CLUB, DELTA ONE, and DELTA ONE AT LAX do not infringe on any rights owned by Marriott because Delta owns prior trademark right to DELTA.

J.      An Order that the Hong Kong Agreement does not prevent Delta from protecting its rights to the Delta Marks against Marriott's use of the Delta Hotels Marks in the United States.

K.      Other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Delta demands

trial by jury in this action of all issues triable by jury in this matter.

Respectfully submitted this 11th day of March, 2020.

*/s/ Samuel R. Rutherford*

JAMES C. GRANT
Georgia Bar No. 305410
SAMUEL R. RUTHERFORD
Georgia Bar No. 159079
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
Email: jim.grant@alston.com
Email: sam.rutherford@alston.com

DALE M. CENDALI
(*Pro Hac Vice Forthcoming*)
CLAUDIA RAY
(*Pro Hac Vice Forthcoming*)
SHANTI SADTLER CONWAY
(*Pro Hac Vice Forthcoming*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel. (212) 446-4800
Fax (212) 446-6460
Email: dale.cendali@kirkland.com
Email: claudia.ray@kirkland.com
Email: shanti.conway@kirkland.com

*Attorneys for Plaintiff*

43