# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| DELTA AIR LINES, INC.,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>    v.<br><br>MARRIOTT INTERNATIONAL, INC.,<br><br>    Defendant and Counterclaim Plaintiff. | C.A. No. 1:20-CV-01125 (SCJ) |

## DEFENDANT'S ANSWER AND COUNTERCLAIM

Defendant Marriott International, Inc. ("Marriott"), through counsel, answers Plaintiff Delta Air Lines, Inc.'s ("DAL") First Amended Complaint (the "FAC") as follows:

## PRELIMINARY STATEMENT

Marriott—one of the world's leading hotel companies—purchased the half-century old DELTA HOTELS brand and business more than five years ago. With DAL's full knowledge, Marriott opened DELTA HOTELS properties across the U.S. and in other countries, and added to the significant existing DELTA HOTELS footprint in Canada. Marriott and DAL have a long cooperative history, one that includes years of peaceful coexistence between their respective DELTA marks and

a worldwide coexistence agreement memorializing their respective uses and registrations of DELTA in their respective hotel and airline industries.

Marriott owns multiple long-standing federal trademark registrations for DELTA-formative marks for hotel, food and beverage, and conference and meeting facility services. Since the application for Marriott's DELTA HOTELS mark was filed in July 2013, DAL never opposed or otherwise objected to the registration of Marriott's DELTA marks in the U.S., and, until recently, took no issue with Marriott's continued use of its DELTA marks in the U.S. In fact, as mentioned above, DAL entered into a worldwide coexistence agreement with Marriott's predecessor-in-interest, Delta Hotels Limited Partnership ("Delta Hotels") in March 2015. Shortly after the agreement was executed, Marriott purchased the Delta Hotels brand and business. Marriott's acquisition was widely reported in the press, including before the worldwide coexistence agreement was signed, and at least one DAL executive discussed Marriott's then-upcoming acquisition with a Marriott executive before the agreement was signed.

Before the acquisition, Delta Hotels was a Canadian hotel company with DELTA-branded hotels throughout Canada, including a location at the Calgary International Airport. As DAL concedes, Delta Hotels also operated a DELTA hotel in the popular vacation destination Orlando during the 1990s. In the five years since Marriott acquired the Delta Hotels brand and business, it has opened

about forty DELTA HOTELS properties in the U.S., along with additional

properties in Canada and other countries, without objection from DAL (until now).

DAL has long known about and acquiesced to the use of DELTA HOTELS

in the U.S.  For example, in a **1986** letter to Delta Hotels Limited's counsel, DAL

stated:

```
    I understand that your client is interested not only in
protecting its ability to advertise its Canadian facilities in
the United States but also in constructing hotels in the United
States.  I will convey this information to our Marketing
Division and contact you again when I return from vacation about
the middle of August.
```

At that time, DAL had filed an opposition against Delta Hotels Limited's 1985

trademark applications for the standalone mark DELTA, as well as the mark

DELTA HOTELS, for hotel and restaurant services.  A few months later, in 1987,

having full knowledge and having acknowledged that the opposed marks had

already been used in the U.S. to promote hotels in Canada and were intended to be

used for hotel services rendered in the U.S., DAL withdrew both oppositions **with**

**prejudice**.

More recently, between 2016 and 2018, consistent with the worldwide

coexistence agreement, DAL consented to Marriott's registration of the mark

DELTA HOTELS and other DELTA-formative marks in Australia, Chile, Israel,

3

and Taiwan.[1]  DAL also provided a letter of consent in December 2019 for the mark DELTA HOTELS in Hong Kong but refused to provide consents for other DELTA-formative marks there.  And although DAL now contends (for litigation purposes) that the worldwide agreement should be confined to China and Hong Kong, it previously applied the agreement on a worldwide basis and confirmed that scope to Marriott.  For example, in May 2016 in connection with providing consent for Israel, DAL's counsel stated in an email to Marriott's counsel:

> We interpret the Agreement as requiring [DAL] to consent to future applications in other countries, as long as the services described in such applications are consistent with those in China and Hong Kong.

Though its complaint attempts to suggest otherwise, DAL does not own a monopoly on the word DELTA.  Indeed, it was far from the first to use it as a trademark.  According to USPTO records, marks comprised of or containing DELTA have been used for myriad products and services since at least the 1800s. DAL may not have even been the first to use DELTA for transportation services. For example, the mark DELTA LINE (a slight variant of DELTA AIR LINES) was registered for transporting passengers by ship—services dating back to the 1940s.  This DELTA mark appears to have coexisted with DAL for many decades.

---

[1] These registrations and other trademark applications/registrations for the DELTA HOTELS brand marks outside of the U.S. are owned by Marriott's wholly owned subsidiary, Marriott Worldwide Corporation.



REGULAR SCHEDULES BETWEEN U. S. GULF PORTS
AND—BRAZIL ★ URUGUAY ★ ARGENTINA ★ WEST AFRICA

DELTA has been and continues to be commonly used by third parties across industries, including in the travel industry.  A few examples include:

- DELTA faucets

- DELTA gas stations

- DELTA tour and travel services

- DELTA limousine and car service (including airport transportation)

- DELTA fuel

- DELTA van lines

- DELTA dental

- DELTA electronics

- DELTA college

- DELTA real estate (various)

- DELTA construction, engineering, design, and/or restoration services (various)

- DELTA yachts

- DELTA bank

- DELTA apparel

- DELTA computer systems

- DELTA CHILDREN baby and children products

DAL's sensationalized allegations in the FAC, including claims that Marriott "embarked upon a calculated strategy" to "trade on" DAL's "hard-earned goodwill," are baseless. Marriott enjoys its own hard-earned goodwill and reputation. Its storied history traces back to 1927 when J. Willard and Alice Marriott opened an A&W root beer stand in Washington, DC. Hard work combined with quality products/services offered at a fair price guided the stand's success and what ultimately became one of the world's leading hotel companies. Marriott is proud of its history and reputation and has no interest in passing itself off as anyone else, including DAL.

This preliminary statement is offered in support of Marriott's affirmative defenses and counterclaim detailed below.

## NATURE OF THE CASE

1.      Marriott denies that (1) DAL's claims arise out of Marriott's alleged willful infringement and dilution, and efforts to trade off on DAL's trademarks and goodwill; (2) Marriott "embarked upon a calculated strategy" of "using the name DELTA for its DELTA HOTELS chain of hotels in the United States"; (3) DAL's asserted trademarks are famous; (4) consumers will likely believe that the DELTA HOTELS chain is owned by, affiliated with, or sponsored by DAL, and that the chain is a joint venture or cobranding project between DAL and Marriott; (5) it has done anything "in a concerted effort to sow confusion and trade off on DAL's strong reputation and trademark rights"; and (6) its use of DELTA has or will cause any harm to consumers or DAL.  Marriott admits that it uses a sans-serif font and the color blue for the DELTA HOTELS brand.  Marriott admits that some DELTA HOTELS locations are near airports and that it markets the DELTA HOTELS brand to "consumers."  Marriott is without information sufficient to form a belief about the remaining allegations of Paragraph 1 and therefore denies them.

2.      Marriott admits that it is one of the world's leading hotel companies and that DAL is an airline carrier.  Marriott denies that DAL is "the senior user of the DELTA mark," given that Marriott and its predecessors-in-interest have long used various DELTA marks in connection with hotel, restaurant, catering, bar, and related services, and Marriott owns multiple long-standing U.S. trademark

registrations for these marks, none of which DAL has previously objected to (other than the oppositions dismissed with prejudice in the 1980's).  Marriott denies that DAL's marks are famous.  Marriott denies the remaining allegations of Paragraph 2.

3.      Marriott denies that it has "attempted to interfere" with DAL's trademark rights by opposing DAL's trademark applications in the United States and elsewhere; Marriott opposed certain of DAL's trademark applications to the extent they violate the parties' worldwide coexistence agreement.  As Marriott is the senior user of DELTA-formative marks in connection with hotel, restaurant, catering, bar, and related services, Marriott denies that DAL has priority (let alone "clear priority") in those spaces.  Marriott denies that DAL's marks are famous.  Marriott denies that it "has gratuitously used [DAL's] valuable brand to bootstrap the success of a new hotel brand in the United States," as Marriott acquired the half-century hold DELTA HOTELS brand and business more than five years ago and, since then (with DAL's full knowledge and consistent with the parties' worldwide coexistence agreement), has opened DELTA HOTELS properties across the United States and in other countries.  Marriott denies that it contended that DAL "cannot use its own, famous brand to partner with hotel chains (among other things) to provide the same types of amenities that Marriott provides with other airlines.  Marriott has claimed that such use by DAL would cause a

8

likelihood of confusion with Marriott's DELTA HOTELS brand. All of this puts DAL at a significant competitive disadvantage." To the extent Paragraph 3 contains any other allegations, Marriott denies them.

4. Denied.

5. Marriott admits that DAL's FAC seeks permanent injunctive relief, monetary damages, and a declaratory judgment regarding the parties' 2015 global coexistence agreement (the "Worldwide Coexistence Agreement"). Marriott denies the remaining allegations of Paragraph 5, including that DAL is entitled to such relief.

## THE PARTIES

6. Marriott is without information sufficient to form a belief about the allegations of Paragraph 6 and therefore denies them.

7. Admitted.

## JURISDICTION AND VENUE

8. Marriott admits that a federal court has original subject matter jurisdiction over DAL's claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), 2201 and 2202. Marriott admits that DAL brings claims under the Lanham Act. Marriott admits that a federal court would have supplemental jurisdiction over DAL's state-law claims pursuant to 28 U.S.C. §§ 1338(b) and

9

1367(a).  Marriott denies that it has violated the Lanham Act.  To the extent Paragraph 8 contains any other allegations, Marriott denies them.

9.     Marriott admits that it is registered as a foreign corporation with the Georgia secretary of state and that it conducts business nationwide (and worldwide), including in Georgia.  Marriott denies that it is a resident of Georgia for purposes of personal jurisdiction and denies that the Court has general personal jurisdiction over it.  For the limited purpose of this action only, Marriott consents to personal jurisdiction in this District.  Marriott admits that its hotel portfolio includes over 7,000 individual properties spanning thirty brands, that its hotel properties are located throughout the United States and the world, and that several of those properties (none of them operating under the DELTA HOTELS brand) are located in Georgia.  Marriott denies that it has committed trademark infringement within Georgia for many reasons, including because no DELTA HOTELS properties are located in the state.  Marriott admits that it markets and advertises DELTA HOTELS brand hotels nationwide and provides booking services for DELTA HOTELS brand hotels to consumers nationwide.  Marriott denies the remaining allegations of Paragraph 9.

10.     Marriott denies that it resides in this District for purposes of personal jurisdiction and/or venue and denies that the Court has general personal jurisdiction over it.  For the limited purpose of this action only, Marriott consents

10

to personal jurisdiction and venue in this District.  Marriott is without information sufficient to form a belief about the remaining allegations of Paragraph 10 and therefore denies them.

### DAL, ITS SERVICES, AND ITS TRADEMARKS

11.     Marriott is without information sufficient to form a belief about the allegations of Paragraph 11 and therefore denies them.

12.     Marriott is without information sufficient to form a belief about the allegations of Paragraph 12 and therefore denies them.

13.     Marriott admits that consumers can exchange Delta SkyMiles for Marriott Bonvoy points, and vice versa.  Marriott is without information sufficient to form a belief about the remaining allegations of Paragraph 13 and therefore denies them.

14.     Marriott is without information sufficient to form a belief about the allegations of Paragraph 14 and therefore denies them.

15.     Marriott is without information sufficient to form a belief about the allegations of Paragraph 15 and therefore denies them.

16.     Marriott admits that USPTO online records list DAL as the current owner of the U.S. trademark registrations and pending applications listed in Paragraph 16 and Exhibit A.  Marriott is without information sufficient to form a belief about the remaining allegations of Paragraph 16 and therefore denies them.

11

17.    Marriott denies that DAL's marks are famous.  Marriott is without information sufficient to form a belief about the remaining allegations of Paragraph 17 and therefore denies them.

18.    Marriott denies that DAL's marks are famous.  Marriott is without information sufficient to form a belief about the remaining allegations of Paragraph 18 and therefore denies them.

## MARRIOTT'S ALLEGED INFRINGEMENT AND DILUTION OF DAL'S TRADEMARKS

19.    Marriott admits that it is one of the world's leading hotel companies and has cooperative business relationships with a variety of businesses, including airline carriers (DAL among them).  Marriott admits that its hotel portfolio includes over 7,000 individual properties spanning thirty brands, including The Ritz-Carlton, St. Regis Hotels & Resorts, W Hotels, JW Marriott Hotels, Sheraton Hotels and Resorts, Le Méridien, Westin Hotels, Renaissance Hotels, Courtyard by Marriott, SpringHill Suites, AC Hotels by Marriott, and Residence Inn by Marriott.  Marriott admits that it manages and franchises hotels in the U.S. and abroad.  To the extent Paragraph 19 contains any additional allegations, Marriott denies them.

20.    Marriott denies that it acquired Delta Hotel Limited Partnership ("Delta Hotels") in 2015 but admits that it acquired the DELTA HOTELS brand and business from Delta Hotel Limited partnership in 2015 and that executives from Marriott and DAL discussed the acquisition before it occurred.  Marriott

12

admits that, at the time of its 2015 acquisition of the Delta Hotels brand and business, the company did not have any DELTA hotels in the United States. Marriott is without information sufficient to form a belief about the remaining allegations of Paragraph 20 and therefore denies them.

21.    Marriott denies that the Delta Hotels logos depicted in the FAC are "highly stylized."  Marriott admits the remaining allegations of Paragraph 21.

22.    Marriott denies that it acquired Delta Hotels in 2015 but admits that it acquired the DELTA HOTELS brand and business from Delta Hotels in 2015 and that executives from Marriott and DAL discussed the acquisition before it occurred.  Marriott denies that DAL's marks are famous.  Marriott denies the remaining allegations of Paragraph 22.

23.    Marriott admits that it uses the logos depicted in Paragraph 23. Marriott denies that DAL's marks are famous.  Marriott denies the remaining allegations of Paragraph 23.

24.    Marriott admits that it uses the color blue in its DELTA HOTELS branding.  Marriott denies the remaining allegations of Paragraph 24.

25.    Marriott admits that existing hotel locations (operating under both Marriott-owned brands and third-party brands) have been rebranded under the DELTA HOTELS mark.  Marriott denies the remaining allegations of Paragraph 25.

26.    Marriott admits that some DELTA HOTELS locations use what DAL's FAC defines as the "Delta Hotels Vertical Logo." Marriott admits that the images in Paragraph 26 appear to be images of DELTA HOTELS properties located at 3105 Pine St, Everett, WA 98201; 5860 Fortune Circle West, Indianapolis, Indiana 46241; and 777 Watters Creek Boulevard, Allen, Texas 75013. To the extent Paragraph 26 contains any additional allegations, Marriott denies them.

27.    Marriott admits DELTA HOTELS MARRIOTT appears on signage at DELTA HOTELS properties. Marriott admits that the images in Paragraph 27 appear to be images of DELTA HOTELS properties located at N88 W14750 Main Street, Menomonee Falls, Wisconsin 53051; 515 US Highway 1 South, Iselin, New Jersey 08830; and 2747 South 11th Street, Kalamazoo, Michigan 49009. To the extent Paragraph 27 contains any additional allegations, Marriott denies them.

28.    Upon information and belief, Marriott denies that "some of the new Delta Hotels" (to the extent this is understood) do not display the Marriott name "at all on their exterior signage." Marriott admits that the images in Paragraph 28 appear to be images of the DELTA HOTELS properties located at 3333 28th Street SE, Grand Rapids, Michigan 49512 and 1 East Redwood Street, Baltimore, Maryland 21202. To the extent Paragraph 28 contains any additional allegations, Marriott denies them.

14

29.   Upon information and belief Marriott admits that, starting in November 2019, United Airlines began offering its Polaris customers on flights between New York/Newark and London Heathrow complimentary baggage delivery service to five Marriott properties in London (JW Marriott Grosvenor House London, London Marriott Hotel Canary Wharf, London Marriott Hotel County Hall, Sheraton Grand London Park Lane and St. Pancras Renaissance Hotel London).  Marriott is without information sufficient to form a belief as to whether "a variety of airlines have directly owned hotels."  Marriott denies the remaining allegations of Paragraph 29.

30.   Marriott admits that certain DELTA HOTELS locations offer airport shuttles.  Marriott denies that it "further exacerbates the likelihood of confusion by specifically branding various of its Delta Hotels as 'airport' hotels and branding its airport shuttles with the Delta Hotels Marks."  Marriott is without information sufficient to form a belief about the remaining allegations of Paragraph 30 and therefore denies them.

31.   Marriott admits that the image in Paragraph 31 appears to be a screenshot of the <https://delta-hotels.marriott.com/> website.  Marriott denies the remaining allegations of Paragraph 31.

32.   Marriott admits that, in January 2019, its Whistler, British Columbia, Canada location posted a picture of two dogs captioned "Quick, get my best

side #dogsofdelta #deltahotels // 📷 : @travelingwithmarriott" and that the Delta Hotels Vertical Logo was also present in the picture. Marriott denies that it "promoted an extensive social media campaign that associates Delta Hotels and Delta," "mimic[ed] a Delta campaign from 2014," deliberately imitated the Delta Marks, or did anything else to cause alleged confusion. Marriott is without information sufficient to form a belief about the remaining allegations of Paragraph 32 and therefore denies them.

33.     Marriott denies that its "marketing of its DELTA HOTELS in the United States using the Delta Hotels Marks has already caused actual confusion among travelers." Marriott is without information sufficient to form a belief about the allegations of Paragraph 33 and therefore denies them.

34.     Marriott is without information sufficient to form a belief about the allegations of Paragraph 34 and therefore denies them.

35.     Marriott denies that "[s]uch confusion is unsurprising given that when consumers search online for 'Delta,' they receive Internet results for Delta Hotels, and vice versa." Marriott is without information sufficient to form a belief about the allegations of Paragraph 35 and therefore denies them.

36.     Marriott denies that DAL's marks are famous. Marriott is without information sufficient to form a belief about the remaining allegations of Paragraph 36 and therefore denies them.

16

37. Marriott denies that "confusion is not surprising." Marriott is without information sufficient to form a belief about the allegations of Paragraph 37 and therefore denies them.

## MARRIOTT'S ALLEGED INTERFERENCE WITH DAL'S TRADEMARK RIGHTS

38. Denied.

39. Marriott admits that, in May 2015, less than two months after executing the Worldwide Coexistence Agreement, DAL filed two intent-to-use trademark applications for the marks DELTA ONE and DELTA ONE AT LAX in Marriott's core class (i.e., Class 43) and that DAL filed another application in Class 43 for the mark DELTA SKY CLUB in February 2017. Marriott admits that, on September 3, 2015, it sought an extension of time to oppose DAL's application for the mark DELTA ONE. Marriott admits that, on January 12, 2016, it sought an extension of time to oppose DAL's application for the mark DELTA ONE AT LAX. Marriott admits that, on July 24, 2017, Marriott sought an extension of time to oppose DAL's application for the mark DELTA SKY CLUB. Marriott admits that it filed oppositions against these applications covering services in Marriott's core class (i.e., Class 43) and that these opposition proceedings are currently suspended. Marriott denies the remaining allegations of Paragraph 39.

17

40.    Marriott admits that its notices of oppositions against DAL's applications allege a likelihood of confusion, mistake, and deception as to the source or origin of DAL's applied-for services in Class 43.  Marriott denies the remaining allegations of Paragraph 40.

41.    Marriott admits that it opposed DAL's application to register DELTA SKY CLUB in the European Union covering services in Marriott's core class (i.e., Class 43).  To the extent Paragraph 41 contains any additional allegations, Marriott denies them.

42.    Denied.

43.    Marriott admits that, under the Worldwide Coexistence Agreement, DAL is required to consent to Marriott's application to register its DELTA marks so long as those applications are consistent with the Worldwide Coexistence Agreement.  Marriott admits that the Worldwide Coexistence Agreement is governed by Hong Kong law.  Marriott denies that the Worldwide Coexistence Agreement is limited to issues relating to trademark applications in Hong Kong and the People's Republic of China.  Marriott admits that the Worldwide Coexistence Agreement speaks for itself.  Marriott denies that DAL's marks are famous.  Marriott denies the remaining allegations of Paragraph 43.

44.    Marriott admits that it filed trademark applications in various countries that are consistent with the Worldwide Coexistence Agreement.

18

Marriott's use of the applied-for marks speaks for itself.  To the extent Paragraph 44 contains any additional allegations, Marriott denies them.

45.    Marriott admits that it has engaged in extensive and lengthy discussions with DAL and has not agreed to meet DAL's unreasonable and ever-changing settlement demands.  Marriott denies the remaining allegations of Paragraph 45.

46.    Marriott admits that it has opened additional DELTA HOTELS brand hotels in the United States since it acquired Delta Hotels in 2015.  Marriott denies the remaining allegations of Paragraph 46.

47.    Marriott admits that it has expressed willingness to resolve the parties' dispute and has made repeated efforts to do so.  Marriott denies the remaining allegations of Paragraph 47.

### COUNT I
### INFRINGEMENT OF REGISTERED TRADEMARKS
### (SECTION 32 OF THE LANHAM ACT, 15 U.S.C. § 1114)

48.    Marriott repeats and incorporates by reference its answers to Paragraphs 1 through 47 of the FAC.

49.    Denied.

50.    Marriott is without information sufficient to form a belief about the allegations of Paragraph 50 and therefore denies them.

51.    Denied.

19

52.    Denied.

53.    Denied.

54.    Denied.

55.    Denied.

56.    Denied.

## COUNT II
## FALSE DESIGNATION OF ORIGIN
## (SECTION 43(A) OF THE LANHAM ACT, 15 U.S.C. § 1125(A))

57.    Marriott repeats and incorporates by reference its answers to

Paragraphs 1 through 56 of the FAC.

58.    Marriott is without information sufficient to form a belief about the

allegations of Paragraph 58 and therefore denies them.

59.    Denied.

60.    Denied.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Denied.

20

## COUNT III
## DECEPTIVE TRADE PRACTICES
## (O.C.G.A. § 10-1-372 ET SEQ.)

65.     Marriott repeats and incorporates by reference its answers to Paragraphs 1 through 64 of the FAC.

66.     Denied.

67.     Denied.

68.     Denied.

## COUNT IV
## UNFAIR COMPETITION
## (O.C.G.A. § 23-3-55)

69.     Marriott repeats and incorporates by reference its answers to Paragraphs 1 through 68 of the FAC.

70.     Paragraph 70 contains no factual allegations requiring a response, merely a statement of Georgia law.

71.     Denied.

72.     Denied.

73.     Denied.

## COUNT V
## FEDERAL DILUTION
## (SECTION 43(A) OF THE LANHAM ACT)

74.     Marriott repeats and incorporates by reference its answers to Paragraphs 1 through 73 of the FAC.

21

75.    Denied.

76.    Denied.

77.    Denied.

78.    Denied.

## COUNT VI
## GEORGIA STATE DILUTION
## (O.C.G.A. § 10-1-451)

79.    Marriott repeats and incorporates by reference its answers to

Paragraphs 1 through 78 of the FAC.

80.    Denied.

81.    Denied.

82.    Denied.

83.    Denied.

## COUNT VII
## DECLARATION THAT CLAUSE 9 OF THE HONG KONG AGREEMENT
## IS A NON-BINDING AGREEMENT TO AGREE
## (28 U.S.C. §§ 2201 AND 2202)

84.    Marriott repeats and incorporates by reference its answers to

Paragraphs 1 through 83 of the FAC.

85.    Marriott admits that, on March 25, 2015, DAL and Delta Hotels

entered into the Worldwide Coexistence Agreement.  Marriott denies the

remaining allegations of Paragraph 85.

86.    Marriott admits that the Worldwide Coexistence Agreement speaks for itself.  Marriott denies the remaining allegations of Paragraph 86.

87.    Marriott admits that it believes the Worldwide Coexistence Agreement applies worldwide and that DAL apparently does as well, as, among other things, it has provided Marriott with a number of consents to register its DELTA marks worldwide.  Marriott denies the remaining allegations of Paragraph 87.

88.    Marriott admits that, beginning in or about 2019, DAL started refusing to consent to Marriott's trademark applications as required by the Worldwide Coexistence Agreement.  Marriott denies the remaining allegations of Paragraph 88.

89.    Marriott admits that it believes the Worldwide Coexistence Agreement applies worldwide and that DAL apparently does as well, as, among other things, it has provided Marriott with a number of consents to register its DELTA marks worldwide.  Marriott admits that it has requested DAL's consent to Marriott's trademark applications that are consistent with the Worldwide Coexistence Agreement.  Marriott admits that, until recently, DAL was providing such consents and that, when DAL stopped providing such consents, Marriott reminded DAL that it was contractually obligated to do so.  To the extent Paragraph 89 contains additional allegations, Marriott denies them.

90.    Marriott admits that an actual, present, and justiciable controversy exists between DAL and Marriott regarding whether the Worldwide Coexistence Agreement applies worldwide and whether DAL has breached the Worldwide Coexistence Agreement.  Marriott denies the remaining allegations of Paragraph 90.

91.    Marriott admits that Paragraph 91 is a statement of the declaratory relief DAL seeks.  Marriott denies the remaining allegations of Paragraph 91, including that DAL is entitled to such relief.

## AFFIRMATIVE DEFENSES

92.    The FAC fails to state a claim upon which relief can be granted.

93.    DAL's claims are barred, in whole or in part, by the doctrine of laches based on DAL's undue delay in asserting its rights against Marriott, which has prejudiced Marriott.

94.    DAL's claims are barred, in whole or in part, by the doctrine of equitable estoppel based on DAL's actions, including (1) unduly delaying in asserting its rights against Marriott and/or Delta Hotels, (2) entering into the Worldwide Coexistence Agreement with Marriott's predecessor-in-interest, (3) withdrawing its oppositions against Delta Hotels' trademark applications *with prejudice*, (4) remaining silent for years after withdrawing these oppositions and entering into the Worldwide Coexistence Agreement, and (5) affirmatively

consenting to Marriott's registration of its DELTA marks around the world, all of which has prejudiced Marriott and upon which it has relied to its detriment.

95.    DAL's claims are barred, in whole or in part, by the doctrine of acquiescence based on DAL's actions, including (1) unduly delaying in asserting its rights against Marriott and/or Delta Hotels, (2) entering into the Worldwide Coexistence Agreement with Marriott's predecessor-in-interest, (3) withdrawing its oppositions against Delta Hotels' trademark applications *with prejudice*, (4) remaining silent for years after withdrawing these oppositions and entering into the Worldwide Coexistence Agreement, and (5) affirmatively consenting to Marriott's registration of its DELTA marks around the world.  DAL's delay in asserting its rights is not excusable and has caused Marriott undue prejudice.

96.    DAL's claims are barred, in whole or in part, by the doctrine of waiver based on DAL's actions, including (1) unduly delaying in asserting its rights against Marriott and/or Delta Hotels, (2) entering into the Worldwide Coexistence Agreement with Marriott's predecessor-in-interest, (3) withdrawing its oppositions against Delta Hotels' trademark applications *with prejudice*, (4) remaining silent for years after withdrawing these oppositions and entering into the Worldwide Coexistence Agreement, and (5) affirmatively consenting to Marriott's registration of its DELTA marks around the world.

97.    Marriott's uses and registrations of its DELTA marks in connection with hotel, restaurant, catering, bar, and related services are permitted by the Worldwide Coexistence Agreement.

98.    Marriott has acted in good faith at all times with respect to the allegations in the FAC, and Marriott's conduct has never been willful.

99.    Marriott reserves all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Lanham Act, and any other defenses in law or in equity that may now exist or in the future be available based on discovery and further factual investigation in this case.

## PRAYER FOR RELIEF

WHEREFORE, Marriott prays that DAL's FAC be dismissed in its entirety with prejudice; that judgment be entered in favor of Marriott against DAL; that DAL be denied all relief requested in the FAC (including all injunctive or declaratory relief); that DAL be ordered to pay the costs of this action and, to the extent authorized by law, to reimburse Marriott for its attorneys' fees and expenses of litigation; and for such other and further relief as this Court deems just and proper.

## COUNTERCLAIM

Defendant Marriott International, Inc. ("Marriott"), through its undersigned counsel, alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE COUNTERCLAIM

1.     This Counterclaim arises out of Delta Air Lines, Inc.'s ("DAL") breach of the parties' 2015 worldwide coexistence agreement.

## PARTIES

2.     Marriott is a corporation organized and existing under the laws of Delaware, with a principal place of business at 10400 Fernwood Road, Bethesda, Maryland 20817.

3.     DAL is a corporation organized and existing under the laws of Delaware, with a principal place of business at 1030 Delta Boulevard, Atlanta, Georgia, 30320.

## JURISDICTION

4.     This Court has jurisdiction over the subject matter of this counterclaim pursuant to 28 U.S.C. § 1367.

5.     By its First Amended Complaint ("FAC"), DAL has charged Marriott with trademark infringement, trademark dilution, deceptive trade practices, and unfair competition, and seeks a declaratory judgment that the Worldwide

27

Coexistence Agreement is confined to China and Hong Kong—all of which Marriott denies.  Marriott's counterclaim is part of the same case or controversy as DAL's claims against Marriott.

6.    This Court has personal jurisdiction over DAL because DAL resides in Georgia and/or regularly does business in this District, and has otherwise made or established contacts within this District sufficient to permit exercise of personal jurisdiction.

7.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because DAL resides in this District.  Marriott denies, however, that venue for this action is proper in Georgia and raises this counterclaim subject to its consent to venue in this District for the limited purpose of this action, as stated in Marriott's answer to Paragraph 10 of the FAC above.

8.    As a result of DAL's FAC and allegations, DAL has submitted itself to the jurisdiction and venue of this Court.

### THE PARTIES' LONG COOPERATIVE HISTORY AND THEIR WORLDWIDE COEXISTENCE AGREEMENT

9.    Marriott is a diversified hospitality company.  Its hotel portfolio includes over 7,000 individual properties spanning thirty brands, including Marriott Hotels & Resorts, Marriott Vacation Club, JW Marriott Hotels, Courtyard by Marriott, Fairfield by Marriott, Protea Hotels by Marriott, AC Hotels by Marriott, Marriott Executive Apartments, Residence Inn by Marriott, Homes &

28

Villas by Marriott International, Autograph Collection, Design Hotels, Tribute Portfolio, The Ritz-Carlton, St. Regis Hotels & Resorts, Edition Hotels, The Luxury Collection, W Hotels, Sheraton Hotels and Resorts, Le Méridien, Renaissance Hotels, Westin Hotels, Gaylord Hotels, Four Points by Sheraton, SpringHill Suites, Aloft Hotels, Moxy Hotels, TownePlace Suites, and Element by Westin.

10.    DELTA HOTELS is one of Marriott's many brands.[2]  Marriott and its predecessors-in-interest have long used various DELTA marks in connection with hotel, restaurant, catering, bar, and related services.  These marks are the subject of multiple longstanding federal trademark registrations.

11.    DAL has never opposed or otherwise objected to the registration of Marriott's marks in the U.S. (other than the oppositions dismissed with prejudice in the 1980's) and, until recently, took no issue with Marriott's continued use of its DELTA marks in the U.S.

12.    DAL entered into a worldwide coexistence agreement with Marriott's predecessor-in-interest, Delta Hotels Limited Partnership ("Delta Hotels") in March 2015 (the "Worldwide Coexistence Agreement").  The Worldwide

---

[2] Marriott International Inc. owns the U.S. trademark applications/registrations for the DELTA HOTELS brand.  Marriott International, Inc.'s wholly owned subsidiary, Marriott Worldwide Corporation, owns trademark applications/registrations for the DELTA HOTELS brand marks outside the U.S.

Coexistence Agreement is binding on the parties' successors. A true and correct copy of the Worldwide Coexistence Agreement is attached as **Exhibit 1**.

13. The Worldwide Coexistence Agreement permits (1) Delta Hotels' (now Marriott's) worldwide use and registration of its DELTA marks for hotel, restaurant, bar, catering, and other services in its core class (Class 43) and other classes and (2) DAL's worldwide use and registration of its DELTA marks for air transportation and other services in its core class (Class 39) and other classes. *See* **Exhibit 1**.

14. The Worldwide Coexistence Agreement requires DAL and Marriott to cooperate with one another to facilitate registration of one another's DELTA marks so that each party can realize the "full benefits" of the Worldwide Coexistence Agreement. **Exhibit 1, ¶ 9**.

15. The Worldwide Coexistence Agreement prohibits DAL from challenging, objecting to, and/or opposing Delta Hotels' (now Marriott's) use and registration of the mark DELTA or any mark incorporating DELTA in Classes 35, 39, 41, and 43, provided that the goods and services claimed in any application(s) and registrations are consistent with the services permitted by the Worldwide Coexistence Agreement. **Exhibit 1, ¶ 6**.

16. The Worldwide Coexistence Agreement also requires DAL to provide (upon request) written consent to future application(s) and registrations by Delta

30

Hotels (now Marriott) for the mark DELTA or any mark incorporating DELTA in Classes 35, 39, 41, and 43, provided that the goods and services claimed in any application(s) and registrations are consistent with the services permitted by the Worldwide Coexistence Agreement.  **Exhibit 1, ¶ 6**.

17.    The Worldwide Coexistence Agreement is governed by Hong Kong law[3] and requires each party to bear its own costs in relation to the execution of any letter of consent and/or other documents as may be required by the requesting party under the Worldwide Coexistence Agreement.  **Exhibit 1, ¶¶ 10, 11**.

18.    The Worldwide Coexistence Agreement has "perpetual duration" unless one of the parties completely and permanently abandons each and every one of its respective DELTA marks.  **Exhibit 1, ¶ 13**.  Marriott has not abandoned its marks and, upon information and belief, neither has DAL.

## DAL'S WRONGFUL ACTS

19.    Marriott has performed its obligations under the Worldwide Coexistence Agreement.  For a time, DAL did as well.  For example, it provided Marriott with several consents to register its DELTA marks in various countries, including Chile, Israel, Taiwan, Australia, and Hong Kong, and the parties peacefully coexisted in their respective hotel and airline industries.

---

[3] This serves as Marriott's notice pursuant to Fed. R. Civ. P. 44.1 that it intends to raise an issue about a foreign country's law (Hong Kong).

31

20.    DAL now claims that the Worldwide Coexistence Agreement only applies to certain of Marriott's DELTA-formative marks and only applies to Hong Kong and China, even though it previously consented to all of Marriott's DELTA and DELTA-formative marks and previously stated that the Worldwide Coexistence Agreement required DAL to consent to future applications in other countries, so long as the services described in those applications are consistent with those in China and Hong Kong.

21.    Marriott has requested letters of consent or coexistence from DAL to register Marriott's marks in Colombia and Hong Kong.  The marks and services described in these applications are consistent with the marks and services permitted by the Worldwide Coexistence Agreement.  DAL has refused to provide such consents, violating the Worldwide Coexistence Agreement.

22.    In this action against Marriott, DAL has challenged and objected to Marriott's use of DELTA and DELTA-formative marks in connection with hotel, restaurant, catering, bar, and related services.  DAL has therefore breached its contractual obligation not to challenge, object to, and/or oppose Marriott's use and registration of the mark DELTA or any mark incorporating DELTA in Classes 35, 39, 41, and 43 as permitted by the Worldwide Coexistence Agreement.

23.    In other violations of the Worldwide Coexistence Agreement, DAL has obtained extensions of time to oppose and/or has opposed or challenged

Marriott's applications to register its DELTA marks (again, as permitted by the Worldwide Coexistence Agreement) and has sought to cancel Marriott's registrations for its DELTA marks (again, as permitted by the Worldwide Coexistence Agreement) in other countries, including Colombia, Cyprus, Egypt, India, and South Africa.

## FIRST CLAIM FOR RELIEF
### Breach of Contract

24.    Marriott repeats and realleges each and every allegation set forth in Paragraph 1 through 23 of this Counterclaim.

25.    The Worldwide Coexistence Agreement is a valid contract and is still in force.

26.    The Worldwide Coexistence Agreement was supported by adequate consideration.

27.    The Worldwide Coexistence Agreement requires DAL and Marriott to cooperate with one another to facilitate registration of one another's DELTA marks so that each party can realize the "full benefits" of the Worldwide Coexistence Agreement.  **Exhibit 1, ¶ 9**.

28.    The Worldwide Coexistence Agreement prohibits DAL from challenging, objecting to, and/or opposing Delta Hotels' (now Marriott's) use and registration of the mark DELTA or any mark incorporating DELTA in Classes 35, 39, 41, and 43, provided that the goods and services claimed in any application(s)

33

and registrations are consistent with the services permitted by the Worldwide Coexistence Agreement.  **Exhibit 1, ¶ 6**.

29.    The Worldwide Coexistence Agreement also requires DAL to provide (upon request) written consent to future application(s) and registrations by Delta Hotels (now Marriott) for the mark DELTA or any mark incorporating DELTA in Classes 35, 39, 41, and 43, provided that the goods and services claimed in any application(s) and registrations are consistent with the services permitted by the Worldwide Coexistence Agreement.  **Exhibit 1, ¶ 6**.

30.    DAL has breached Paragraphs 6 and 9 of the Worldwide Coexistence Agreement by refusing to provide Marriott with letters of consent to register its DELTA marks.

31.    DAL has breached Paragraphs 6 and 9 of the Worldwide Coexistence Agreement by bringing this action, in which it challenges and objects to Marriott's use of DELTA and DELTA-formative marks in connection with hotel, restaurant, catering, bar, and related services.

32.    DAL has breached Paragraphs 6 and 9 of the Worldwide Coexistence Agreement by opposing or challenging Marriott's applications to register its DELTA marks in other countries, including Colombia, Cyprus, Egypt, India and South Africa.

33.     As a direct and proximate result of DAL's actions, Marriott has been irreparably injured and has suffered monetary damages in an as yet undetermined amount.

## PRAYER FOR RELIEF

WHEREFORE, Marriott requests that this Court enter judgment in its favor on the counterclaim set forth above and award it relief including, but not limited to, the following:

A.     An Order declaring that DAL has breached the Worldwide Coexistence Agreement by its actions detailed above.

B.     An Order declaring that the Worldwide Coexistence Agreement is applicable worldwide and not limited to Hong Kong and China.

C.     An Order requiring DAL and its successors, licensees, and parties in privity with it to comply at all times with the terms of the Worldwide Coexistence Agreement worldwide, i.e., by providing Marriott with letters of consent to register its DELTA marks or coexistence agreements as required by the Worldwide Coexistence Agreement.

D.     An Order prohibiting DAL and its successors, licensees, and parties in privity with it from challenging, objecting to, and/or opposing Marriott's use and registration of the mark DELTA or any mark incorporating DELTA in Classes 35, 39, 41, and 43, provided that the mark and goods and services claimed in any

application(s) and registrations are consistent with the Worldwide Coexistence

Agreement, including withdrawing all legal proceedings instituted against

Marriott's applications/registrations.

      E.     An Order requiring DAL to pay Marriott damages resulting from

DAL's breach of the Worldwide Coexistence Agreement, in an amount to be

determined, including, without limitation, compensatory and consequential

damages as provided by law, costs and attorneys' fees, and the expenses of

litigation, together with pre- and post-judgment interest.

      F.     Other relief as the Court may deem appropriate.


Dated: June 26, 2020          Respectfully submitted,


                    /s/ *Virginia L. Carron*

                    Virginia L. Carron (Ga. Bar No. 112770)
                    FINNEGAN, HENDERSON, FARABOW,
                        GARRETT & DUNNER, L.L.P.
                    271 17th Street, NW, Suite 1400
                    Atlanta, Georgia 30363
                    Telephone: (404) 653-6452
                    Fax: (404) 653-6444
                    Email: virginia.carron@finnegan.com

                    Danny M. Awdeh (admitted *pro hac vice*)
                    Douglas A. Rettew (admitted *pro hac vice*)
                    FINNEGAN, HENDERSON, FARABOW,
                        GARRETT & DUNNER, L.L.P.
                    901 New York Avenue, NW
                    Washington, DC 20001

36

Telephone: (202)-408-4000
Fax: (202) 408-4444
Email: danny.awdeh@finnegan.com
Email: doug.rettew@finnegan.com

Morgan E. Smith (admitted *pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
      GARRETT & DUNNER, L.L.P.
3300 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 849-6600
Fax: (650) 849-6666
Email: morgan.smith@finnegan.com

*Counsel for Defendant Marriott International, Inc.*

37

## CERTIFICATE OF SERVICE AND COMPLIANCE

Counsel for Defendant Marriott International, Inc. hereby certifies that on June 26, 2020, the foregoing ANSWER AND COUNTERCLAIM was filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

Pursuant to Local Rule 7.1(D), counsel for Defendant Marriott International, Inc. certifies that the foregoing was prepared in 14-point Times New Roman font and otherwise conforms to the requirements of Local Rule 5.1.

/s/ *Virginia L. Carron*
Virginia L. Carron (Ga. Bar No. 112770)