**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DELTA AIR LINES, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC.,<br><br>and<br>Defendants and Counterclaimants Plaintiff,<br><br>MARRIOTT INTERNATIONAL, INC.<br><br>Counterclaim Plaintiff. | C. A. NO. 1:20-CV-01125-ELR |

**DELTA'S RESPONSE TO MARRIOTT'S RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56.1(B)(2) of the Local Rules of Civil Procedure of the Northern District of Georgia, Plaintiff and Counterclaim Defendant Delta Air Lines, Inc. ("Delta"), by and through its counsel, respectfully submits the following response to Defendant and Counterclaim Plaintiff Marriott International, Inc. and

Counterclaim Plaintiff Marriott Worldwide Corporation's (collectively "Marriott") Rule 56.1 Statement of Facts in support of its motion for summary judgment.[1]

1. In 1962, the DELTA HOTELS brand and business were founded in Canada. Ex. 1, MARRIOTTT0539767 at 0539773.

**<u>RESPONSE 1</u>:**

**Undisputed.** However, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. LR 56.1(B)(2)(a)(2)(iii). *See, e.g.*, Dkt. 248 at 36-37 (finding Marriott's predecessor's use of DELTA HOTELS in Canada prior to Marriott's 2015 acquisition irrelevant to this case); Dkt. 295 at 20-21 (affirming Dkt. 248); Dkt. 420 at 13-14 (acknowledging prior finding that Marriott's predecessor's prior use is irrelevant as Delta's claims center on [redacted] (emphasis added).[2] *See also, e.g.*, *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 2023 WL 4239255 at *2 (June 29, 2023) (holding that Lanham Act "are not extraterritorial

---

[1] Delta does not waive its right to object to the admissibility of any evidence at trial or otherwise, but rather expressly preserves all such admissibility objections. Delta also does not waive, but rather expressly preserves, its right to dispute any facts at trial or otherwise

[2] Exs. 1-300 are to the July 14, 2023, Declaration of Claudia Ray. Dkt. __. Exs. 301-__ are to the contemporaneously filed, August 4, 2023, Declaration of Ms. Ray, and all emphasis added unless otherwise noted.

and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1531 (11th Cir. 1985) (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc. v. John Hornby Skewes & Co. Ltd.*, 2016 WL 7479317 at *4 (C.D. Cal. Dec. 29, 2016) (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially") *Jarabes Veracruzanos, Inc. v. Productora de Alimentos Mexicanos S.A. de C.V.,* 2016 WL 7486368 at *3 (W.D. Tex. Apr. 8, 2016) (rejecting knowledge of foreign use as relevant to laches and acquiescence).

2. The DELTA HOTELS brand has been extensively marketed to U.S. travelers since at least the 1980s. Ex. 2, MARRIOTT0188696, Dkt. 323-4; Ex. 3, Deposition of Richard Hoffman ("Hoffman Depo.") at 141:22-142:7.

**RESPONSE 2:**

**Disputed.** Delta objects that this statement is unsupported by Marriott's citations and directly refuted by undisputed facts in the evidentiary record. LR 56.1(B)(2)(a)(2)(i), (iii). Marriott's own documents reflect that as of 2015, when it acquired the brand from a Canadian company, the Delta Hotels brand was a [redacted] in the U.S. and [redacted] was in Canada.

Ex. 1 at ’055; Ex. 226 at ’912. Delta Hotels had “no hotels in the United States” at the time of Marriott’s acquisition of Delta Hotels in 2015. Ex. 22 at 141:11-17. In fact, at most, and long before Marriott’s acquisition, DHLP had only 1 hotel in Florida called the “Delta Court of Flags,” that was open for a few years and closed by 1998 (17 years before Marriott’s acquisition). Ex. 23 at 48:8-14; Ex. 225 at ‘075. Moreover, to support the contention that the Delta Hotels brand was previously “*extensively* marketed to U.S. travelers”, Marriott cites only [redacted]. *Id.* Marriott provides no information on [redacted]. Nor does the deposition testimony of Marriott’s Rule 30(b)(6) witness on topics relating to Marriott’s predecessor, Mr. Richard Hoffman, provide any foundation or personal knowledge supporting [redacted] Ex. 3 at 141:22-142:7; Ex. 309 at 144:1-145:24. Mr. Hoffman also

testified that [redacted] Ex. 309 at 145:14-24. Mr. Hoffman confirmed that [redacted] Ex. 309 at 20:8-15. Accordingly, Mr. Hoffman's unsupported testimony cannot be a basis for Marriott's factual contention.

In any event, Delta further objects that this statement is not material to Marriott's Summary Judgment Motion. LR 56.1(B)(2)(a)(2)(iii). Marriott asserts this statement is relevant to laches (Mot. at 49), but as discussed above, hotels in Canada are irrelevant (including for purposes of laches) as trademark rights are territorial. *See, e.g.*, Dkt. 248 at 36-37; Dkt. 295 at 20-21; Dkt. 420 at 13-14; *see Abitron Austria*, 2023 WL 4239255 at *2 (U.S. June 29, 2023) (holding Lanham Act claims "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic").

3. The DELTA HOTELS business became the largest full-service hotel chain in Canada before it was acquired by Marriott in 2015. Ex. 4, MARRIOTT0213893 at 0213902.

**<u>RESPONSE 3</u>:**

**Disputed.** Delta objects to this statement to the extent that Marriott's citation does not support this fact. LR 56.1(B)(2)(a)(2)(iii). The cited document states that,

as of September 2014, the Delta Hotels portfolio was the [redacted] which was limited to [redacted] hotels in Canada. Dkt. 479-05 at '902. Accordingly, Marriott's citation does not support that "the DELTA HOTELS business became the largest full-service hotel chain in Canada before it was acquired by Marriott in 2015."

In any event, this statement is not material to Marriott's Summary Judgment Motion. LR 56.1(B)(2)(a)(2)(iii). Marriott's predecessor's use of Delta Hotels in Canada, and the relative size of the business (particularly in only one business segment) in Canada, has no bearing on any issue in Marriott's motion. *See, e.g.*, Dkt. 248 at 36-37; Dkt. 295 at 20-21; Dkt. 420 at 13-14; *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3.

4. In 1986, the DELTA HOTELS business opened the "DELTA COURT OF FLAGS" resort in Orlando. Florida. Ex. 3, Hoffman Depo, 253:11-254:2; Ex. 5, MARRIOTT0001550 at 0001588.

**RESPONSE 4:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation. The cited document shows that the conversion of the "Delta Court of Flags" property began in 1986, but does not provide any indication as to when the business was opened. Dkt. 468-10 at '588. Nor does the deposition testimony of Marriott's

Rule 30(b)(6) witness on topics relating to Marriott's predecessor, Mr. Richard Hoffman, provide any foundation or personal knowledge supporting this statement. Ex. 309 at 144:1-145:24.

In any event, this statement is not material to Marriott's Summary Judgment Motion. LR 56.1(B)(2)(a)(2)(iii). Marriott asserts this statement is relevant to laches (Mot. at 49), but it is not material to that affirmative defense, as this single hotel (1) was only open for a few years; (2) used a substantially different name ("The Delta Court of Flags"); (3) used a substantially different logo (); and (4) closed by 1998 (long before Marriott's acquisition of the Delta Hotels brand in 2015). Ex. 23 at 48:8-14; Ex. 225 at '075; Dkt. 468-10 at '552; *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1206 (11th Cir. 1997); *Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, 2010 WL 2662720 at *11 (N.D.Ga. June 30, 2010); *Univ. of Pittsburgh v. Champion Prods., Inc.*, 686 F.2d 1040, 1046 (3d Cir. 1982); *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 151 F. Supp. 3d 1268, 1281 (M.D. Fla. 2015); McCarthy § 31:19.

5. The Orlando U.S. resort operated under the name and mark "DELTA COURT OF FLAGS" for over a decade, until 1998. Ex. 5, MARRIOTT0001550; Ex. 6, Deposition of Philip G. Hampton ("Hampton Depo.") at 24:21-26:21; Ex. 7, MARRIOTT0557260; Ex. 8, First Amended Complaint ("FAC"), Dkt. 30, ¶ 20.

**RESPONSE 5:**

**Disputed.** Delta objects to this statement as Marriott's citation does not support this fact. LR 56.1(B)(2)(a)(2)(iii). Marriott cites two website printouts that reference the Delta Court of Flags hotel, but neither establishes when the property was actually in operation. Dkt. 468-10; Dkt. 468-12. Marriott also cites the testimony of Delta's expert on U.S. Patent and Trademark Office, Philip Hampton, but he testified that it was "unclear as to whether or not there was any use [of "Delta" by DHLP] from 1991 to 1998." Dkt. 479-06 at 25:4-18. Nor does Delta's First Amended Complaint establish or state that the hotel was operated for over a decade until 1998. Dkt. 30, ¶ 20.

In any event, this statement is not material to Marriott's Summary Judgment Motion. LR 56.1(B)(2)(a)(2)(iii). Marriott asserts this statement is relevant to laches, but it is not material to that affirmative defense, as this single hotel (1) was only open for a few years; (2) used a substantially different name ("The Delta Court of Flags"); (3) used a substantially different logo ( ); and (4) closed by 1998 (long before Marriott's acquisition of the Delta Hotels brand in 2015). Ex. 23 at 48:8-14; Ex. 225 at '075; Dkt. 468-10 at '552; *Kason*, 120 F.3d at 1206; *Flowers Bakeries Brands, Inc.*, 2010 WL 2662720 at *11; *Univ. of Pittsburgh*, 686 F.2d at 1046; *Spiral Direct, Inc.*, 151 F. Supp. 3d at 1281; McCarthy § 31:19.

6. [redacted] Ex. 7, MARRIOTT0557260; Ex. 9, Expert Report of Winnie Tam ("Tam Report"), ¶ 16(2).

**RESPONSE 6:**

**Disputed.** Delta objects to this statement as Marriott's citations do not support this fact. LR 56.1(B)(2)(a)(2)(iii). The cited document MARRIOTT0557260 does not establish that the DELTA HOTELS business operated and/or used DELTA HOTELS marks for 8 DELTA HOTELS properties in the Asia-Pacific region for a decade or more. Additionally, Marriott's expert on Hong Kong law, Winnie Tam, did not state the time period in which Delta Hotels operated Delta Hotels-branded hotels in the Asia-Pacific regions. Dkt. 479-07 ("Tam Report"), ¶ 16(2).

In any event, this statement is not material to Marriott's Summary Judgment Motion. LR 56.1(B)(2)(a)(2)(iii). It is not material to Marriott's laches or related affirmative defenses to the extent it relates to use in foreign jurisdictions. *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317, at *4–5; *Jarabes Veracruzanos, Inc.***,** 2016 WL 7486368, at *3. Nor is it material to Marriott's claims of breach of contract, estoppel by convention, or related affirmative defenses, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China.

*See L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

7. In 2013, Marriott became interested in acquiring the DELTA HOTELS brand and business and expanding it globally. Ex. 3, Hoffman Depo. at 27:3-5, 33:2-6.

**RESPONSE 7:**

**Undisputed.** However, Delta objects to this statement as not material to Marriott's Summary Judgment Motion, to the extent Marriott suggests that Marriott's pre-contractual intent is relevant to its breach of contract counterclaim. LR 56.1 (B)(2)(a)(2)(iii). Under Hong Kong law, evidence that "merely reflect[s] the aspirations of one or other of the parties" is irrelevant. *Channel Green Ltd v Huge Grand Ltd* [2015] 1 HKLRD 655 at para. 34-37 (Evidence that "merely reflect[s] the aspirations of one or other of the parties" is irrelevant under Hong Kong law).

8. [redacted] Ex. 3, Hoffman Depo. at 30:15-31:21, 263:14-21; Ex. 11, Deposition of Brian King ("King Depo.") at 164:17-165:15.

**<u>RESPONSE 8</u>:**

**Disputed**. Delta objects that this statement is unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record. LR 56.1(B)(2)(a)(2)(i), (iii). It is undisputed that as of late 2014, Marriott had at least 20 brands (including at least 11 in the same full-service brand segment occupied by Delta Hotels at the time Marriott launched Delta Hotels in the U.S.). Ex. 308 at 7-11; Ex. 354 at 38:15-39:1. And Marriott could have created a *new* brand. But Delta Hotels had something that Marriott's other brands did not—the "Delta" name"—which would allow Marriott to trade off Delta's brand. And in fact, Marriott [redacted] as an admitted [redacted] changed the logo to more closely match Delta's, and expanded to the U.S. under the DELTA HOTELS Marks. Ex. 2 at '885; Ex. 22 at 56:18-58:3; Ex. 9 at 3-5; Ex. 54 at '177.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. LR 56.1 (B)(2)(a)(2)(iii). Even if true, the strategic goal achieved via the acquisition is not necessary to determine any issue in Marriott's Motion. Nor does it refute Marriott's intent to misappropriate Delta's goodwill, or to create an association with Delta (though such intent is not at issue in Marriott's Motion).

9. [redacted] Ex. 11, King Depo. at 165:13-15; Ex. 12, Deposition of Noah Silverman ("Silverman Depo.") at 250:24-251:5.

**<u>RESPONSE 9</u>:**

**Disputed**. Delta objects that this statement is directly refuted by undisputed facts in the evidentiary record. LR 56.1(B)(2)(a)(2)(i). It is undisputed that as of late 2014, Marriott had at least 20 brands (including at least 11 in the same full-service brand segment occupied by Delta Hotels at the time Marriott launched Delta Hotels in the U.S.). Ex. 308 at 7-11; Ex. Ex. 354 at 38:15-39:1. And Marriott could have created a *new* brand.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. LR 56.1 (B)(2)(a)(2)(iii). Even if true, the strategic goal achieved via the acquisition is not necessary to determine any issue in Marriott's Motion. Nor does it refute Marriott's intent to infringe on and dilute the DELTA Marks (though such intent is not at issue in Marriott's Motion)—or the fact that Marriott could have created a new brand to fill this alleged product void, or used one of its existing brands.

10. [redacted] Ex. 13, MARRIOTT0189934, Asset Purchase Agreement ("APA"); Ex. 14, MARRIOTT0189135.

**<u>RESPONSE 10</u>:**

**Undisputed.**

11. At the same time, Marriott publicly announced the deal and its plan to open DELTA HOTELS properties worldwide. Ex. 3, Hoffman Depo. at 67:5-15, 71:15-24, 150:7-155:22, 256:7-20; Ex. 16, MARRIOTT0540273.

**RESPONSE 11:**

**Disputed.** Delta objects that this statement is unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1(B)(2)(a)(2)(i), (iii). The single cited press release (Dkt. 479-14) does not support that Marriott publicly announced its plan to open DELTA HOTELS properties worldwide—or, specifically, in the United States. Marriott's statement omits that the press release specifically states that "the Delta brand comprises a diverse range of hotels and resorts with 38 hotels and 10,000 rooms in more than 30 cities across *Canada*," and "[w]hen completed, the transaction will increase Marriott's distribution in *Canada* to more than 120 hotels and 27,000 rooms, making Marriott the largest full-service hotel company in *Canada*." *Id*. at '273. Its CEO said: "Delta has an impressive portfolio of hotels that are among the most preferred in *Canada*. With this acquisition, we are continuing our focus on building our brand portfolio and growing in attractive regions *outside of the U.S.*" *Id.* And Marriott's "group president" stated "at completion, this transaction will propel Marriott to a leading position in *Canada*." *Id.* The sole other "support" Marriott cites—Mr.

Hoffman's testimony—is equally unavailing. Notably, Mr. Hoffman did not identify any other documentation at his deposition in which Marriott publicly announced any plan to open DELTA HOTELS properties worldwide and Mr. Hoffman could not remember the specific year or conference at which he contends he made such a verbal announcement (nor has Marriott provided any documentary evidence to support such contention, which presumably would exist if such a statement had been made). Dkt. 479-04 at 67:5-15, 71:15-24, 150:7-155:22, 256:7-20.

Delta also objects to the extent Marriott failed to provide the attachments to the press release with its Motion, which include not only the full public press release (with images of a Canadian maple leaf) but also related internal materials. *Compare* Dkt. 479-14, *with* Ex. 227. Marriott instead attaches a plain-text version of the press release, with no images, that excludes the internal materials. *Id.* Only the internal document contains the admission [redacted] *Id.* at '597, '600-01.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. LR 56.1 (B)(2)(a)(2)(iii). Marriott's announcement of *plans* to open properties in *unspecified* locations "worldwide" has no bearing on Marriott's Motion. *See, e.g.*, *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy*

*Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3; *see also Channel Green Ltd v Huge Grand Ltd* [2015] 1 HKLRD 655, at para. 35-41 (evidence reflecting "aspirations of one or other of the parties" is irrelevant to contract interpretation under Hong Kong law).

12. For example, in a publicized announcement, Marriott's then-CEO, Arne Sorenson, stated Marriott's intention to "accelerate growth of the [DELTA HOTELS] brand in Canada and in other markets around the world." Ex. 16, MARRIOTT0540273.

**RESPONSE 12:**

**Disputed.** Delta objects that this statement is unsupported by Marriott's citation. LR 56.1(B)(2)(a)(2)(iii). While Marriott accurately quoted *a portion* of the cited press release, Marriott's quote is misleading because Marriott omits the key parts of the document, including where Marriott states that "[w]ith this acquisition, [Marriott is] continuing [its] focus on building our brand portfolio and growing in attractive regions *outside the U.S.*" Dkt. 479-14 at '273. This fact is thus disputed insofar as Marriott suggests it shows that Marriott announced its intention in 2015 to expand the DELTA HOTELS brand to the U.S.

Delta also objects to the extent Marriott failed to provide the attachments to the press release with its Motion, which include not only the full public press release but also related internal materials. *Compare* Dkt. 479-14, *with* Ex. 227. Only the

internal document contains the admission [redacted] *Id.* at '597, '600-01.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. LR 56.1 (B)(2)(a)(2)(iii). *See, e.g.*, *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3; *see also Channel Green Ltd v Huge Grand Ltd* [2015] 1 HKLRD 655, at para. 35-41.

13. Many major news outlets (e.g., Dow Jones, PR Newswire, and Business Travel News) covered and/or distributed Marriott's announcement. Ex. 16, MARRIOTT0540273; Ex. 17, DELTA_00001233; Ex. 18, MARRIOTT0206495.

**<u>RESPONSE 13</u>:**

**Disputed.** Delta objects that this statement is unsupported by Marriott's citation. LR 56.1(B)(2)(a)(2)(iii). Marriott's citation to only three online news articles based on a single press release does not support that "many major news outlets" "covered and/or distributed Marriott's announcement." Dkt. 479-14; Dkt. 473-03; Dkt 473-04. Delta further objects that this fact is unsupported insofar as Marriott suggests it shows that Marriott announced its intention in 2015 to expand the DELTA HOTELS brand to the U.S. The cited announcement expressly states,

for instance, that Marriott was "focus[ed] on building our brand portfolio and growing in attractive regions *outside the U.S.*" Dkt. 479-14 at '273.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion, including because the cited announcement expressly states that Marriott was "focus[ed] on building our brand portfolio and growing in attractive regions *outside the U.S.*" LR 56.1 (B)(2)(a)(2)(iii). *See, e.g.*, *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3; *see also Channel Green Ltd v Huge Grand Ltd* [2015] 1 HKLRD 655, at para. 35-41.

14. The acquisition closed on April 1, 2015. Ex. 3, Hoffman Depo. at 118:10-25.

**RESPONSE 14:**

**Undisputed.** Delta clarifies however that the Asset Purchase Agreement ("APA") executed between Marriott and its predecessor DHLP is dated as of March 31, 2015. Ex. 42 at '381.

15. Marriott then expanded the brand as planned and promised. Ex. 12, Silverman Depo. at 237:7-9; Ex. 20, Supplemental Expert Report of John G. Plumpe ("Plumpe Report"), ¶ 11.

**RESPONSE 15:**

**Disputed.** Delta objects that this statement is unsupported by Marriott's citation. LR 56.1(B)(2)(a)(2)(iii). To the extent Marriott is referring to a public statement or promise to expand the DELTA HOTELS brand worldwide, including specifically in the United States, Delta objects that Marriott's citation does not support this fact and is contrary to the undisputed record evidence. As discussed above, Marriott never publicly stated it "planned and promised" to open Delta Hotels in the United States. *See, e.g.*, Dkt. 479-14.

Additionally, Marriott's assertion that it "expanded the brand as planned and promised"—without more—is not material to Marriott's Summary Judgment Motion. LR 56.1 (B)(2)(a)(2)(iii). *See, e.g.*, *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3; *see also Channel Green Ltd v Huge Grand Ltd* [2015] 1 HKLRD 655, at para. 35-41.

16. Since acquiring the DELTA HOTELS brand and business, Marriott has deployed over [redacted] in branding, sales, and advertising/marketing to expand the DELTA HOTELS brand worldwide. Ex. 20, Plumpe Report, ¶ 11.

**<u>RESPONSE 16</u>:**

**Disputed.** Delta disputes this statement to the extent that Marriott's citation does not support this fact. LR 56.1(B)(2)(a)(2)(iii). Other than the assertion of its

expert John Plumpe (whom Delta moved to exclude from testifying), Marriott provides no factual evidence to support this statement. Dkt. 462.

In any event, this statement is not material to Marriott's Summary Judgment Motion because it is legally irrelevant and because Marriott's deployment of said money is not necessary to determine any related issue. Further, this statement is not material to Marriott's Summary Judgment Motion to the extent the above-mentioned amount encompasses branding, sales, and advertising/marketing expenditures made outside of the proper delay period, which began in summer 2018 when Delta first discovered Marriott's infringing acts in the U.S. and promptly communicated its objections to Marriott. Ex. 51 at '711; Ex. 326 at 56; *Angel Flight of Georgia, Inc. v. Angel Flight Se., Inc.*, 424 F. Supp. 2d 1366, 1370 (N.D. Ga. 2006) (delay period starts when "the plaintiff 'knows or should know she has a provable claim for infringement'" and stops when "the defendant is notified of plaintiff's objections"). This statement is also immaterial to the extent it includes expenditures for projects outside of the United States. Dkt. 479-15 at ¶154.

17. In 2017 through 2019 alone, Marriott deployed nearly [redacted] to marketing the DELTA HOTELS brand. Ex. 20, Plumpe Report, Tab 8.

**<u>RESPONSE 17</u>:**

**Disputed.** Delta disputes this statement to the extent that Marriott's citation does not support this fact. LR 56.1(B)(2)(a)(2)(iii). Other than the assertion of its

expert John Plumpe (who, Delta moved to exclude from testifying), Marriott provides no factual evidence to support this statement.

In any event, this statement is not material to Marriott's Summary Judgment Motion because it is legally irrelevant and because Marriott's deployment of said money is not necessary to determine any related issue. Further, this statement is not material to Marriott's Summary Judgment Motion to the extent the above-mentioned amount encompasses branding, sales, and advertising/marketing expenditures made outside of the proper delay period, which began in summer 2018 when Delta first discovered Marriott's infringing acts in the U.S. and promptly communicated its objections to Marriott. Ex. 51 at '711; Ex. 326 at 56; *Angel Flight*, 424 F. Supp. 2d at 1370 (delay period starts when "the plaintiff 'knows or should know she has a provable claim for infringement'" and stops when "the defendant is notified of plaintiff's objections"). This statement is also immaterial to the extent it includes expenditures for projects outside of the United States. Dkt. 479-15 at ¶154.

18. In that same period, Marriott incurred over [redacted] in internal costs related to branding, sales, marketing, and advertising the DELTA HOTELS business. *Id.*

**<u>RESPONSE 18</u>:**

**Disputed.** Delta disputes this statement to the extent that Marriott's citation does not support this fact. LR 56.1(B)(2)(a)(2)(iii). Other than the assertion of its

expert John Plumpe (whom Delta moved to exclude from testifying), Marriott provides no factual evidence to support this statement. Dkt. 462.

In any event, this statement is not material to Marriott's Summary Judgment Motion because it is legally irrelevant and because Marriott's deployment of said money is not necessary to determine any related issue. Further, this statement is not material to Marriott's Summary Judgment Motion to the extent the above-mentioned amount encompasses branding, sales, and advertising/marketing expenditures made outside of the proper delay period, which began in summer 2018 when Delta first discovered Marriott's infringing acts in the U.S. and promptly communicated its objections to Marriott. Ex. 51 at '711; Ex. 326 at 56; *Angel Flight*, 424 F. Supp. 2d at 1370 (delay period starts when "the plaintiff 'knows or should know she has a provable claim for infringement'" and stops when "the defendant is notified of plaintiff's objections"). This statement is also immaterial to the extent it includes expenditures for projects outside of the United States. Dkt. 479-15 at ¶154.

19. Today, there are 134 DELTA HOTELS properties worldwide: 41 properties in Canada, 52 in the United States, and 41 more across Asia, Europe, Africa, Latin America, and the Middle East. Ex. 21, https://deltahotels.marriott.com/our-locations/.

**RESPONSE 19:**

**Disputed**. Delta disputes this statement as unsupported by Marriott's citation to the extent the hotel properties identified on Marriott's website include hotels that have not yet been opened. LR 56.1(B)(2)(a)(2)(iii).

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion to the extent it refers to properties outside of the United States, and neither Marriott's breach of contract counterclaim nor its affirmative defenses require a consideration of where Marriott has currently opened hotels. LR 56.1 (B)(2)(a)(2)(iii); *See, e.g.*, *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.*, 2016 WL 7486368 at *3.

20. [redacted] Ex. 23, Deposition of Tim Mapes ("Mapes Depo.") at 54:6-11.

**<u>RESPONSE 20</u>:**

**Disputed.** Delta[3] objects that this statement is unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record insofar as Marriott suggests that Delta has never owned or operated (or does not plan to own or operate) a hotel. LR 56.1(B)(2)(a)(2)(i), (iii). Delta owned a hotel in Japan from

---

[3] Delta objects to Marriott's continued reference to Delta as "DAL." As Marriott's own witnesses testified, Delta is known as "Delta," not "DAL." Ex. 301 at 55:12-58:1; Ex. 302 at 141:19-143:2.

2009-2016, [redacted], and continues to do so today. Ex. 156; Ex. 157 at 51; Ex. 158 at 14; Ex. 10 at 129; Ex. 18 at 35:11-16, 98 :4-6, 102:12-22, 193:10-15; Ex. 133 at 17. Marriott's citation to Mr. Mapes's testimony does not support this statement, as Mr. Mapes testified that he did not know whether Delta managed or franchised hotels. Dkt. 479-16 at 54:12-21.

In any event, this statement is not material to Marriott's Summary Judgment Motion as Marriott did not move on likelihood of confusion. LR 56.1 (B)(2)(a)(2)(iii). Regardless, as discussed in Delta's Motion for Summary Judgment (Dkt. 441), Delta and Marriott offer identical, overlapping and highly related travel services, which are regularly sold and purchased together and discussed together in travel articles referencing both airlines and hotels—which is common for how the travel industry sells such services and how consumers encounter them presented, and causes the public to assume they are interconnected. *See, e.g.*, Ex. 130 ¶¶ 60-103. And all of this causes the public to assume they are interconnected and/or from a single source. *E. Remy Martin*, 756 F.2d at 1530 (the likelihood of confusion analysis considers whether "the parties" services are "the kind that the public attributes to a single source."); *see also* Dkt. 441 at 15-19.

21. [redacted] *Id.* at 58:22-59:2.

**<u>RESPONSE 21</u>:**

**Disputed.** Delta objects that this statement is unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1(B)(2)(a)(2)(i), (iii). The undisputed evidentiary record establishes that Delta has "been in the hotel business" for decades, including selling hotel stays and vacation packages since at least 1973. Ex. 18 at 28:14-23; Ex. 149 at '762. Marriott's own travel industry expert admitted that Delta (like Marriott) sells hotel stays. Ex. 31 at 341:4-13. In connection with offering such hotel services, Delta uses the term "Delta Hotels." Ex. 118. Its hotel bookings have been available at "hotels-delta.com" and delta.com, via its "Delta Hotels," "Delta Stays" and "Delta Vacations" services. Ex. 23 at 236:6-237:22; Ex. 17 at 51:3-9; Ex. 18 at 28:14-29:1; Ex. 119-20, 155. Google Trends data also shows users searching "delta hotel(s)" frequently look to book hotels *through Delta*. Ex. 223 ¶¶32-39. Delta owned a hotel in Japan from 2009-2016, and has [redacted] and revisiting that idea in 2019). Ex. 156 at '395; *see also* Ex. 157 at '551; Ex. 158 at '614; Ex. 18, 35:11-16, 97:24-98:6, 14-16, 102:12-22, 193:10-15; Ex. 133 at 17.Moreover, Marriott's citation to Mr. Mapes's testimony does not

support this fact, as Mr. Mapes (who was not Delta's Rule 30(b)(6) witness on Delta's services) only testified that [redacted] Dkt. 479-16 at 54:6-11, 60:13-21. As discussed above, Delta's 30(b)(6) witness on the topic of Delta's services, Ms. Shannon Womack, who spoke with others at Delta with personal knowledge and reviewed relevant documents, testified that Delta [redacted]. Ex. 18 35:11-16; 97:24-98:6, 14-16, 102:12-22, 193:10-15. As Ms. Womack testified, "Delta is focused on expansion and growth" and has [redacted] but the fact that Marriott has a Delta-branded hotel "is limiting" and "hinders" Delta's brand. *Id.* at 97:24-98:13.

In any event, this statement is not material to Marriott's Summary Judgment Motion as Marriott did not move on likelihood of confusion. Regardless, as discussed in Delta's Motion for Summary Judgment (Dkt. 441), Delta and Marriott offer identical, overlapping and highly related travel services, which are regularly purchased together. *E.g.*, *E. Remy Martin*, 756 F.2d at 1530 (the likelihood of confusion analysis considers whether "the parties" services are "the kind that the public attributes to a single source"); *see also* Dkt. 441 at 15-19.

22. DAL's airline business and Marriott's DELTA HOTELS hotel business (including under Marriott's predecessors) have coexisted around the world for

decades. Ex. 2, MARRIOTT0188696, Dkt. 323-4; Ex. 3, Hoffman Depo. at 141:22-142:7; Ex. 24, DAL's First Amended Objections and Responses to Marriott's Second Set of Requests for Admission ("DAL's Responses to Second Set of RFAs"), Nos. 454, 455, 458.

**RESPONSE 22:**

**Disputed.** Delta objects that this statement is unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1(B)(2)(a)(2)(i), (iii). Neither Marriott's citation to an [redacted] (Dkt. 479-03), nor Mr. Hoffman's deposition testimony support that Delta and the Delta Hotels business "co-existed" in the United States (or elsewhere around the world) for decades. It is undisputed that as of Marriott's acquisition of Delta Hotels in 2015, the Delta Hotels brand was a [redacted] in the U.S and Delta Hotels had "no hotels in the United States" under the name "Delta." Ex. 1 at '055; Dkt. 479-04 at 141:11-17. In fact, at any point in time, Marriott's predecessor DHLP at most had only one hotel in Florida called "Delta Court of Flags," which was open for a few years and closed by 1998. Ex. 23 at 48:8-14; Ex. 225 at '075. Marriott's citation to Delta's Responses to Marriott's Requests of Admission do not show otherwise. They establish only that Delta began offering flights to Canada as of 1972—not that

both parties coexisted *worldwide* (let alone that they have done so for decades). Dkt. 473-10, Nos. 454, 455, 458

Delta further objects to this statement to the extent it suggests that the "airline business" and "hotel business" are separate. As Delta's expert Norman Rose testified, these different sectors of the travel industry are "all part of a single whole" and [i]t's all interconnected." Ex. 356 at 177:20-178:8.

In any event, this statement is not material to Marriott's Summary Judgment Motion, as Marriott did not move on likelihood of confusion or dilution, and even with respect to those issues, the parties' usage outside the United States is irrelevant to this action. Dkt. 248 at 36-37; Dkt. 295 at 20-21; Dkt. 420 at 13-14; *See also, Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3.

23. DAL entered the Canadian market in 1972. Ex. 24, DAL's Responses to Second Set of RFAs, Nos. 454, 455, 458.

**RESPONSE 23:**

**Undisputed.** However, Delta objects to this statement as not material to Marriott's Summary Judgment Motion as it has no bearing on any issue in Marriott's Motion. Dkt. 248 at 36-37; Dkt. 295 at 20-21; Dkt. 420 at 13-14; *See also, e.g.*, *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531;

*Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3.

24. In the United States, DAL has long known of the marketing of Canadian DELTA HOTELS properties to U.S. consumers and the existence of DELTA HOTELS properties in the United States (i.e., the DELTA COURT OF FLAGS resort and the numerous properties opened in the United States after Marriott acquired the brand and years before this case was filed). Ex. 2, MARRIOTT0188696, Dkt. 323-4; Ex. 3, Hoffman Depo. at 141:22-142:7; Ex. 28, MARRIOTT0177332, Dkt. 214-6.

**RESPONSE 24:**

**Disputed.** Delta objects that this statement is unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1(B)(2)(a)(2)(i), (iii). Contrary to Marriott's assertion, as explained in Delta's summary judgment motion, the unrefuted evidentiary record establishes [redacted] Ex. 50 at 10-15, 20; Ex. 51 at '711; Ex. 16 at 215:4-10; Ex. 18 107:25-108:14. Additionally, the record shows that prior to that date, there was only a single Delta Court of Flags hotel in the United States that was open for a few years and closed by 1998. Ex. 23 at 48:8-14; Ex. 225 at '075. The record also shows that Marriott did not open its "first ['Delta'] branded hotel in the" U.S. until April 21, 2016. Ex. 229

at ‘342. Marriott also adopted a new logo that mimicked Delta’s. Ex. 54 at ‘177; Ex. 127 at ‘967; Ex. 9 at 3-5.

Moreover, Marriott’s cited documents and deposition testimony do not establish that Delta had knowledge of the marketing of Canadian Delta Hotels properties to U.S. consumers or of the existence of Delta Hotels properties in the United States prior to 2018. [redacted] with zero evidence to show anyone at Delta ever saw that single ad, does not establish that Delta was aware of marketing to U.S. consumers. Dkt. 479-03. Further, the cited letter in 1986 from Delta’s former attorney only states that he [redacted] and [redacted] and does not establish that Delta was aware of Delta Hotels actively advertising or operating hotels in the U.S. Dkt. 473-14. The deposition testimony of Mr. Hoffman also does not establish that Delta knew of marketing for Delta Hotels properties to U.S. consumers or the existence of Delta Hotels properties in the U.S., nor that Delta consented to such activities. Dkt. 479-04 at 141:22-142:7. Rather, Mr. Hoffman only stated that [redacted]

[redacted] Mr. Hoffman, however, had no personal knowledge of such activities and did not speak with anyone at Delta Hotels or Marriott to prepare for his deposition, and that, prior to his involvement in Marriott's acquisition of DHLP, "[he] didn't know that DHLP existed." Ex. 309 at 20:8-15; Ex. 3 at 29:12-13.

In any event, Marriott's fact statement is not material to Marriott's Summary Judgment Motion. LR 56.1(B)(2)(a)(2)(iii) Delta Hotels properties outside of the United States are not at issue here. Dkt. 248 at 36-37; Dkt. 295 at 20-21; Dkt. 420 at 13-14; *See also, e.g.*, *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3.

Additionally, the single Delta Court of Flags property in the U.S. prior to 2016 (1) was only open for a few years; (2) used a substantially different name ("The Delta Court of Flags"); (3) used a substantially different logo (); and (4) closed by 1998 (long before Marriott's acquisition of the Delta Hotels brand). Ex. 23 at 48:8-14; Ex. 225 at '075; Dkt. 468-10 at '552; *see also Kason*, 120 F.3d at 1206; *Flowers Bakeries Brands, Inc.*, 2010 WL 2662720 at *11; *Univ. of Pittsburgh*, 686 F.2d at 1046.

25. The parties also have co-existing trademark registrations for "Delta" marks in various countries throughout the world, including Australia, Canada,

China, France, Mexico, New Zealand, Peru, the Philippines, and the United States. Ex. 9, Tam Report, ¶ 16(5)(a), Annex 2, Ex. D.

**RESPONSE 25:**

**Disputed.** Delta acknowledges that the parties each have trademark registrations for marks that include the word "Delta" in countries outside the United States, but otherwise disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1(B)(2)(a)(2)(i), (iii). As an initial matter, each of Marriott's U.S. trademark registrations for DELTA-formative marks that it filed since its acquisition of the Delta Hotels brand and business either has been abandoned by Marriott or is the subject of opposition or cancellation proceedings by Delta. Ex. 276, ¶21.

Additionally, with respect to Marriott's trademark registrations outside the U.S., Delta has filed cancellation and opposition proceedings, and for those proceedings that have resulted in decisions, each decision that has discussed the Agreement has found it geographically limited to Hong Kong and China. *Id.* Ray Decl., ¶ 62; *E.g.*, Ex. 44 at ¶¶ 73-76; Ex. 303 at 7; Ex. 304 at 4; Ex. 305 at 6. Delta reserves its right to file additional actions, and has continued to file actions on a case by case jurisdiction-by-jurisdiction basis, which makes sense given the territorial nature of trademarks. Delta has only consented to a handful of Marriott's applications in countries such as Taiwan, Chile, Israel, and Australia at Marriott's

request, consistent with Paragraph 9 of the Agreement and as a courtesy in good faith. Dkt 480-02; Dkt 480-03; Dkt 480-04; Dkt 480-07; Dkt 480-08; Dkt 480-09; Dkt. 480-25 at '596. Although Delta granted some of Marriott's requests, it has consistently emphasized [redacted] Dkt. 480-24 at '599; Dkt. 480-25 at '596.

Marriott likewise emphasized that [redacted] Dkt. 480-24 at '601; *see also, e.g., id.* at '599 [redacted] But when Delta requested consents, however, Marriott refused to give consent for Delta applications.

In any event, this statement is not material to Marriott's laches or related affirmative defenses As Delta's expert Philip Hampton explained, [redacted] Ex. 276, ¶ 14. Moreover, Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria*, 2023 WL 4239255 at *2 (holding that Lanham Act provisions prohibiting trademark infringement "are not extraterritorial and that they extend only

to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially") *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

26. DAL flew, currently flies, or has [redacted] to each of these countries. Ex. 27, MARRIOTT0558420.

**<u>RESPONSE 26</u>:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, as a single Wikipedia article does not show where Delta actually flies, has flown, or plans to fly. Delta also objects to this statement as unsupported, as it is unclear what timeframe Marriott is referencing.

27. Marriott itself filed about 400 applications for DELTA HOTELS marks after the acquisition on top of the hundreds already on file or registered by its predecessor. Ex. 70, Trademark Search.

**RESPONSE 27:**

**Undisputed.** However, this statement is not material to Marriott's Summary Judgment Motion. LR 56.1(B)(2)(a)(2)(iii). The filing of mere applications, particularly in foreign jurisdictions, has no bearing on Marriott's laches or related affirmative defenses. *See* McCarthy §31:40 ("[T]he trademark owner is put on notice for laches only by real world events, not by…a registration by defendant."); *See also, e.g.*, *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.*, 2016 WL 7486368 at *3. Nor is it material to Marriott's counterclaim and defenses regarding the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong

Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

28. DAL did not object to, oppose, or seek to cancel a single Marriott application/registration until just months before this lawsuit when DAL acted relative to a few registrations in three jurisdictions (Columbia [*sic*], India, and Egypt). Ex. 94, DAL's Objections.

**RESPONSE 28:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1(B)(2)(a)(2)(i), (iii). Delta never gave Marriott consents for any trademark application or registration or use in the U.S., and when Delta learned of Marriott's infringement in the U.S. in summer of 2018, it promptly raised the issue with Marriott, at which point the parties engaged in "extensive and lengthy" settlement discussions. Dkt. 33 ¶ 45; Dkt. 1. Delta was forced to file suit in early 2020, and also filed opposition/cancellation proceedings against Marriott's U.S. applications and registrations. *Id.*; Ex. 334; Dkt. 482-01; Ex. 335; Ex. 336; Ex. 337. Each of Marriott's U.S. trademark applications and registrations for DELTA-formative marks that it filed since its acquisition of the Delta Hotels brand and business either

has been abandoned by Marriott or is the subject of opposition or cancellation proceedings by Delta. Ex. 276. ¶21.

Additionally, with respect to Marriott's trademark registrations outside the U.S., Delta has filed cancellation and opposition proceedings. Other courts and tribunals that have considered the Agreement have come to the conclusion it is limited to Hong Kong and China, including in the UK, Ecuador, Egypt, and Peru, while others remain pending in other jurisdictions. Ex. 14 at '488; Ex. 303 at 7; Ex. 304 at 9; Ex. 305 at 4-6. And each decision that has discussed the Agreement has found it geographically limited to Hong Kong and China . *Id.* Delta reserves its right to file additional actions, and has continued to file actions on a case by case basis jurisdiction-by-jurisdiction basis, which makes sense given the territorial nature of trademarks. Delta has only consented to a handful of Marriott's applications in countries such as Taiwan, Chile, Israel, and Australia at Marriott's request, consistent with Paragraph 9 of the Agreement and as a courtesy in good faith. Dkt 480-02; Dkt 480-03; Dkt 480-04; Dkt 480-07; Dkt 480-08; Dkt 480-09; Dkt. No. 480-25 at '596. Although Delta granted some of Marriott's requests, it has consistently emphasized that [redacted]. Dkt. 480-24 at '599; Dkt. No. 480-25 at '596.

In any event, this statement is not material to Marriott's Summary Judgment Motion. Delta's lack of objection, opposition, or cancellation efforts as to Marriott's applications and/or registrations for DELTA HOTELS marks in foreign jurisdictions are not material to laches or Marriott's related affirmative defenses. *See Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3; *see also Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1558 (11th Cir. 1991) ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1142 (11th Cir. 2018) ("[W]aiver has no trademark roots."); *Cobb Bank & Tr. Co. v. Am. Mfr. Mut. Ins. Co.*, 459 F. Supp. 328, 334 (N.D. Ga. 1978) (failure to file oppositions does not constitute "intended deception" required for estoppel). Nor is this statement material to Marriott's claims of breach of contract, estoppel by convention, or related affirmative defenses, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2)

(estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

29. In 1986, DAL became aware of Delta Hotels Limited's ("DHL") U.S. trademark applications for the marks DELTA and DELTA HOTELS for "hotel, motel, and restaurant services." Ex. 28, MARRIOTT0177332, Dkt. 214-6; Ex. 33, MARRIOTT0000798 at 0000798; Ex. 34, MARRIOTT0556460 at 0556460.

**<u>RESPONSE 29</u>:**

**Undisputed.** However, this statement is not material to Marriott's Summary Judgment Motion, as the registrations resulting from these applications were cancelled in 2008 after Marriott's predecessor failed to show they were in use, and thus Marriott never acquired them. Exs. 55-56; *see also Action Temp. Servs., Inc. v. Lab Force, Inc.*, 870 F.2d 1563, 1566 n.9 (Fed. Cir. 1989). Moreover, other than one specimen from 1991 referencing a single hotel in Florida that closed many years before the 2015 Marriott acquisition (which was improperly filed in 2008 even though the hotel had closed down many years before), the statements of use submitted by DHL in connection with these applications showed only use in connection with a hotel in Canada. Dkt. 473-19at '830; Ex. 276 (Hampton Rpt.), ¶20. At that time, the branding of Delta Hotels also differed from Marriott's relevant use in this case. Ex. 23 at 48:8-14; Ex. 225 at '075; Dkt. 468-10 at '552; *see also Kason*, 120 F.3d at 1206; *Flowers Bakeries Brands, Inc.*, 2010 WL 2662720 at *11; *Univ. of Pittsburgh*, 686 F.2d at 1046.

30. DHL is DHLP's (and thus Marriott's) predecessor-in-interest. Ex. 29, DELTA_00027819 at 00027821.

**RESPONSE 30:**

**Undisputed.**

31. After opposing these applications before the Trademark Trial and Appeal Board of the U.S. Patent and Trademark Office ("USPTO"), DAL withdrew the cases with prejudice, relinquishing its right to challenge at the USPTO the DELTA and DELTA HOTELS marks (and substantially similar marks) for "hotel, motel, and restaurant services." Ex. 32, Rebuttal Expert Report of Rany Simms, 5; Ex. 33, MARRIOTT0000798 at 0000798, 0000800-01; Ex. 34, MARRIOTT0556460 at 0556460, 0556463-64.

**RESPONSE 31:**

**Disputed.** Delta objects to this statement to the extent it does not comply with Local Rule 56.1(B)(1)(c), as it contains a legal conclusion, *i.e.* that Delta relinquished its right to challenge the DELTA and DELTA HOTELS marks (and substantially similar marks) for "hotel, motel, and restaurant services." As discussed in Delta's memorandum of law in opposition to Marriott's motion for summary judgment, Marriott's contention is legally wrong, and also not supported by Marriott's expert on USPTO practice, Rany Simms. *See* Delta's Br. in Opp. to Marriott's MSJ at n.16. *See, e.g., Beasley v. Howard*, 14 F.4th 226, 235 (3d Cir. 2021) (holding party does not "fors[ake] future infringement claims against the opposing party by pursuing an opposition or cancellation action before the TTAB");

McCarthy § 32:82 ("[C]laim preclusion cannot bar infringement claims brought by one who failed to succeed in a TTAB opposition[.]"),

Delta also disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1 (B)(2)(a)(2)(i), (iii). Marriott cites no evidence supporting that, by dismissing cases with prejudice, Delta relinquished any right to challenge the DELTA and DELTA HOTELS marks (and substantially similar marks) for "hotel, motel, and restaurant services." In fact, even its expert Mr. Simms does not claim a dismissal with prejudice of oppositions would have an estoppel effect after *2008*, when those two registrations were cancelled. Ex. 323 at 5. And Mr. Simms only discussed the estoppel effect *before the USPTO* for purposes of registration; he makes no claim about the effect of such a dismissal in a district court action. *See id.* at 4. Moreover, as Delta's expert on USPTO procedure, Philip Hampton, explained, [redacted] Ex. 276 at ¶ 17.

In any event, this statement is not material to Marriott's Summary Judgment Motion, as the registrations ceased to exist long before Marriott's 2015 acquisition of Delta Hotels. Exs. 55-56; *see also Action Temp. Servs.*, 870 F.2d at 1566 n.9.

The mere fact that Delta withdrew its oppositions has no bearing on the issues raised in Marriott's Motion. *See, e.g., Beasley*, 14 F.4th at 235 (a party does not "fors[ake] future infringement claims [ ] by pursuing an opposition or cancellation action before the TTAB"); McCarthy § 32:82 ("[C]laim preclusion cannot bar infringement claims brought by one who failed to succeed in a TTAB opposition[.]"); *see also Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel).

32. DAL withdrew the cases knowing that the DELTA HOTELS business was "interested in . . . constructing hotels in the United States." Ex. 28, MARRIOTT0177332, Dkt. 214-6.

**<u>RESPONSE 32</u>:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation to the extent Marriott suggests Delta consented to the construction of Delta Hotels in the U.S. The undisputed record shows that Marriott's predecessor DHL had no hotels in the U.S. at the time of the July 31, 1986 letter, and in that letter, Delta's inside counsel, [redacted] Dkt. 214-6. Mr. Zampol did not [redacted]

[redacted] Ex. 338, at 181:13-182:17, 194:20-195:8, 195:19-196:12.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion, as the registrations resulting from these applications were cancelled in 2008 after Marriott's predecessor failed to show they were in use, and thus they ceased to exist long before Marriott's 2015 acquisition of Delta Hotels. Exs. 55-56; *see also Action Temp. Servs.*, 870 F.2d at 1566 n.9. Delta's withdrawal of USPTO oppositions to certain DHL applications also has no bearing on Marriott's Motion as the size and scope of DHL's activities and reach differs vastly from that of Marriott. *Univ. of Pittsburgh*, 686 F.2d at 1046 (laches does not apply when "the character and scope of the alleged infringement changed substantially"). This statement is also immaterial as to any other defense raised in Marriott's Motion. *Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[w]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel).

33. In 1993, DAL reiterated that it was [redacted] in a letter from DAL's then in-house counsel Patricia Lamar. Ex. 35, MARRIOTT0137915, Dkt. 214-7.

**<u>RESPONSE 33</u>:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1 (B)(2)(a)(2)(i), (iii). Ms. Lamar's letter (which Marriott only partially quotes) relates to an [redacted] Dkt. 474-01, Dkt. 214-7. Marriott also attaches only the first page of the letter. Notably, in [redacted]. Ex. 23 at 48:8-14; Ex. 225 at '075. [redacted] *Id.*

In any event, this statement is not material to Marriott's Summary Judgment Motion, as the letter relates to [redacted] (which is irrelevant to this case), and also was sent in 1993, long before Marriott's acquisition. Dkt. 248 at 37; Dkt. 295 at 20-21; Dkt. 420 at 13-14. Moreover, DHL's prior U.S. registrations were cancelled for lack of use in 2008 and not acquired by Marriott, so are irrelevant. Exs. 55-56; *see also Action Temp. Servs.*, 870 F.2d at 1566 n.9 ((“[W]hatever benefits a federal registration confers are lost when that registration is canceled[.]”) (citing *Anderson, Clayton & Co. v. Krier*, 478 F.2d 1246, 1248, 178 USPQ 46, 47 (CCPA 1973)).

34. [redacted] Ex. 15, Deposition of W. Paul Zampol (“Zampol Depo.”) at 61:3-13, 70:17-71:7, 215:6-216:12, 117:16-119:10,127:25-129:6.

**<u>RESPONSE 34</u>:**

**Undisputed.** However, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. Events occurring long before the 2015 Agreement at issue in Marriott's counterclaims as well as Marriott's 2015 DELTA HOTELS acquisition have no bearing on any issue in Marriott's motion. At the time of the acquisition, Marriott admits Delta Hotels was [redacted] Ex. 1 at ’055; Ex. 226 at ’912. Additionally, Marriott [redacted]

[redacted] Ex. 54 at '177; Ex. 127 at '967; Ex. 9 at 3-5. And Delta did not [redacted] Ex. 50 at 10-15; Ex. 51; Ex. 16 at 215:4-10; Ex. 18 at 107:25-108:14. Thus, Marriott's implication that "the passage of time" since the 1980's and 1990's is relevant is misleading and a red herring. *See, e.g.*, Dkt. 248 at 37; Dkt. 295 at 20-21; Dkt. 420 at 13-14; *see also Kason*, 120 F.3d at 1206 ("The senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"); *Univ. of Pittsburgh*, 686 F.2d at 1046 (laches does not apply when "the character and scope of the alleged infringement changed substantially"). Moreover, Delta objects to Marriott's statement to the extent it attempts to suggest that its evidentiary burden should be reduced given the passage of time. *See Jabil Inc. v. Gen. Elec. Co.*, 2022 WL 18459549, at *3 (N.D. Ga. Oct. 13, 2022) (noting "[a] party cannot be sanctioned for spoliation of [documents] if there is no duty to preserve [documents] in the first place," and such duty only "arises once litigation is pending or reasonably foreseeable").

35. DAL did not object to, oppose, or seek to cancel any of the numerous DELTA HOTELS applications/registrations filed or registered between 1987 and 2020 in the U.S. for hotel services. Ex. 25, DAL's Responses to First Set of RFAs, Nos. 20, 25, 35-42; Ex. 36, MARRIOTT0000001 at 0000011 (Reg. No.

2675853/Serial No. 75710784); Ex. 37, MARRIOTT0001025 at 0001039 (Reg. No. 4587285); Ex. 38, MARRIOTT0000864 at 0000874 (Reg. No. 4722193/Serial No. 86015271); Ex. 39, TSDR Printout for DELTA HOTELS; Ex. 40, TSDR Printout for DELTA HOTELS original logo; Ex. 41, TSDR Printout for DELTA PRIVILEGE; Ex. 42, TSDR Printout for DELTA IS DIFFERENCE; Ex. 43, TSDR Printout for THE DELTA DIFFERENCE; Ex. 44, TSDR Printout for DELTA HOTELS AND RESORTS; Ex. 45, TSDR Printout for DELTA HOTELS AND RESORTS logo; Ex. 46, July 7, 2023 Deposition of Alan Arnold ("7/7/23 Arnold Depo.") at 372:7-373:23.

**<u>RESPONSE 35</u>:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1 (B)(2)(a)(2)(i), (iii). As an initial matter, Marriott's statement omits that [redacted] *See, e.g.*, Ex. 276, ¶88. Prior to Marriott's [redacted] *Id.* Moreover, other than one specimen from 1991 referencing a single hotel in Florida that closed many years before the 2015 Marriott acquisition (which was improperly filed in 2008 even though the hotel had closed down many years before), the specimens of use submitted by DHL in connection with these applications showed only use in connection with a hotel in

Canada. Dkt. 473-19 at '830. Moreover, it is undisputed that [redacted] Dkt. 479-04, at 141:11-17.

Notably, [redacted] *Id.* Delta's 30(b)(6) witness and former in-house counsel, Alan Arnold, testified he had [redacted] them. Ex. 341 at 374:9-14. And regardless, when Delta learned of Marriott's [redacted] Ex. 50 at 10-15; Ex. 51; Ex. 16 at 215:4-10; Ex. 18 at 107:25-108:14; Dkt. 33 ¶ 45. Delta was forced to file suit in early 2020, and also filed opposition/cancellation proceedings against Marriott's U.S. applications and registrations. Dkt. 33 ¶ 45; Dkt. 1; Ex. 334; Dkt. 482-01; Ex. 335; Ex. 336; Ex. 337. [redacted] *See, e.g.*, Ex. 276, ¶21.

In any event, this statement is not material to Marriott's Summary Judgment Motion. *See* McCarthy §31:40 ("[T]he trademark owner is put on notice for laches

only by real world events, not by…a registration by defendant."); *Kason*, 120 F.3d at 1206 ("The senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"); *Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel).

36. DAL waited until a year after filing this lawsuit before doing so. Ex. 95, U.S. Oppositions.

**RESPONSE 36:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1 (B)(2)(a)(2)(i), (iii). As explained above, Marriott's statement omits that [redacted] Ex. 276, ¶88. Notably, [redacted] *Id.* Alan Arnold testified he had [redacted] them. Ex. 341 at 374:9-14. When Delta [redacted]

[redacted] Ex. 50 at 10-15; Ex. 51; Ex. 16 at 215:4-10; Ex. 11 at 107:25-108:14. Delta was forced to file suit in early 2020, and also filed opposition/cancellation proceedings against Marriott's U.S. applications and registrations. Dkt. 33 ¶ 45; Dkt. 1; Dkt. 475-16. [redacted] *See, e.g.*, Ex. 276, ¶21.

In any event, this statement is not material to Marriott's Summary Judgment Motion. McCarthy §31:40 ("[T]he trademark owner is put on notice for laches only by real world events, not by…a registration by defendant."); *Kason*, 120 F.3d at 1206 ("The senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"); *Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel).

37. DAL did not object to any of these applications even though it admits that, as of May 6, 2015, it was aware that Marriott and its predecessor used "various marks for hotel-related goods and services that included the word 'Delta'" in the United States. Ex. 26, DELTA_00212308 at 00212470.

**RESPONSE 37:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1 (B)(2)(a)(2)(i), (iii). Marriott cites a document from the opposition proceeding that *Marriott* instituted before the TTAB regarding Delta's application for DELTA ONE in connection with lounge services (including specifically for "air travelers"). In that proceeding, Marriott claimed that Delta's registration of its DELTA ONE mark was likely to cause confusion. Ex. 11, at '606. In its Answer and Affirmative Defenses in that proceeding, Delta merely stated that "it was aware that Marriott and its predecessor in interest ***had generally used*** [marks including the word 'Delta'] ***in connection with the design shown*** in Reg. Nos. 2,675,853 and 4,047,401," namely, DELTA HOTELS and DELTA HOTELS AND RESORTS Dkt. 473-12 at '366-67, 470. Delta did not state that it was aware of Marriott or its predecessor *having hotels* in the U.S., nor would that have made any sense given that there were *no* such hotels at the time of Marriott's acquisition in 2015, and Marriott's first U.S. Delta Hotel opened in April 2016. Dkt. 479-04, at 141:11-17, 150:18-23, 254:3-14. Thus, Marriott's factual statement is misleading and mischaracterizes the record. Moreover, as discussed above, [redacted]

[redacted]

In any event, this statement is not material to Marriott's Summary Judgment Motion. McCarthy §31:40 ("[T]he trademark owner is put on notice for laches only by real world events, not by…a registration by defendant."); *Kason*, 120 F.3d at 1206 (The senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"); *see also L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261 (subsequent conduct is inadmissible under Hong Kong law for contract interpretation); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel); *see also Univ. of Pittsburgh*, 686 F.2d at 1046 (laches does not apply when "the character and scope of the alleged infringement changed substantially").

38. This lawsuit, filed five years after Marriott's acquisition of the brand, was the first time DAL objected to Marriott's continued use of DELTA HOTELS in the U.S. Ex. 25, DAL's Objections and Responses to Marriott's First Set of Requests for Admission ("DAL's Responses to First Set of RFAs"), Nos. 19, 20.

**RESPONSE 38:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1 (B)(2)(a)(2)(i), (iii). As a preliminary matter, and as explained above, it is undisputed that Delta Hotels had "no hotels in the United States" as of Marriott's acquisition in 2015, and Marriott opened its first U.S. Delta Hotel in April 2016. Mot. 16-17. Additionally, far from waiting until filing this lawsuit, the undisputed evidentiary record establishes that [redacted] Ex. 51; Ex. 50 at 10-15. The parties subsequently engaged in "extensive and lengthy" settlement discussions over the following 19 months, until Delta was forced to file suit in early 2020. Dkt. 33 ¶ 45. Moreover, Marriott's citation does not support this statement, as the cited Objections and Responses to Marriott's Requests for Admission state that [redacted] Dkt. 473-11, Nos. 19, 20.

In any event, this statement is not material to Marriott's Summary Judgment Motion because the relevant period for purposes of Marriott's affirmative defenses

is when Delta's legal department became aware of the infringement. *See* McCarthy § 31:39 ("A corporation is not charged with notice if business dealings with defendant were conducted by lower echelon employees who had no duty to report instances of trademark infringement."); *see also Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 363 (2d Cir. 1959); *Guardian Life Ins. Co. of Am. v. Am. Guardian Life Assur. Co.*, 943 F. Supp. 509, 520 (E.D. Pa. 1996), *abrogated on other grounds by A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198 (3d Cir. 2000); *Alphaville Design, Inc. v. Knoll, Inc.*, 627 F. Supp. 2d 1121, 1134 (N.D. Cal. 2009); *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 2006 WL 8450207, at *10 (C.D. Cal. Mar. 9, 2006); *U.S. Philips Corp. v. ATI Techs., Inc.*, 2008 WL 2073928, at *3 (S.D.N.Y. May 8, 2008).

39. In 2013, DHL filed trademark applications for DELTA HOTELS marks in Hong Kong and China, which, in addition to hotel services, covered air transportation and an array of other services, i.e., "transportation services of passengers by air, sea or land," "escorting and transport of travellers", and "boat rental." Ex. 48, Trademark Coexistence Agreement ("Agreement"), Dkt. 33-1, Recital A, Schedule 1.

**<u>RESPONSE 39</u>:**

**Undisputed.** Though Delta clarifies that the trademark applications that DHL filed, which are referenced in the Agreement (in Schedule 1), related to word and design marks.

40. Because trademark registrations in Hong Kong and China do not require proof of use, it is not uncommon to register for a wide array of services even if not offered there. Ex. 49, International Trademark Association ("INTA") Practice Guides Report Hong Kong and China, Section IV.E.

**RESPONSE 40:**

**Disputed.** Delta objects to this statement to the extent it does not comply with Local Rule 56.1(B)(1)(c) because it contains a legal conclusion, *i.e.* that trademark registrations in Hong Kong and China do not require proof of use.

41. In 2014 and 2015, DAL opposed DHL's Hong Kong and China trademark applications respectively. Ex. 48, Agreement, Dkt. 33-1, Recitals; Ex. 50, MARRIOTT0211400 at 0211408-09.

**RESPONSE 41:**

**Undisputed.**

42. Negotiations of the Agreement also took place in 2014 and 2015. Ex. 3, Hoffman Depo. at 177:7-9, 179:19-24; Ex. 50, MARRIOTT0211400.

**RESPONSE 42:**

**Undisputed.**

43. As part of the agreement ultimately reached, DAL allowed these applications to register, so long as certain non-hotel services (e.g., various "transportation services," including "transportation services of passengers by air, sea or land," and "loyalty programs" not expressly limited to hotels) were deleted or narrowed. Ex. 48, Agreement, Dkt. 33-1, ¶¶ 1-4, Schedule 1.

**RESPONSE 43:**

**Undisputed**, but to be clear, "the agreement ultimately reached" was as to Hong Kong and PRC. *E.g.*, Dkt. 33-1, Recital E.

44. DHLP is the named party in the Agreement because it took over ownership of DHL's Hong Kong and China trademark applications before the agreement was signed.Ex. 29, DELTA_00027819 at 00027821..

**<u>RESPONSE 44</u>:**

**Undisputed.**

45. In January 2015, [redacted] Ex. 3, Hoffman Depo. at 109:14-110:18.

**<u>RESPONSE 45</u>:**

**Undisputed.** Although Delta objects to this statement to the extent Mr. Hoffman did not use the term [redacted] but rather testified that [redacted] Dkt. 479-04 at 110:15-18.

46. [redacted] Ex. 3, Hoffman Depo. at 109:14-111:4, 205:4-20; Ex. 12, Silverman Depo. at 242:20-243:9; 258:6-13; 272:21-273:14; Ex. 13, APA § 8.1.2.

**<u>RESPONSE 46</u>:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1 (B)(2)(a)(2)(i), (iii). While Delta does not dispute that the cited Asset Purchase Agreement states [redacted] (Ex. 13, APA § 8.1.2), Marriott's

citation does not support that [redacted]. In fact, the Asset Purchase Agreement, explicitly states that [redacted] Ex. 42 at '689. Moreover, Mr. Hoffman testified that [redacted] Dkt. 479-04 at 109:14-111:4, 205:4-20. Mr. Silverman did not [redacted] Ex. 354 at 272:21-273:14.

In fact, the undisputed evidentiary record establishes that both parties understood the coexistence agreement to be limited to Hong Kong and China. In [redacted] Ex. 306 at '461. Additionally, [redacted] Ex. 41 at '853. The subsequent correspondence continued this theme. *See* Ex. 310 at

‘665 [redacted] And Marriott re-emphasized this when the agreement was completed, writing [redacted] that [redacted] Ex. 240. And as referenced above, [redacted] Ex. 42 at ‘689.

In any event, Delta objects to this statement as not material to Marriott’s Summary Judgment Motion. LR 56.1(B)(2)(a)(2)(iii). Neither Marriott’s subjective “condition[s]” for closing its deal nor those it imposed upon third-party DHL has any bearing on any issue in Marriott’s Summary Judgment Motion. *Channel Green Ltd v Huge Grand Ltd* [2015] 1 HKLRD 655 at para. 34-37 (evidence that “merely reflect[s] the aspirations of one or other of the parties” is irrelevant and inadmissible under Hong Kong law).

47. [redacted] Ex. 13, MARRIOTT0189934 at 0190022 (APA § 10.3(1)).

**<u>RESPONSE 47</u>:**

**Disputed.** Although [redacted] Delta objects to [redacted]

[redacted] *See generally*, Dkt. 479-11.

48. Marriott thus intervened in the negotiation of the Agreement. Ex. 3, Hoffman Depo. at 109:14-111:4, 205:4-20.

**RESPONSE 48:**

**Disputed.** Although Delta does not dispute that [redacted] To the extent that Marriott contends that Marriott took steps to [redacted] as discussed above in response to Paragraph No. 46. Delta also notes that [redacted] Dkt. 479-04 at 110:19-24.

49. In February 2015, Marriott's Rick Hoffman (the Executive Vice President leading the acquisition) contacted DAL's Senior Vice President, Government Affairs, Andrea Newman about the status of the Agreement. Ex. 3, Hoffman Depo. at 26:7-13, 112:18-113:22.

**RESPONSE 49:**

**Undisputed**, though Delta notes [redacted] Dkt.479-04 at 111:18-112:22.

50. Mr. Hoffman told Ms. Newman that Marriott was buying the DELTA HOTELS brand and business, that Marriott planned to grow the brand around the world, and that there was a pending Agreement to be finalized and signed. *Id.* at 110:15-24, 112:12-17, 115:14-116:2.

**<u>RESPONSE 50</u>:**

**Disputed.** Delta does not dispute that [redacted] Nevertheless, Delta objects to and disputes Marriott's assertion that [redacted] as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1(B)(2)(a)(2)(i), (iii). As an initial matter, Marriott cites to Mr. Hoffman's testimony regarding [redacted] Ex. 306 at '461. And, as explained above, numerous other documents in the undisputed record similarly establish that both parties understood the Agreement to be limited to Hong Kong and China. Ex. 41 at '853; Ex. 310 at '665; Ex. 240.

Although Marriott cites Mr. Hoffman's testimony, [redacted] Dkt. 479-04 at 111:20-112:17, 116:15-25. After he was asked [redacted] Dkt. 479-04 at 116:15-25.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. *See Channel Green Ltd v Huge Grand Ltd* [2015] 1 HKLRD 655 at para. 34-37 (evidence that "merely reflect[s] the aspirations of one or other of the parties" is irrelevant and inadmissible under Hong Kong law).

51. Mr. Hoffman later wrote Ms. Newman, stating that Marriott wanted to make sure that there was "no outstanding dispute with [DAL]" and that Marriott "would like to get this agreement executed." *Id*. at 190:15-17, 193:12-17.

**<u>RESPONSE 51</u>:**

**Disputed.** Delta does not dispute that Marriott accurately quotes the cited deposition testimony, but disputes and objects to this statement to the extent it suggests that Marriott was referring to a global dispute, as [redacted] Dkt. 479-04 at 193:18-21. Additionally, Marriott again failed to cite the referenced email, which specifically states that [redacted]

[redacted] Ex. 306 [DELTA_00032460] at '461. As explained above, numerous other documents in the undisputed record similarly establish that both parties understood the Agreement to be limited to Hong Kong and China. Ex. 41 at '853; Ex. 310 at '665; Ex. 240.

52. Ms. Newman connected Mr. Hoffman to DAL's in-house counsel charged with DAL's trademark protection and enforcement, Alan Arnold, who discussed the Agreement with Mr. Hoffman. *Id.* at 194:13-198:10; Ex. 51, January 30, 2023 Deposition of Alan Arnold ("1/30/23 Arnold Depo.") at 47:18-49:3.

**<u>RESPONSE 52</u>:**

**Undisputed.** Delta clarifies, however, that Ms. Newman was not Delta's trademark counsel and merely passed on Mr. Hoffman's email to Mr. Arnold. Ex. 340 at 252:4-10.

53. Around February or March 2015, Mr. Hoffman told Mr. Arnold that Marriott did not want to close the acquisition while there was a pending dispute with DAL. Ex. 51, 1/30/23 Arnold Depo. at 20:3-21:4.

**<u>RESPONSE 53</u>:**

**Disputed.** Delta does not dispute that Mr. Hoffman spoke with Mr. Arnold, but disputes and objects to this statement to the extent it suggests, that Mr. Hoffman [redacted] Mr. Hoffman testified he [redacted] Dkt. 479-04 at 116:15-25. As explained above, numerous other documents in the undisputed record similarly

establish that both parties understood the Agreement to be limited to Hong Kong and China. Ex. 41 at '853; Ex. 310 at '665; Ex. 240.

54. Mr. Arnold told Mr. Hoffman that he would look into the issue. Ex. 3, Hoffman Depo. at 198:1-10; Ex. 51, 1/30/23 Arnold Depo. at 20:19-20.

**<u>RESPONSE 54</u>:**

**Undisputed.**

55. Following Mr. Arnold and Mr. Hoffman's discussions, DAL and DHLP signed the Agreement in March 2015. Ex. 48, Agreement, Dkt. 33-1.

**<u>RESPONSE 55</u>:**

**Undisputed.** Alhough, as explained above, the undisputed record establishes that both parties understood the Agreement to be limited to Hong Kong and China. Ex. 41 at '853; Ex. 310 at '665; Ex. 240. Additionally, the Asset Purchase Agreement between Marriott and Delta Hotels explicitly states that [redacted] Ex. 42 at '689.

56. Under the Agreement, DAL and DHLP (1) memorialized the continued coexistence of their respective brands and (2) resolved the registration issues that arose in Hong Kong and China. *Id.* at ¶¶ 1-8.

**<u>RESPONSE 56</u>:**

**Disputed.** While Delta does not dispute that, under the Agreement, Delta and DHLP resolved the registration issues that arose in Hong Kong and China, Marriott's citation does not support that the parties memorialized "the continued coexistence

of their respective brands," as Marriott cites no evidence the brands previously coexisted in Hong Kong and China, or elsewhere. LR 56.1 (B)(2)(a)(2)(iii). Moreover, Marriott's statement is contrary to the undisputed factual record in its characterization that the Agreement "memorialized" the parties' prior "coexistence," as well as the implication that the Agreement applied globally. *See, e.g.*, Ex. 41 at '853; Ex. 310 at '665; Ex. 240.

Among other undisputed facts of the Agreement, Recital E explicitly states the Agreement's purpose to establish a co-existence "in Hong Kong and PRC." Ex. 14 at '486. Paragraph 5 says Delta will not object to the applications as amended or uses of the marks in HK and PRC, and Paragraph 6 says Delta will not object to future applications, registrations, or use for the same or similar marks. Id. at '487. Nowhere in Paragraph 6 is there any statement or suggestion that it has a worldwide scope. Instead, the parties' undertaking as to "other jurisdictions" is explicitly set forth in (non-binding) Paragraph 9, which says that in "other jurisdictions" the parties will work toward "a mutually acceptable compromise." Ex. 14 at '488. The first sentence of Paragraph 9 is the only reference to "other jurisdictions." *Id.* The parties agree that it is unenforceable as a matter of law and cannot serve as the basis for Marriott's counterclaim. Mot. 38 n.20. The Agreement's termination provision in Paragraph 13 also confirms its limited scope. It says that if either party abandons

its HK and PRC marks, "this Agreement shall terminate without further action by either party." Ex. 14 at '489. It would make no sense to let a party terminate a worldwide agreement unilaterally, and without notice, merely by abandoning marks only in HK and PRC. Ex. 36 ¶85.4.2. Similarly, Paragraph 12 says the Agreement will bind any person "validly exploiting the parties' respective Delta Hotels Marks and Delta Air Lines Marks"—i.e., their marks in HK and PRC. Ex. 14 at '488. If the Agreement actually extended worldwide, no doubt the parties would have ensured it bound anyone validly using their marks worldwide. But it did not. Ex. 14 at '486.

57. The recitals of the Agreement define, among other things, the parties' then-existing Hong Kong and China applications and registrations for their respective "Delta" marks. *Id*. at Recitals.

**RESPONSE 57:**

**Disputed.** Delta does not dispute that the recitals identify certain applications and registrations filed by the parties in Hong Kong and China for "Delta"-formative marks, as well the terms "PRC," "Oppositions" and "Published Marks," but otherwise disputes this statement to the extent Marriott contends it defines "other things." Dkt. 474-14, Recital E. Delta further notes that the recitals specify that the parties "mutually agreed that the Delta Hotels marks may co-exist with the Delta Air Lines Marks ***in Hong Kong and PRC***." *Id.* To the extent Marriott suggests that the

recitals of the agreement imply a broader scope than Hong Kong and PRC, disputed as unsupported.

58. Recital A defines "Delta Hotels Applications," "Delta Hotels Registrations," and "Delta Hotels Marks," which are enumerated in Schedule 1. *Id.* at Recital A, Schedule 1.

**RESPONSE 58:**

**Undisputed.**

59. Recital B defines "Delta Air Lines Marks," which are enumerated in Schedule 2. *Id*. at Recital B, Schedule 2.

**RESPONSE 59:**

**Undisputed.**

60. Recital B further provides that DAL "also owns applications/registrations for 'DELTA VACATIONS' . . . in other jurisdictions," including the United States and Japan, which are listed in Schedule 3. *Id.* at Recital B, Schedule 3.

**RESPONSE 60:**

**Undisputed.**

61. Paragraphs 1 and 3 to the Agreement required DHLP to make certain amendments to the Delta Hotels Applications. *Id*. at ¶¶ 1, 3.

**RESPONSE 61:**

**Undisputed.**

62. Paragraphs 2 and 4 required DAL to withdraw any oppositions against the Delta Hotels Applications once DHLP made those amendments. *Id.* at ¶¶ 2, 4.

**RESPONSE 62:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation to the extent Marriott contends Paragraphs 2 and 4 required Delta to withdraw *any* oppositions against *any* Delta Hotels trademark applications. Paragraph 2 states Delta "will withdraw the Oppositions" (*i.e.* the specific oppositions that Delta filed against DHL's Hong Kong Trade Mark Application Nos. 302496196 and 302496204 on January 20, 2014). Dkt. 474-14, at Recital C, ¶ 2. Paragraph 4 states Delta "will withdraw all oppositions filed (if any) against the Published Marks (Applications Nos. 12116091 and 12116095 in PRC) and against any other Delta Hotels Applications" (*i.e.* the Delta Hotels Applications filed in Hong Kong and China listed in Schedule 1). Dkt. 474-14 at Recital A, ¶ 4. In other words, Paragraphs 2 and 4 applied to only specific applications in Hong Kong and PRC.

63. Paragraphs 5 and 6 impose distinct, ongoing obligations on DAL. *Id*. at ¶¶ 5, 6.

**RESPONSE 63:**

**Disputed.** Delta objects that Marriott's statement does not comply with LR 56.1(B)(1)(c), to the extent Marriott asserts Paragraphs 5 and 6 "impose distinct, ongoing obligations," as that assertion is an improper legal conclusion.

64. Paragraph 5 prohibits DAL from challenging, objecting to, and/or opposing the (a) Delta Hotels Marks in Schedule 1 (as amended by Paragraphs 1-3) (b) "in Hong Kong and China." *Id*. at ¶ 5.

**RESPONSE 64:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation. LR 56.1 (B)(2)(a)(2)(iii). Paragraph 5 states that Delta "will not challenge, object and/or oppose the use and registration of the Delta Hotels Marks in Classes 35, 39, 41, and 43 . . . covering services as permitted under paragraphs 1 through 4 above in Hong Kong and China as may be reasonably required by Delta Hotels." Dkt. 474-14, ¶5. To the extent Marriott contends Paragraph 5 has some other meaning, then the asserted statement is an unsupported attorney argument rather than fact, and an improper legal conclusion.

65. English and Chinese are the predominant languages in Hong Kong and China. Ex. 9, Tam Report, ¶ 48.

**RESPONSE 65:**

**Disputed.** Delta objects to Marriott's characterization of English and Chinese as "***the*** predominant" languages in Hong Kong and China, as that term is vague and ambiguous. Delta also objects to this statement as not material to Marriott's Summary Judgment Motion. As Delta's Hong Kong law expert Anthony Houghton explained, [redacted] *See* Ex. 36 at ¶¶ 136-141. Accordingly, whether English and Chinese are predominant

languages in Hong Kong and China is not material for purposes of interpreting the meaning of the Agreement under Hong Kong law.

66. Paragraph 6 prohibits DAL from in the future challenging, objecting to, and/or opposing the (a) use or registration of "the mark 'Delta' or any mark incorporating 'Delta' (including its transliteration in Chinese and other languages)" (b) without territorial limitation, provided that the services covered by use or registration are consistent with the hotel and other services covered by the Delta Hotels Marks in Schedule 1, as amended pursuant to Paragraphs 1 and 3. Ex. 48, Agreement, Dkt. 33-1, ¶ 6.

**RESPONSE 66:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation. LR 56.1 (B)(2)(a)(2)(iii). Although Paragraph 6 does not explicitly state a geographic scope within the paragraph itself, , it must be read in the context of the Agreement as a whole, including the Agreement's recitals, and in particular Recital E. Dkt. 474-14, Recital E. Recital E states that the parties "mutually agreed that the Delta Hotels Marks may co-exist with the Delta Air Lines Marks *in **Hong Kong and PRC*** in accordance with the terms and conditions as set out in this Agreement." The recitals do not reference coexistence or consent in any other jurisdiction. Paragraph 6 is one of the "terms and conditions" identified in Recital E and set out in the Agreement. Dkt. 474-14, Recital E, ¶ 6. Marriott's assertion that Paragraph 6 imposes an obligation "without territorial limitation" is not one of fact but rather is attorney argument. It is undisputed that Paragraph 9 is the only provision in the

Agreement that explicitly references "other jurisdictions," and [redacted] *Id.* at ¶9; Dkt. 479-07 ¶¶ 36, 66; Dkt. 479-21 ¶ 66. In other words, when the parties to the Agreement wanted to identify jurisdictions other than Hong Kong and PRC, they did that explicitly, and only in Paragraph 9. Paragraph 6 does not do so. In light of that, and when read in the context of the Agreement as a whole, it is properly limited to Hong Kong and PRC. Delta further objects that this statement does not comply with LR 56.1(B)(1)(c) because it is an improper legal conclusion.

67. Paragraph 6 also requires DAL to consent in writing (upon request) to such marks. *Id.* at ¶ 6.

**RESPONSE 67:**

**Disputed.** Delta does not dispute that Paragraph 6 requires Delta to consent in writing (upon request) to the marks specified in that Paragraph. But this "fact" is unsupported insofar as Marriott suggests that Paragraph 6 requires Delta to give written consent to marks without any territorial limitation. LR 56.1 (B)(2)(a)(2)(iii). As explained above, the Agreement states that "Delta Hotels and Delta Air Lines have mutually agreed the Delta Hotels Marks may co-exist with the Delta Air Lines Marks ***in Hong Kong and PRC*** in accordance with the terms and conditions as set out in this Agreement" and Paragraph 6 is one of such "terms and conditions." Dkt. 474-14, Recital E, ¶ 6. Moreover, Paragraph 9 is the only provision in the Agreement

that explicitly references "other jurisdictions," and the parties agree this provision is an unenforceable "agreement to agree" and cannot be the basis for Marriott's claim. *Id.* at ¶9; Dkt. 479-07 ¶¶ 36, 66; Dkt. 479-21, ¶ 66. Delta further objects that this statement does not comply with LR 56.1(B)(1)(c) to the extent it is an improper legal conclusion.

68. Paragraphs 7 and 8 mirror the contents of Paragraphs 5 and 6 but impose ongoing obligations on DHLP (now Marriott). *Id.* at ¶¶ 7, 8.

**<u>RESPONSE 68:</u>**

**Disputed.** Delta does not dispute that Paragraphs 7 and 8 mirror the contents of Paragraphs 5 and 6. However, to the extent Marriott asserts that Paragraph 8 imposes an obligation "without territorial limitation" (as Marriott asserts for Paragraph 6) that is not fact but rather attorney argument, and is unsupported by Marriott's citation. LR 56.1 (B)(2)(a)(2)(iii). The Agreement states that "Delta Hotels and Delta Air Lines have mutually agreed the Delta Hotels Marks may co-exist with the Delta Air Lines Marks *in Hong Kong and PRC* in accordance with the terms and conditions as set out in this Agreement," and Paragraph 8 is one such "term and condition." Dkt. 474-14, Recital E.

Delta further objects that this statement does not comply with LR 56.1(B)(1)(c), as Marriott's assertion that Paragraphs 7 and 8 impose an ongoing obligation on DHLP (now Marriott) is an improper legal conclusion.

69. Paragraph 9 includes three parts. Id. at ¶ 9.

**RESPONSE 69:**

**Undisputed.**

70. The first sentence of Paragraph 9 provides that the parties "will cooperate in good faith to agree upon a mutually acceptable compromise, consent and/or co-existence" should the parties' "Delta" marks "conflict or overlap in other jurisdictions in the future." *Id.*

**RESPONSE 70:**

**Undisputed.** However, Delta further notes that it is undisputed that Paragraph 9 is the only provision in the Agreement that references other jurisdictions, and the parties agree that [redacted] Dkt. 479-07, ¶ 66; Ex. 55, (Houghton Depo.) at 112:10-17; Ex.311, at 266:20--25. .

71. Unlike Paragraphs 6 and 8, the "Delta" marks in Paragraph 9 are not expressly limited to the services covered by the Delta Hotels Marks and Delta Air Lines Marks. *Id.*

**RESPONSE 71:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation. LR 56.1 (B)(2)(a)(2)(iii). Although Paragraph 9 does not expressly reference "the services covered by the Delta Hotels Marks and Delta Air Lines Marks," it states the Parties "will cooperate in good faith to agree upon a mutually acceptable compromise, consent and/or co-existence ***along the lines set forth in this***

***Agreement*. . . .**" Dkt. 474-14, ¶ 9. Marriott's assertion that this language does not reference the services covered by the Delta Hotels Marks and Delta Air Lines marks is thus unsupported by Marriott's citation. It is also attorney argument rather than fact.

Delta further objects that this statement does not comply with LR 56.1(B)(1)(c), as Marriott's assertion that Paragraph 9 is not limited to the services covered by the Delta Hotels Marks and Delta Air Lines marks is an improper legal conclusion.

72. The second sentence of Paragraph 9 provides that DHLP (now Marriott) "will not challenge, object and/or oppose the use and registration" of DAL's U.S. and Japan registrations for DELTA VACATIONS listed in Schedule 3. *Id.*

**RESPONSE 72:**

**Undisputed.** Delta does not dispute this statement insofar as Marriott accurately quotes the second sentence of Paragraph 9.

73. Finally, the last sentence of Paragraph 9 provides for both parties to "undertake[] to each other that either party shall execute such documents, take such steps and perform such acts and things as the other party may reasonably require to give such other party the full benefits of this Agreement in accordance with the terms of this Agreement." *Id.*

**RESPONSE 73:**

**Undisputed.** Delta does not dispute this statement insofar as Marriott accurately quotes the last sentence of Paragraph 9.

74. Neither party nor their respective Hong Kong law experts disputes that Hong Kong law governs the agreement. Ex. 9, Tam Report, ¶ 20; Ex. 52, Rebuttal Expert Report of Anthony Houghton SC ("Houghton Rebuttal Report"), ¶ 6.1.

**RESPONSE 74:**

**Undisputed.**

75. The parties do not dispute that the Agreement constitutes a legally binding agreement under Hong Kong law. Ex. 9, Tam Report, ¶ 66; Ex. 54, Expert Report of Anthony Houghton SC ("Houghton Report"), ¶ 7.2; Ex. 55, Deposition of Anthony Houghton SC ("Houghton Depo.") at 112:10-17.

**RESPONSE 75:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation. LR 56.1 (B)(2)(a)(2)(iii). Delta does not dispute that portions of the Agreement constitute a legally binding agreement under Hong Kong law. But, insofar as this "fact" applies to Paragraph 9, Delta objects that this fact is not supported by Marriott's citation, and is contrary to the undisputed record. Marriott's cited evidence establishes that the parties agree [redacted] Dkt. 479-07 ¶ 65; Dkt. 479-22 ¶ 147; Dkt. 479-23 at 112:10-17. As Delta's Rule 30(b)6) witness on the meaning of the Agreement at the time it was executed, Greta Moran explained, [redacted] Ex. 311 at 266:20-25. Accordingly, to the

extent Marriott asserts that the first sentence of Paragraph 9 is [redacted] that assertion is unsupported by the record. Delta further objects that this statement does not comply with LR 56.1(B)(1)(c), as Marriott's assertion that the Agreement constitutes a legally binding agreement under Hong Kong law is an improper legal conclusion.

Further, to the extent Marriott contends the Agreement is [redacted] that assertion is also unsupported by Marriott's citation and directly refuted by the evidentiary record. Notably, the English High Court held that "[i]n the context of the other clauses ***it does not appear that clause[] 6…operate[s] worldwide***," and thus the Agreement does not bind Delta outside Hong Kong and China. Ex. 44 ¶¶ 73-76. In fact, [redacted] that discussed the Agreement found it geographically limited, and not worldwide. *E.g.*, Ex. 44 at ¶¶ 73-76; Ex. 303 at 7; Ex. 304 at 4; Ex. 305 at 6.

Lastly, Delta notes the cited Houghton Report does not include a "¶ 7.2," though Mr. Houghton [redacted] Dkt. 479-22, ¶ 21.

76. Paragraph 10 includes a cost-and-expenses clause. Ex. 48, Agreement, Dkt. 33-1, ¶ 10.

**<u>RESPONSE 76</u>:**

**Undisputed.** However, Delta objects to the extent this statement is a legal conclusion that does not comply with LR 56.1(B)(1)(c), and further objects on the basis that the Agreement speaks for itself.

77. Paragraph 11 includes a choice-of-law clause providing that the Agreement is "governed by and construed in accordance with the laws of Hong Kong." Id. at ¶ 11.

**RESPONSE 77:**

**Undisputed.** However, Delta objects to the extent this statement is a legal conclusion that does not comply with LR 56.1(B)(1)(c), and further objects on the basis that the agreement speaks for itself.

78. Paragraph 12 includes a binding-effect clause providing that the Agreement extends to "successors" and "assigns" of the respective parties, e.g., Marriott (Paragraph 12). *Id.* at ¶ 12.

**RESPONSE 78:**

**Disputed.** Delta objects to the extent this statement is unsupported by Marriott's citation. LR 56.1 (B)(2)(a)(2)(iii). Paragraph 12 states "Delta Hotels and Delta Air Lines agree that this Agreement shall be binding, valid and enforceable against, and the benefits thereof shall inure to, the respective parties' successors, licensees, assigns, and parties in privity with them, now and in the future, as well as any other persons or entities validly exploiting the parties' respective Delta Hotels Marks and Delta Air Lines Marks as designated by the respective parties from time

to time." Dkt. 474-14, ¶12. To the extent Marriott asserts this Paragraph has some other meaning, that assertion is not one of fact but rather is attorney argument, and is unsupported by Marriott's citation. Delta further objects that this statement does not comply with LR 56.1(B)(1)(c), as Marriott's assertion that the Agreement constitutes a legally binding agreement under Hong Kong law is an improper legal conclusion.

79. Marriott's acquisition of the DELTA HOTELS brand closed on April 1, 2015 for approximately [redacted]. Ex. 3, Hoffman Depo. at 118:10-25, 203:22-24.

**RESPONSE 79:**

**Undisputed.** Delta clarifies however that the APA between Marriott and DHLP is [redacted]. Ex. 42 at '381.

80. In 2016, Marriott opened the first DELTA HOTELS property in the United States since the closure of the DELTA COURT OF FLAGS. Ex. 3, Hoffman Depo. at 150:18-23, 254:3-14; Ex. 11, King Depo. at 48:8-14, 86:25-87:4; Ex. 47, MARRIOTT0028268.

**RESPONSE 80:**

**Undisputed.** Although Delta clarifies that THE Delta Court of Flags, was opened by Marriott's predecessor (not Marriott) and closed in 1998, and that Marriott opened its first US Delta Hotel in 2016, after its 2015 acquisition of the Canadian brand.

81. Not long after, DAL began offering and making customer bookings via its travel package offerings at this hotel through the online booking portal on its Delta.com website. Ex. 75, DELTA_00145280; Ex. 76, Deposition of Shannon Womack ("Womack Depo.") at 226:1-12.

**RESPONSE 81:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation. LR 56.1 (B)(2)(a)(2)(iii). As an initial matter, Delta objects to Marriott's assertion that Delta [redacted] as unsupported by Marriott's citation. [redacted] Dkt. 480-10. Regardless, prior to that hotel opening in 2016, there were no Delta Hotels in the U.S. for decades. Dkt. 479-04, at 141:11-17. Moreover, Marriott's assertion that Delta [redacted] mischaracterizes the evidence. As an initial matter, the cited evidence [redacted] Dkt. 480-10; Dkt. 480-11 at 226:1-12. This is unsurprising, given that Marriott did not have any Delta Hotels properties in the United States prior to April 2016, and had only a single U.S. location in 2016. Ex. 229 at '342; Dkt. 479-04 at 150:18-23, 254:3-14; Dkt. 479-09 at 48:8-14, 86:25-87:4; Dkt. 474-13. Delta also clarifies that Marriott hotels are routinely listed on

Delta's online portal, and in any event, Delta Hotels is no longer listed on the portal. Ex. 130 at ¶ 186; Ex. 355 at 23:12-24 (citing Ex. 155); Ex. 155 at '524, Ex. 332.

Marriott also mischaracterizes the evidence to the extent this statement insinuates that [redacted] The undisputed facts establish that [redacted] Ex. 50 at 10-15; Ex. 51 at '711; Ex. 16 at 215:4-10; Ex. 18 at 107:25-108:14. After Delta unsuccessfully tried to resolve the dispute for 19 months, Delta was forced to sue on March 11, 2020. Dkt. 33 ¶ 45; Dkt. 1.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. As explained above, Delta filed suit well within the four-year limitation period, even assuming that period should be calculated from the date Marriott opened its first Delta Hotels location in the U.S. in April 2016. *Top Tobacco, L.P. v. Star Imps. & Wholesalers, Inc.*, 2021 WL 4081627, at *12 (N.D.Ga. Sept. 7, 2021). Moreover, passive conduct [redacted] are insufficient for acquiescence and similar affirmative defenses as they show no affirmative conduct or assent by Delta. *See SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996) (no acquiescence);

*Flowers Bakeries Brands*, 2010 WL 2662720 at *11 (no waiver). Nor do they show the type of "intended deception" required for estoppel. *Cobb Bank*, 459 F. Supp. at 334. Moreover, even [redacted] is not relevant for laches and similar affirmative defenses. McCarthy § 31:39 ("A corporation is not charged with notice if business dealings with defendant were conducted by lower echelon employees who had no duty to report instances of trademark infringement."); *see also Dawn Donut*, 267 F.2d at 363. Accordingly, any [redacted] have no bearing on Marriott's Motion, and only reinforce Delta's argument about likelihood of confusion between the parties.

82. In 2017, Marriott opened ten DELTA HOTELS properties in the United States. Ex. 77, MARRIOTT0211039.

**<u>RESPONSE 82</u>:**

**Undisputed.** However, none of the ten Delta Hotels opened in 2017 were located in a Delta hub city. Ex. 54 at '181; Ex. 94 at '673 (ATL, NYC, BOS, DTW, MSP, SEA, SLC, LAX). Delta also objects to this statement as not material to Marriott's Summary Judgment Motion. Delta filed suit well within the four-year limitation period, even assuming that period should be calculated from the date Marriott opened its first Delta Hotels location in the U.S. in April 2016. *Top Tobacco*, 2021 WL 4081627 at *12; *see also, e.g.*, *Kason*, 120 F.3d at 1206 ("The

senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"). Accordingly, this statement has no bearing on any issue in Marriott's motion, and only serves to reinforce Delta's arguments about Marriott's intent to misappropriate Delta's goodwill and create an association with Delta through its gradual expansion in the U.S.

83. In 2017, DAL's online booking portal made [redacted] at DELTA HOTELS properties in the United States. Ex. 75, DELTA_00145280; Ex. 76, Womack Depo. at 226:1-12.

**<u>RESPONSE 83</u>:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, to the extent Marriott asserts that Delta's "[redacted] Rather, Marriott's citation shows [redacted] Dkt. 480-10; Dkt. 480-11 at 226:1-12.

Delta also objects to the extent this statement insinuates that any [redacted] Ex. 50 at 10-15; Ex. 51 at '711; Ex. 16 at 215:4-10; Ex. 18 at 107:25-108:14. After Delta unsuccessfully tried to resolve the dispute for 19 months, Delta was forced to sue on March 11, 2020. Dkt. 33 ¶ 45; Dkt. 1.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. As explained above, Delta filed suit well within the four-year limitation period, even assuming that period should be calculated from the date Marriott opened its first Delta Hotels location in the U.S. in April 2016. *Top Tobacco*, 2021 WL 4081627, at *12. Moreover, passive conduct [redacted] are insufficient for acquiescence and similar defenses as they show no affirmative conduct or assent by Delta. *See SunAmerica*, 77 F.3d at 1334 (no acquiescence); *Flowers Bakeries Brands*, 2010 WL 2662720 at *11 (no waiver). Nor do they show the type of "intended deception" required for estoppel. *Cobb Bank*, 459 F. Supp. at 334. Moreover, even knowledge by personnel at Delta, without trademark responsibilities, is not relevant for laches and similar affirmative defenses. McCarthy § 31:39 ("A corporation is not charged with notice if business dealings with defendant were conducted by lower echelon employees who had no duty to report instances of trademark infringement."); *see also Dawn Donut*, 267 F.2d at 363.

Accordingly, any [redacted] have no bearing on Marriott's Motion, and only reinforce Delta's argument about likelihood of confusion between the parties given that the parties' services are commonly

purchased through each other's sales platforms, and also purchased together. *See* Dkt. 441 at 15-19.

84. In 2018, Marriott opened an additional eleven DELTA HOTELS properties in the United States. Ex. 77, MARRIOTT0211039.

**RESPONSE 84:**

**Undisputed.** However, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. Delta filed suit well within the four-year limitation period, even assuming that period should be calculated from the date Marriott opened its first Delta Hotels location in the U.S. in April 2016. *Top Tobacco*, 2021 WL 4081627 at *12; *see also, e.g.*, *Kason*, 120 F.3d at 1206 ("The senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"). Accordingly, this statement has no bearing on any issue in Marriott's motion, and only serves to reinforce Delta's arguments about Marriott's intent to misappropriate Delta's goodwill and create an association with Delta through its gradual expansion in the U.S., which continued even after Delta raised its objections in August 2018. Ex. 54 at '81.

85. In 2018, DAL's online booking portal made [redacted] at U.S. DELTA HOTELS properties. Ex. 75, DELTA_00145280; Ex. 76, Womack Depo. at 226:1-12.

**RESPONSE 85:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, to the extent Marriott asserts that Delta's [redacted] Rather, Marriott's citation shows that [redacted] Dkt. 480-10; Dkt. 480-11 at 226:1-12.

Delta also objects to the extent this statement insinuates that [redacted] Ex. 50 at 10-15; Ex. 51 at '711; Ex. 16 at 215:4-10; Ex. 18 at 107:25-108:14. After Delta unsuccessfully tried to resolve the dispute for 19 months, Delta was forced to sue on March 11, 2020. Dkt. 33 ¶ 45; Dkt. 1.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. As explained above, Delta filed suit well within the four-year limitation period, even assuming that period should be calculated from the date Marriott opened its first Delta Hotels location in the U.S. in April 2016. *Top Tobacco*, 2021 WL 4081627, at *12. Moreover, passive conduct [redacted] are insufficient for acquiescence and similar defenses as they show no affirmative conduct or assent by Delta. *See SunAmerica*, 77 F.3d at 1334 (no acquiescence); *Flowers Bakeries Brands*, 2010 WL 2662720 at *11 (no

waiver). Nor do they show the type of "intended deception" required for estoppel. *Cobb Bank*, 459 F. Supp. at 334. Moreover, even [redacted] is not relevant for laches and similar affirmative defenses. McCarthy § 31:39 ("A corporation is not charged with notice if business dealings with defendant were conducted by lower echelon employees who had no duty to report instances of trademark infringement."); *see also Dawn Donut*, 267 F.2d at 363.

Accordingly, any [redacted] have no bearing on Marriott's Motion, and only reinforce Delta's argument about likelihood of confusion between the parties given that the parties' services are commonly purchased through each other's sales platforms, and also purchased together. *See* Dkt. 441 at 15-19.

86. In 2019, Marriott opened ten more DELTA HOTELS properties. Ex. 77, MARRIOTT0211039.

**<u>RESPONSE 86</u>:**

**Undisputed.** However, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. Delta filed suit well within the four-year limitation period, even assuming that period should be calculated from the date Marriott opened its first Delta Hotels location in the U.S. in April 2016. *Top Tobacco*, 2021 WL 4081627 at *12; *see also, e.g.*, *Kason*, 120 F.3d at 1206 ("The

senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"). Accordingly, this statement has no bearing on any issue in Marriott's motion, and only serves to reinforce Delta's arguments about Marriott's intent to misappropriate Delta's goodwill and create an association with Delta through its gradual expansion in the U.S., which continued even after Delta raised its objections in August 2018. Dkt. 473-04 at '495.

87. In 2019, DAL's online booking portal made [redacted] at U.S. DELTA HOTELS properties. Ex. 75, DELTA_00145280; Ex. 76, Womack Depo. at 226:1-12; Ex. 78, DELTA_00115167.

**<u>RESPONSE 87</u>:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, to the extent Marriott asserts that Delta's [redacted] Dkt. 480-10; Dkt. 480-11 at 226:1-12.

Delta also objects to the extent this statement insinuates that any [redacted] Ex. 50 at 10-15; Ex. 51; Ex, 6 at 215:4-10; Ex. 18 at 107:25-

108:14. After Delta unsuccessfully tried to resolve the dispute for 19 months, Delta was forced to sue on March 11, 2020. Dkt. 33 ¶ 45; Dkt. 1.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. As explained above, Delta filed suit well within the four-year limitation period, even assuming that period should be calculated from the date Marriott opened its first Delta Hotels location in the U.S. in April 2016. *Top Tobacco*, 2021 WL 4081627, at *12. Moreover, passive conduct [redacted] are insufficient for acquiescence and similar defenses as they show no affirmative conduct or assent by Delta. *See SunAmerica*, 77 F.3d at 1334 (no acquiescence); *Flowers Bakeries Brands*, 2010 WL 2662720 at *11 (no waiver). Nor do they show the type of "intended deception" required for estoppel. *Cobb Bank*, 459 F. Supp. at 334. Moreover, even [redacted] is not relevant for laches and similar affirmative defenses. McCarthy § 31:39 ("A corporation is not charged with notice if business dealings with defendant were conducted by lower echelon employees who had no duty to report instances of trademark infringement."); *see also Dawn Donut*, 267 F.2d at 363.

Accordingly, any [redacted] have no bearing on Marriott's Motion, and only reinforce Delta's argument about likelihood of

confusion between the parties given that the parties' services are commonly purchased through each other's sales platforms, and also purchased together. *See* Dkt. 441 at 15-19.

88. DAL was also making its own bookings at U.S. DELTA HOTELS properties for crew members, other employees traveling on DAL business, and passengers whose travel plans were disrupted. Ex. 76, Womack Depo. at 221:12-17; Ex. 79, DELTA_00183850.

**<u>RESPONSE 88</u>:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record, to the extent this statement insinuates that [redacted] LR 56.1 (B)(2)(a)(2)(iii). Elaine Tyson—who worked in Delta's corporate travel department, and "had no responsibilities for any trademark issues"—testified that [redacted] Ex. 327 at 107:13-108:3; 132:21-133:6. The undisputed facts establish that [redacted] Ex. 50 at 10-15; Ex. 51; Ex. 6 at 215:4-10; Ex. 18 at 107:25-108:14. After Delta unsuccessfully tried to

resolve the dispute for 19 months, Delta was forced to sue on March 11, 2020. Dkt. 33 ¶ 45; Dkt. 1.

In any event, this statement is not material to Marriott's Summary Judgment Motion. LR 56.1 (B)(2)(a)(2)(iii). After Delta complained and sued, [redacted] Dkt. 480-14. [redacted] *Id*; Ex. 339 at 47:5-21; Ex. 150 at 472.

A modest number of bookings made by or for certain Delta employees not responsible for trademark enforcement does not constitute conduct by Delta as a corporate entity and cannot support Marriott's laches, acquiescence, waiver, or related affirmative defenses. *See also* McCarthy § 31:39 ("A corporation is not charged with notice if business dealings with defendant were conducted by lower echelon employees who had no duty to report instances of trademark infringement."); *see also Dawn Donut*, 267 F.2d at 363; *SunAmerica*, 77 F.3d at 1334 (no acquiescence); *Flowers Bakeries Brands*, 2010 WL 2662720 at *11 (no

waiver). Nor do they show the type of "intended deception" required for estoppel. *Cobb Bank*, 459 F. Supp. at 334.

89. In 2018, DAL spent [redacted] at U.S. DELTA HOTELS properties. Ex. 76, Womack Depo. at 221:12-17; Ex. 79, DELTA_00183850.

**RESPONSE 89:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record, to the extent this statement insinuates that Delta [redacted] LR 56.1 (B)(2)(a)(2)(iii). Elaine Tyson—who worked in Delta's corporate travel department, and "had no responsibilities for any trademark issues"—testified that [redacted] Ex. 327 at 107:13-108:3; 132:21-133:6. The undisputed facts establish that [redacted] Ex. 50 at 10-15; Ex. 51; Ex. 6 at 215:4-10; Ex. 18 at 107:25-108:14. After Delta unsuccessfully tried to resolve the dispute for 19 months, Delta was forced to sue on March 11, 2020. Dkt. 33 ¶ 45; Dkt. 1.

In any event, this statement is not material to Marriott's Summary Judgment Motion. LR 56.1 (B)(2)(a)(2)(iii). After Delta complained and sued, it stopped making business bookings in all possible instances (*e.g.*, in some instances, Delta Hotels was the only option available). Dkt. 480-14. [redacted] Ex. 339 at 47:5-21.

[redacted] does not constitute conduct by Delta as a corporate entity and cannot support Marriott's laches, acquiescence, waiver, or related affirmative defenses. Ex. 327 at 132:21-133:10. *See also* McCarthy § 31:39 ("A corporation is not charged with notice if business dealings with defendant were conducted by lower echelon employees who had no duty to report instances of trademark infringement."); *see also Dawn Donut*, 267 F.2d at 363; *SunAmerica*, 77 F.3d at 1334 (no acquiescence); *Flowers Bakeries Brands*, 2010 WL 2662720 at *11 (no waiver). Nor do they show the type of "intended deception" required for estoppel. *Cobb Bank*, 459 F. Supp. at 334. Accordingly, a modest number of bookings made by or for certain Delta employees not responsible for trademark

enforcement does not constitute conduct by Delta as a corporate entity and cannot support Marriott's laches, acquiescence, waiver, or related affirmative defenses. Ex. 327 at 132:21-133:10.

90. In 2019, DAL spent [redacted] at U.S. DELTA HOTELS properties. Ex. 76, Womack Depo. at 221:12-17; Ex. 79, DELTA_00183850.

**<u>RESPONSE 90</u>:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, to the extent this statement insinuates that Delta [redacted] LR 56.1 (B)(2)(a)(2)(iii). However, Elaine Tyson—who worked in Delta's corporate travel department, and "had no responsibilities for any trademark issues"—testified that [redacted] Ex. 327 at 107:13-108:3; 132:21-133:6. Moreover, the undisputed facts establish that [redacted] Ex. 50 at 10-15; Ex. 51; Ex. 6 at 215:4-10; Ex. 18 at 107:25-108:14. After Delta unsuccessfully tried to resolve the dispute for 19 months, Delta was forced to sue on March 11, 2020. Dkt. 33 ¶ 45; Dkt. 1.

In any event, this statement is not material to Marriott's Summary Judgment Motion. LR 56.1 (B)(2)(a)(2)(iii). The amount spent on bookings for Delta employees at Delta Hotels is *de minimis* as compared with the [redacted]. 339 at 47:5-21.

[redacted] does not constitute conduct by Delta as a corporate entity and cannot support Marriott's laches, acquiescence, waiver, or related affirmative defenses. Ex. 327 at 132:21-133:10. [redacted] Ex. 339 at 47:5-21; *see also* McCarthy § 31:39 ("A corporation is not charged with notice if business dealings with defendant were conducted by lower echelon employees who had no duty to report instances of trademark infringement."); *see also Dawn Donut*, 267 F.2d at 363; *SunAmerica*, 77 F.3d at 1334 (no acquiescence); *Flowers Bakeries Brands*, 2010 WL 2662720 at *11 (no waiver). Nor do they show the type of "intended deception" required for estoppel. *Cobb Bank*, 459 F. Supp. at 334.

91. DAL entered specific contractual agreements with DELTA HOTELS properties for the stays, [redacted] Ex. 78, DELTA_00115167.

**RESPONSE 91:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation to the extent this statement insinuates that [redacted]. LR 56.1 (B)(2)(a)(2)(iii). As an initial matter, Marriott cites only [redacted] is unsupported. Moreover, Marriott's contention that [redacted] mischaracterizes the evidence insofar as the cited document is merely [redacted] Dkt. 480-13 at '170. [redacted] *See generally id.* Rather, the undisputed facts establish that [redacted] Ex. 50 at 10-15; Ex. 51; Ex. 6 at 215:4-10; Ex. 18 at 107:25-108:14. And Delta [redacted]

Ex. 339 at 106:4-17, Ex. 64. After Delta unsuccessfully tried to resolve the dispute for 19 months, Delta was forced to sue on March 11, 2020. Dkt. 33 ¶ 45; Dkt. 1. In any event, this statement is not material to Marriott's Summary Judgment Motion. LR 56.1 (B)(2)(a)(2)(iii). [redacted] negating any possible suggestion that Delta was acquiescing in use of the marks [redacted] *See* Ex. 51. Regardless, [redacted] does not constitute conduct by Delta as a corporate entity and cannot support Marriott's laches, acquiescence, waiver, or related affirmative defenses. Dkt. 480-13; McCarthy § 31:39 ("A corporation is not charged with notice if business dealings with defendant were conducted by lower echelon employees who had no duty to report instances of trademark infringement."); *see also Dawn Donut*, 267 F.2d at 363; *SunAmerica*, 77 F.3d at 1334 (no acquiescence); *Flowers Bakeries Brands*, 2010 WL 2662720 at *11 (no waiver). Nor do they show the type of "intended deception" required for estoppel. *Cobb Bank*, 459 F. Supp. at 334.

92. Following the acquisition, Marriott positioned and marketed the DELTA HOTELS brand as "Simple Made Perfect" for the streamlined traveler and simplified the DELTA HOTELS logo as shown below to align with its positioning among other reasons (together, the "Updated Logo"): Ex. 9, Tam Report, ¶ 16; Ex. 11, King Depo. at 74:4-12; Ex. 56, MARRIOTT0542210 at 0542210.

**RESPONSE 92:**

**Disputed.** Delta does not dispute that Marriott used the tagline "Simple Made Perfect," altered the DELTA HOTELS logo as shown above to a darker blue and white color scheme and sans-serif font highly similar to Delta's own logo, and marketed the brand to the "streamlined traveler." However, Marriott's assertion that Marriott made these changes "to align with its positioning" as a brand for the "streamlined traveler," as opposed to other reasons, is directly refuted by the undisputed evidentiary record. LR 56.1 (B)(2)(a)(2)(i). Specifically, the evidentiary record shows that Marriott adopted the DELTA mark and changed the logo to mimic Delta's, tellingly [redacted] changing the logo to more closely match Delta's, and expanding to the U.S. under the DELTA HOTELS Marks. Ex. 2 at '885; Ex. 22 at 56:18-58:3; Ex. 9 at 3-5; Ex. 54 at '177. Additionally, although Marriott's executives initially planned a [redacted]

[redacted] Ex. 23 at 138:16-141:11; Ex. 237 at 1; Ex. 238 at '894; Ex. 49 at '600.

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion to the extent Marriott did not move on infringement or dilution. Accordingly, Marriott's intent for changing its logo has no bearing on Marriott's Motion, and instead only reinforces Delta's arguments in its motion for summary judgment about Marriott's intent to trade on Delta's goodwill and create an association with Delta.

93. Marriott filed about 400 hundred trademark applications in about 70 countries for the Updated Logo and other DELTA HOTELS marks in the U.S. and throughout the world. Ex. 9, Tam Report, ¶ 16; Ex. 70, Trademark Search.

**RESPONSE 93:**

**Undisputed.** However, this statement is not material to Marriott's Summary Judgment Motion. LR 56.1(B)(2)(a)(2)(iii). The mere filing of applications, particularly in foreign jurisdictions, has no bearing on Marriott's laches or related affirmative defenses. *See* McCarthy §31:40 ("[T]he trademark owner is put on notice for laches only by real world events, not by…a registration by defendant."); *See also, e.g.*, *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.*, 2016 WL 7486368 at *3. Nor is it material to Marriott's counterclaim and defenses

regarding the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

94. MI owns the U.S. registrations for the DELTA HOTELS marks. Ex. 36, MARRIOTT0000001 at 0000011; Ex. 38, MARRIOTT0000864 at 0000874; Ex. 57, MARRIOTT0000572 at 0000575.

**RESPONSE 94:**

**Undisputed.** Delta acknowledges that Marriott International owns those registrations. Delta further notes, however, that each Marriott application filed after its acquisition of Delta Hotels in 2015 is the subject of opposition or cancellation proceedings by Delta, and that such proceedings have been suspended pending the result of this litigation. Ex. 276, ¶21.

In any event, this statement is not material to Marriott's Summary Judgment Motion. *See* McCarthy §31:40 ("[T]he trademark owner is put on notice for laches only by real world events, not by…a registration by defendant."); *Kason*, 120 F.3d

at 1206 ("The senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"); *Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel).

95. MWC owns the non-U.S. registrations for the DELTA HOTELS marks. Ex. 53, Hong Kong Registration (Trade Mark No. 302496169); Ex. 59, Hong Kong Registration (Trade Mark No. 303698786); Ex. 63, Chile Registration (Reg. No. 1225064); Ex. 64, Israel Registration (Trade Mark No. 283050); Ex. 65, Taiwan Registration (Reg. No. 01876116); Ex. 66, Taiwan Registration (Reg. No. 01817541); Ex. 67, Australian Registration (Reg. No. 1867415).

**RESPONSE 95:**

**Undisputed.** However, Delta clarifies that Marriott Worldwide Corporation only obtained these registrations after Delta granted consents to Marriott on a request-by-request, country-by-country basis consistent with its undertaking of good faith discussions under Paragraph 9 of the Agreement. Dkt. 479-25. Although Delta granted some of Marriott's requests, it has consistently emphasized [redacted] Dkt. 480-24; Dkt. 480-25 at '596.

In any event, this statement is not material to Marriott's Summary Judgment Motion. Delta's lack of objection, opposition, or cancellation efforts as to Marriott's

applications and/or registrations for DELTA HOTELS marks in foreign jurisdictions are not material to laches or Marriott's related affirmative defenses. *See Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3; *see also Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel). Nor is this statement material to Marriott's claims of breach of contract, estoppel by convention, or related affirmative defenses, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

96. This followed over 40 applications/registrations for DELTA HOTELS marks by Marriott's predecessor for hotel services that DAL never objected to in the U.S. and abroad from 1987 to the acquisition in 2015. Ex. 25, DAL's Responses to First Set of RFAs, Nos. 20, 25, 35-42; Ex. 14, MARRIOTT0189135 at 0189258-79.

**RESPONSE 96:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1 (B)(2)(a)(2)(i), (iii). As an initial matter, Marriott's statement omits that numerous applications and registrations for Delta Hotels filed between 1987 and 2020 were either cancelled or abandoned for non-use. *See, e.g.*, Ex. 276, ¶88. Marriott also omits that Delta sent a letter on August 25, 1993 [redacted] Dkt. 473-20; Dkt. 214-07. Prior to Marriott's 2015 acquisition, Marriott's predecessor DHL owned four U.S. registrations for DELTA-formative marks, two of which have since been cancelled, and two of which are for marks that Marriott no longer uses. *Id*. Moreover, all but one of the Delta Hotels properties referenced in the specimens DHL submitted to the USPTO were located in Canada, and by Marriott's own admission there were no Delta Hotels in the U.S. at the time of Marriott's acquisition of Delta Hotels in 2015, nor had there been since at least 1998. Dkt. 479-04 at 141:11-17.

In any event, this statement is not material to Marriott's Summary Judgment Motion. *See* Dkt. 248 at 37; Dkt. 295 at 20-21; Dkt. 420 at 13-14; *Abitron Austria*,

2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3; McCarthy §31:40 ("[T]he trademark owner is put on notice for laches only by real world events, not by…a registration by defendant."); *Kason*, 120 F.3d at 1206 ("The senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"); *Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel).

97. DAL raised zero concern, allowing all such filings to proceed toward registration. Ex. 9, Tam Report, ¶ 16; Ex. 70, Trademark Search.

**RESPONSE 97:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1 (B)(2)(a)(2)(i), (iii). As an initial matter, Marriott's statement omits the fact that numerous applications and registrations that Marriott's predecessor filed for Delta Hotels marks between 1987 and 2015 were either cancelled or abandoned for non-use. *See, e.g.*, Ex. 276. Prior to Marriott's 2015 acquisition, Marriott's predecessor DHL owned four U.S. registrations for DELTA-formative marks, two of which have

since been cancelled, and two of which are for marks that Marriott no longer uses. *Id*. Moreover, other than one specimen from 1991 referencing a single hotel in Florida that closed many years before the 2015 Marriott acquisition (which specimen was improperly re-filed in 2008 even though the hotel had closed down many years before), the specimens of use DHL submitted in connection with these applications only showed use in connection with hotels in Canada. Dkt. 473-19at '830. It is also undisputed that as of 2015, there were no Delta Hotels in the U.S. Dkt. 479-04 at 141:11-17. Delta also disputes Marriott's contention that Delta raised "zero concern" as attorney argument.

[redacted], at which point the parties engaged in "extensive and lengthy" settlement discussions. Ex. 50 at 10-15; Ex. 51; Ex. 16 at 215:4-10; Ex. 18 at 107:25-108:14. Delta was forced to file suit in early 2020, and also filed opposition/cancellation proceedings against Marriott's U.S. applications and registrations. Dkt. 33 ¶ 45; Dkt. 1; Ex. 276 at 10-12.

In any event, this statement is not material to Marriott's Summary Judgment Motion. *See* Dkt. 248 at 37; Dkt. 295 at 20-21; Dkt. 420 at 13-14; *Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3;

McCarthy §31:40 ("[T]he trademark owner is put on notice for laches only by real world events, not by…a registration by defendant."); *Kason*, 120 F.3d at 1206 ("The senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"); *Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel).

98. [redacted] Ex. 46, 7/7/23 Arnold Depo. at 372:7-373:23; 384:12-16, 385:16-386:9, 395:8-396:5, 401:2-21.

**RESPONSE 98:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by the evidentiary record to the extent the statement includes terms and characterizations that Mr. Arnold did not use during his deposition (including the term "[redacted] Mr. Arnold testified that [redacted]. Ex. 340 at 59:19-24. With respect to the watch services, Mr. Arnold testified that [redacted]

[redacted]. *Id.* at 187:5-11. Mr. Arnold also noted that [redacted] *See e,g.*, Ex. 341 at 373:4-375:2, 386:7-387:8, 388:23-389:3; Dkt. 291 at 6 [redacted]) Accordingly, Marriott's assertion that the [redacted] is unsupported.

99. [redacted]. Id. at 371:21-372:2.

**RESPONSE 99:**

**Disputed.** Delta has used [redacted] over time, and admits it [redacted] Ex. 340 at 54:9-25. Nevertheless, Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record, to the extent that Marriott contends [redacted] LR 56.1 (B)(2)(a)(2)(i), (iii). Delta's inside legal advisor with respect to trademarks, Alan Arnold, testified [redacted]

[redacted]. *See e,g.*, Ex. 341 at 373:4-375:2, 386:7-387:8, 388:23-389:3; Dkt. 291 at 6 [redacted]

In any event, this statement is not material to Marriott's Summary Judgment Motion. *See* McCarthy §31:40 ("[T]he trademark owner is put on notice for laches only by real world events, not by…a registration by defendant."); *Kason*, 120 F.3d at 1206 ("The senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"); *Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel).

100. [redacted] DAL objected to neither. Ex. 46, 7/7/23 Arnold Depo. at 407:7-410:10-14, 421:2-24; Ex. 68, DELTA_00032618; Ex. 69, DELTA_00032621.

**<u>RESPONSE 100</u>:**

**Undisputed.** However, Delta notes that both applications were abandoned as of July 17, 2017 for non-use, and objects to this statement as not material to Marriott's Summary Judgment Motion. Ex. 276, Ex. 7 at 1; *see also* McCarthy §31:40 ("[T]he trademark owner is put on notice for laches only by real world events, not by…a registration by defendant."); *Kason*, 120 F.3d at 1206 ("The senior user has no obligation to sue until 'the likelihood of confusion looms large[.]'"); *Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel).

101. [redacted] Ex. 46, 7/7/23 Arnold Depo. at at 418:21-419:6, 422:2-25.

**RESPONSE 101:**

**Disputed.** As an initial matter, Delta objects to Marriott's improper attempt to misuse Delta's appropriate assertion of privilege to draw an unsupported inference relating to the interpretation and meaning of the Agreement. *Shakerdge v. Tradition Fin. Servs., Inc.*, 2017 WL 4694167 at *5 (D. Conn. Oct. 19, 2017) ("Defendants will not be allowed to use Plaintiff's invocation of privilege to lead the trier of fact to speculate regarding the content of privileged communications between Ms.

Shakerdge and any mental health care provider.”). Delta notes that Marriott also has maintained attorney-client privilege with respect to legal advice regarding the Agreement, and Hoffman withheld privileged information on that issue. *See, e.g.*, Dkt. 479-04 at 189:15-190:3; 217:19-218:13. Neither side has relied on an advice of counsel defense or has waived the privilege, and there is no basis for speculation or adverse inferences.

[redacted] McCarthy §31:40 (“[T]he trademark owner is put on notice for laches only by real world events, not by…a registration by defendant.”); *Kason*, 120 F.3d at 1206 (“The senior user has no obligation to sue until ‘the likelihood of confusion looms large[.]’”); *see also L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261 (subsequent conduct is inadmissible under Hong Kong law for contract interpretation); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Coach House*, 934 F.2d at 1558 (“failure to file oppositions”

does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel).

102. [redacted]. *Id.* At 423:12-19, 424:13-425:18.

**RESPONSE 102:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation and directly refuted by the evidentiary record**,** as Delta filed a successful invalidity challenge against the cited U.K. application that went before the English High Court. Ex. 44.

Delta also objects to this statement as not material to Marriott's Summary Judgment Motion. This statement as to a registration that issued in the U.K. has no bearing on Marriott's laches or related affirmative defenses. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions prohibiting trademark infringement "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at

1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.*, 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel). Moreover, it also is not material to Marriott's breach of contract claim given that there is no allegation that Marriott requested, or that Delta provided, a written consent to the subject application, as Marriott claims is required under the Agreement. Mot. 46.

103. [redacted] *Id*. At 425:20-426:24.

**<u>RESPONSE 103</u>:**

**Disputed.** Delta disputes Marriott's purported statement of fact, including Marriott's improper attempt to misuse Delta's appropriate assertion of privilege to draw an unsupported inference relating to the interpretation and meaning of the Agreement. *Shakerdge*, 2017 WL 4694167 at *5 ("Defendants will not be allowed to use Plaintiff's invocation of privilege to lead the trier of fact to speculate regarding

the content of privileged communications between Ms. Shakerdge and any mental health care provider.") Delta notes that Marriott also has maintained attorney-client privilege with respect to legal advice regarding the Agreement, and Hoffman [redacted] *See, e.g.*, Dkt 479-04 at 189:15-190:3; 217:19-218:13. Neither side has relied on an advice of counsel defense or has waived the privilege, and there is no basis for speculation or adverse inferences.

[redacted]

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. This statement has no bearing on Marriott's laches or related affirmative defenses. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill

or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.*, 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel).

104. Of the about 400 hundred DELTA HOTELS applications filed in about 70 countries, the trademark offices found no conflict with DAL's marks in virtually all instances and granted registrations for Marriott. Ex. 70, Trademark Search.

**<u>RESPONSE 104</u>:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1(B)(2)(a)(2)(i), (iii). As an initial matter, Delta disputes Marriott's contention that "the trademark offices found ***no conflict*** with DAL's marks in virtually all instances," as unsupported by Marriott's citation, as the mere fact that a trademark office granted a registration does not mean there is no likelihood of confusion. As Delta's expert Philip Hampton explained, [redacted]

[redacted]" Ex. 359, ¶ 14.

[redacted], Delta was forced to file suit in early 2020, and also filed opposition/cancellation proceedings against Marriott's U.S. applications and registrations. *Id.*; Ex. 334-7; Dkt. No. 482-01. Each of Marriott's U.S. trademark applications and registrations for DELTA-formative marks that it filed since its acquisition of the Delta Hotels brand and business either has been abandoned by Marriott or is the subject of opposition or cancellation proceedings by Delta. Ex. 276, ¶21.

Additionally, with respect to Marriott's trademark registrations outside the U.S., Delta has filed cancellation and opposition proceedings, and for those proceedings that have resulted in decisions, each decision that has discussed the Agreement has found it geographically limited to Hong Kong and China . *Id.* Ray Decl., ¶ 62; *E.g.*, Ex. 44 at ¶¶ 73-76; Ex. 303 at 7; Ex. 304 at 4; Ex. 305 at 6.. Delta

reserves its right to file additional actions, and has continued to file actions on a case by case jurisdiction-by-jurisdiction basis, which makes sense given the territorial nature of trademarks. *See Abitron Austria*, 2023 WL 4239255 at *8 ("In nearly all countries, including the United States, trademark law is territorial—*i.e.*, 'a trademark is recognized as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark.' Thus, each country is empowered to grant trademark rights and police infringement within its borders.") (internal cites omitted). Outside of the specific applications in Hong Kong and China covered in the legally binding portions of the Agreement, Delta has only consented to a handful of specific Marriott applications in Chile, Taiwan, Israel, and Australia at Marriott's request, consistent with Paragraph 9 of the Agreement and as a courtesy in good faith. Dkt 480-02; Dkt 480-03; Dkt 480-04; Dkt 480-07; Dkt 480-08; Dkt 480-09; Dkt. No. 480-25 at '596. [redacted]

In any event, this statement is not material to Marriott's Summary Judgment Motion. Delta's lack of objection, opposition, or cancellation efforts as to Marriott's applications and/or registrations for DELTA HOTELS marks in foreign jurisdictions

are not relevant to laches or Marriott's related affirmative defenses. *See Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3; *see also Coach House*, 934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.*, 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel). Nor is this statement material to Marriott's counterclaim and affirmative defenses related to the Agreement related affirmative defenses, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

105. In the very rare instances where DAL's consent was needed to address a DAL mark, DAL readily gave it consistent with its worldwide obligations under the Agreement. Ex. 24, DAL's Responses to Second Set of RFAs, RFA Nos. 481-508; Ex. 60, DELTA_00024668; Ex. 61, DELTA_00021935; Ex. 62, DELTA_00024515; Ex. 71, DELTA_00026672; Ex. 72, DELTA_00026674; Ex. 73, DELTA_00024777.

**RESPONSE 105:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by undisputed facts in the evidentiary record. LR 56.1(B)(2)(a)(2)(i), (iii). [redacted] . *Id.* ¶9; Dkt. 479-07 ¶¶ 36, 66; Dkt. 479-22 ¶ 66; *see also* Ex. 311, at 266:20-25 [redacted] . Dkt 480-02; Dkt 480-03; Dkt 480-04; Dkt 480-07; Dkt 480-08; Dkt 480-09. [redacted]

[redacted], Dkt. 480-24 at '602, [redacted] Dkt. 480-25 at '596.

Regardless, Delta never gave Marriott consents for any trademark application or registration or use *in the U.S.* Ex. 276. When Delta learned of Marriott's infringing use in the U.S. in summer of 2018, it promptly raised the issue with Marriott on August 6, 2018, at which point the parties engaged in "extensive and lengthy" settlement discussions. Ex. 50 at 10-15; Ex. 51; Ex. 16 at 215:4-10; Ex. 18 at 107:25-108:14. Because those discussions were unsuccessful, Delta was forced to file suit in early 2020, and also filed opposition/cancellation proceedings against Marriott's U.S. applications and registrations. Dkt. 33 ¶ 45; Dkt. 1.*See, e.g.*, Ray Decl., Ex. 311, ¶21.

In any event, this statement is not material to Marriott's Summary Judgment Motion. Delta's consents in certain foreign jurisdictions are not material to laches or Marriott's related affirmative defenses. *See Abitron Austria*, 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.*, 2016 WL 7479317 at *4; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3; *see also Coach House*,

934 F.2d at 1558 ("failure to file oppositions" does not constitute "active consent" required for acquiescence); *Commodores Ent.* 879 F.3d at 1142 ("[W]aiver has no trademark roots."); *Cobb Bank*, 459 F. Supp. at 334 (failure to file oppositions does not constitute "intended deception" required for estoppel). Nor is this statement material to Marriott's claims of breach of contract, estoppel by convention, or related affirmative defenses, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

106. Specifically, DAL provided Marriott with letters of consents to the use and registration of the Updated Logo and other marks in Chile, Israel, Taiwan, Australia, and Hong Kong, which Mr. Arnold signed. Ex. 24, DAL's Responses to Second Set of RFAs, RFA Nos. 481-508; Ex. 60, DELTA_00024668; Ex. 61, DELTA_00021935; Ex. 62, DELTA_00024515; Ex. 71, DELTA_00026672; Ex. 72, DELTA_00026674; Ex. 73, DELTA_00024777.

**RESPONSE 106:**

**Undisputed.** Delta acknowledges that it provided the cited letters of consent, which Marriott requested in Taiwan, Chile, Israel, and Australia, and that they were

signed by Mr. Arnold. Dkt 480-02; Dkt 480-03; Dkt 480-04; Dkt 480-07; Dkt 480-08; Dkt 480-09. [redacted]

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria*, 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin,* 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.*, 2016 WL 7486368 at *3 (rejecting

knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

107. [redacted] Ex. 46, 7/7/23 Arnold Depo. at 369:1-7; 370:10-11.

**<u>RESPONSE 107</u>:**

**Disputed.** Delta's in-house counsel, Alan Arnold, testified that [redacted] Ex. 46, 7/7/23 Arnold Depo., at 436:7-14. In those non-privileged communications between the parties, Delta noted that [redacted] Dkt. 480-25 at '596. Throughout the parties' discussions regarding the consents, the parties also repeatedly emphasized that they

[redacted], Dkt. 480-24 at ‘602, [redacted] *Id.* at ‘601.

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.*, 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of

interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

108. DAL knew it was consenting to the Updated Logos and other DELTA HOTELS marks because images of and application numbers for the marks were contained in the consents DAL signed. Ex. 60, DELTA_00024668; Ex. 61, DELTA_00021935; Ex. 62, DELTA_00024515.

**RESPONSE 108:**

**Undisputed.** Delta acknowledges that it knew it was consenting to specific trademark applications, which were for specific marks and services, and for specific jurisdictions outside the U.S., as identified in the cited letters of consent in Taiwan and Australia, but disputed as unsupported to the extent this statement was intended to refer to other consents beyond the cited documents. Dkt. 480-02; Dkt. 480-03; Dkt. 480-04.

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the U. S., not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at

*8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

109. The consents were filed with the local trademark offices, and registrations for the Updated Logo and other DELTA HOTELS marks were issued Ex. 63, Chile Registration (Reg. No. 1225064); Ex. 64, Israel Registration (Trade Mark No. 283050); Ex. 65, Taiwan Registration for Updated Logo (Reg. No. 01876116); Ex. 66, Registration Page for Taiwan DELTA HOTELS (Reg. No. 01817541); Ex. 67, Australian Registration for Updated Logo (Reg. No. 1867415); Ex. 74, Hong Kong Registration (Trade Mark No. 302496169).

**RESPONSE 109:**

**Undisputed.** Delta does not dispute that the specific consents cited for the specific applications were filed with the local trademark offices in Chile, Israel, Taiwan, Australia, and Hong Kong, and that trademark registrations were issued in those countries.

However, that is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the U. S., not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong

and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

110. [redacted] Ex. 20, Plumpe Report, ¶¶ 40, 43, 114; Ex. 12, Silverman Depo. at 143:16-24, 278:5-8.

**<u>RESPONSE 110</u>:**

**Disputed.** The asserted statement that [redacted] is not one of fact but rather is stated as an unsupported legal conclusion. Additionally, Marriott's economics expert on issues relating to Marriott's alleged breach of contract damages and affirmative defenses, [redacted]

[redacted]

In any event, Delta objects to this statement as not material to Marriott's Summary Judgment Motion. LR 56.1(B)(2)(a)(2)(iii). Marriott's subjective intent for seeking trademark registrations has no bearing on any issue in Marriott's Summary Judgment Motion. *Channel Green Ltd v Huge Grand Ltd* [2015] 1 HKLRD 655 at para. 34-37 (evidence that "merely reflect[s] the aspirations of one or other of the parties" is irrelevant and inadmissible under Hong Kong law).

111. In February 2016, Marriott's outside counsel emailed Mr. Frank Benjamin, DAL's outside counsel, copying Mr. Arnold, DAL's in-house trademark counsel, [redacted] Ex. 80, DELTA_00024765 at 00024767.

**<u>RESPONSE 111</u>:**

**Disputed.** Although Marriott accurately quotes part of the cited email, [redacted]

[redacted]

[redacted]

[redacted]

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United

States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531(holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

112. Later the same day, Marriott's counsel sent another email, again copying Mr. Arnold, requesting that [redacted]

[redacted]. Id. at 00024766.

**<u>RESPONSE 112</u>:**

**Disputed.** [redacted]

[redacted]

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to

Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

113. [redacted] Ex. 73, DELTA_00024777; Ex. 80, DELTA_00024765 at 00024765, 00024782.

**RESPONSE 113:**

**Undisputed.** Delta admits Mr. Arnold executed the specific cited consents for specific applications in Australia and Chile and that Mr. Benjamin sent them to counsel for Marriott. However, Delta objects that this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is

error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.*, 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

114. [redacted] Ex. 80, DELTA_00024765 at 00024765-67.

**<u>RESPONSE 114</u>:**

**Disputed.** Delta disputes Marriott's contention that [redacted] LR 56.1 (B)(2)(a)(2)(i), (iii). [redacted]

[redacted] Dkt. 480-25 at ‘596.

Delta further disputes this statement to the extent Marriott contends Delta was contractually obligated to give the letter of consent, or that the e-mails exchanged between the parties necessarily referred to Paragraph 6, given that the document makes no express reference to Paragraph 6 and the language in the cited document is entirely consistent with Paragraph 9. Dkt. 474-14, ¶9. As explained above, Paragraph 9 is the only provision in the Agreement that references other jurisdictions, and the parties agree that [redacted] Dkt. 479-07, ¶ 66; Dkt. 479-22, ¶ 147; Ex. 311 at 266:20-25.

In any event, this statement is not material to Marriott’s laches or related affirmative defenses as Delta’s claims relate to Marriott’s conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255

at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

115. DAL executed additional letters of consent for Marriott's registration of DELTA HOTELS marks in Israel and Taiwan in August 2016 and October 2016 respectively. Ex. 71, DELTA_00026672; Ex. 85, DELTA_00026668; Ex. 86, DELTA_00024510.

**RESPONSE 115:**

**Undisputed.** Delta does not dispute that it [redacted], Dkt. 480-24 at ‘603, and that [redacted], *Id.* at ‘601. Delta also noted that [redacted] Dkt. 480-25 at ‘596.

However, this statement is not material to Marriott’s laches or related affirmative defenses as Delta’s claims relate to Marriott’s conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions “are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic”); *Id.* at *8 (“In nearly all countries, including the United States, trademark law is territorial,” a “principle [that] has long been enshrined in international law.”); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not “when a potentially infringing product is identified

extraterritorially"); *Jarabes Veracruzanos, Inc.*, 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

116. In January 2017, Marriott's counsel again emailed Mr. Benjamin requesting [redacted] Ex. 81, DELTA_00026784.

**RESPONSE 116:**

**Disputed.** Although Marriott accurately quotes part of the cited email, [redacted], Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record to the extent Marriott claims Delta was contractually obligated to give the letter of consent, [redacted]

[redacted] and the language in the cited document is entirely consistent with Paragraph 9. Dkt. 474-14, ¶9. As explained above, Paragraph 9 is the only provision in the Agreement that references other jurisdictions, and the parties agree that [redacted] Dkt. 479-07, ¶ 66; Dkt. 479-22, ¶ 147; Ex. 311 at 266:20-25 [redacted]

[redacted]

[redacted]

[redacted]

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008)

11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

117. [redacted] Ex. 82, DELTA_00032706.

**RESPONSE 117:**

**Disputed.** Although Marriott accurately quotes part of the cited email, which [redacted], Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record to the extent Marriott claims that the cited email necessarily referred to Paragraph 6, given that the document makes no express reference to Paragraph 6 and the language in the cited document is entirely consistent with Paragraph 9. Dkt. 474-14, ¶9. As explained above, Paragraph 9 is the only provision in the Agreement that references other jurisdictions, and the parties agree that [redacted] Dkt. 479-07, ¶ 66; Dkt. 479-22, ¶ 147; Ex. 311 at 266:20-25 [redacted]

Nevertheless, Delta engaged in good faith discussions with Marriott, and throughout those discussions, the parties repeatedly emphasized that they [redacted], Dkt. 480-24 at ‘603, and that [redacted] *Id.* at ‘601. Delta also noted that [redacted] Dkt. 480-25 at ‘596.

[redacted]

In any event, this statement is not material to Marriott’s laches or related affirmative defenses as Delta’s claims relate to Marriott’s conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions “are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic”); *Id.* at *8 (“In nearly all countries, including the United States, trademark law is territorial,” a “principle [that] has long been enshrined in international law.”); *E.*

*Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

118. Mr. Benjamin [redacted] *Id.*

**<u>RESPONSE 118</u>:**

**Undisputed.** However, this statement is not material to any issue in Marriott's Summary Judgment Motion, and Delta otherwise objects to Marriott's improper attempts to misuse Delta's appropriate assertion of privilege to draw an unsupported inference relating to the interpretation and meaning of the Agreement. *Shakerdge*,

2017 WL 4694167 at *5 ("Defendants will not be allowed to use Plaintiff's invocation of privilege to lead the trier of fact to speculate regarding the content of privileged communications between Ms. Shakerdge and any mental health care provider.") Delta notes that Marriott also has maintained attorney-client privilege with respect to legal advice regarding the Agreement, and Hoffman withheld privileged information on that issue. *See, e.g.*, Dkt. 479-04 at 189:15-190:3. Ex. 309 at 217:19-218:13. Neither side has relied on an advice of counsel defense or has waived the privilege, and there is no basis for speculation or adverse inferences

119. [redacted] Ex. 83, DELTA_00027777.

**<u>RESPONSE 119</u>:**

**Undisputed.** Delta does not dispute that [redacted]. However, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at

1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

120. Similarly, in August 2017, DAL executed a consent for the registration of the Updated Logo in Taiwan one day after receiving a request from Marriott that [redacted] Ex. 84, DELTA_00024666.

**RESPONSE 120:**

**Disputed.** Although Marriott accurately quotes in part the cited email, and Delta did execute the cited specific consent for the specific application in Taiwan, Delta objects to this statement as unsupported by Marriott's citation, and directly

refuted by the undisputed evidentiary record to the extent Marriott contends Delta's consent in Taiwan was legally required "pursuant to" the Agreement, or that the e-mail necessarily referred to Paragraph 6, given that the document makes no express reference to Paragraph 6 and the language in the cited document is entirely consistent with Paragraph 9. Dkt. 474-14, ¶9. Paragraph 9 is the only provision in the Agreement that references other jurisdictions, and the parties agree that Paragraph 9 is *unenforceable* and *not legally binding* under Hong Kong law. Dkt. 479-07, ¶ 66; Dkt. 479-22, ¶ 7.2; Ex. 311 at 266:20-25 [redacted]

Nevertheless, Delta engaged in good faith discussions with Marriott, and throughout those discussions, the parties repeatedly emphasized that they [redacted] in other countries, Dkt. 480-24 at '603, and that [redacted] *Id.* at '601. Delta also noted that [redacted] Dkt. 480-25 at '596.

[redacted]

[redacted]

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008)

11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

121. [redacted] Ex. 46, 7/7/23 Arnold Depo. at 369:1-7.

**<u>RESPONSE 121</u>:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record, as Marriott selectively and misleadingly quotes Mr. Arnold's deposition testimony. Delta further objects to Marriott's unsupported and improper attorney argument that, because Mr. Arnold had privileged conversations regarding [redacted] Delta's [redacted] Mot. at 28. Marriott's purported statement of fact is an improper attempt to misuse Delta's appropriate assertion of privilege to draw an unsupported inference relating to the interpretation and meaning of the Agreement. *Shakerdge*, 2017 WL 4694167 at *5 ("Defendants will not be allowed to use Plaintiff's invocation of privilege to lead the trier of fact to speculate regarding the content of privileged communications between Ms. Shakerdge and any mental health care provider.") Delta notes that Marriott also has maintained attorney-client privilege

with respect to legal advice regarding the Agreement, and Hoffman withheld privileged information on that issue. *See, e.g.*, Dkt. 479-04 at 189:15-190:3; Ex. 309 at 217:19-218:13. Neither side has relied on an advice of counsel defense or has waived the privilege, and there is no basis for speculation or adverse inferences

Contrary to Marriott's assertion, Delta's in-house counsel, Alan Arnold, testified that [redacted]. Ex. 341 at 436:7-14. Throughout the parties' discussions, the parties repeatedly emphasized that they [redacted] Dkt. 480-24 at '603, and that [redacted] *Id.* at '601. Delta also noted that [redacted] Dkt. 480-25 at '596.

Marriott likewise emphasized that [redacted]. Dkt. 480-24 at '601; *see also, e.g., id.* at '599 [redacted]. Despite Delta's requests, however, Marriott *refused* to give consent for Delta applications.

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United

States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

122. Mr. Arnold admitted that [redacted] *Id*. at 370:10-11.

**RESPONSE 122:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record, as Marriott selectively quotes Mr. Arnold's deposition. Delta further objects to Marriott's unsupported and improper attorney argument that, because Mr. Arnold had privileged conversations regarding [redacted], Delta's [redacted] Mot. 27. Marriott's purported statement of fact is an improper attempt to misuse Delta's appropriate assertion of privilege to draw an unsupported inference relating to the interpretation and meaning of the Agreement. *Shakerdge*, 2017 WL 4694167 at *5 ("Defendants will not be allowed to use Plaintiff's invocation of privilege to lead the trier of fact to speculate regarding the content of privileged communications between Ms. Shakerdge and any mental health care provider.") Delta notes that Marriott also has maintained attorney-client privilege with respect to legal advice regarding the Agreement, and Hoffman withheld privileged information on that issue. *See, e.g.*, Dkt. 479-04 at 189:15-190:3; Ex. 309 at 217:19-218:13. Neither side has relied on an advice of counsel defense or has waived the privilege, and there is no basis for speculation or adverse inferences.

Contrary to Marriott's assertion, Delta's in-house counsel, Alan Arnold, testified that Delta "provided reasons why it was consenting or not consenting" in non-privileged communications with Marriott. Ex. 340at 436:7-14. Throughout the parties' discussions, the parties repeatedly emphasized that [redacted] Dkt. 480-24 at '603, and that [redacted] *Id.* at '601. Delta also noted that [redacted] Dkt. 480-25 at '596.

Marriott likewise emphasized [redacted] Dkt. 480-24 at '601; *see also, e.g., id.* at '599 [redacted] Despite Delta's requests, however, Marriott *refused* to give consent for Delta applications.

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is

territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

123. [redacted] *Id.* at 446:23-25.

**<u>RESPONSE 123</u>:**

**Undisputed.** Mr. Arnold testified [redacted]

[redacted] which he was asked about during his deposition. Dkt. 479-18 at 446:23-25.

But this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008)

11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

124. [redacted] Ex. 87, DELTA_00024453 at 00024453-56.

**RESPONSE 124:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record. Marriott cites an email from Delta's outside counsel Frank Benjamin [redacted], which was unambiguously limited to Hong Kong and China. Dkt. 480-22 at '453-56; *see e.g.*, Ex. 48, Recital E. [redacted] Dkt. 480-22 at '453. [redacted]. Ex. 333 at '524.

Delta also disputes this statement to the extent Marriott contends that the cited correspondence necessarily referred to Paragraph 6, given that the document makes no express reference to Paragraph 6 and the language in the cited document is entirely consistent with Paragraph 9. Ex. 48, ¶9. Paragraph 9 is the only provision in the Agreement that references other jurisdictions, and the parties agree that Paragraph 9 is *unenforceable* and *not legally binding* under Hong Kong law. Dkt. 479-07, ¶ 66; Dkt. 479-22, ¶ 147; Ex. 311 at 266:20-25 [redacted]

Nevertheless, Delta engaged in good faith discussions with Marriott, and throughout those discussions, the parties repeatedly emphasized that [redacted] Dkt. 480-24 at '603, and that [redacted] *Id.* at '601. Delta also noted that [redacted]" Dkt. 480-25 at '596.

Marriott likewise emphasized that [redacted]. Dkt. 480-24 at '601; *see also, e.g., id.* at '599 [redacted]

[redacted] Despite Delta's requests, however, Marriott *refused* to give consent for Delta applications.

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008)

11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

125. In May 2016, Mr. Benjamin confirmed to Marriott that [redacted] Ex. 88, MARRIOTT0185594 at 185597; Ex. 46, 7/7/23 Arnold Depo. at 370:5-17.

**RESPONSE 125:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record. Marriott mischaracterizes and selectively quotes [redacted] Dkt. 480-23 at '597. Marriott omits that, [redacted] *Id.*

Delta also disputes this statement to the extent Marriott contends the cited e-mail necessarily referred to Paragraph 6, given that the document makes no express reference to Paragraph 6 and the language in the cited document is entirely consistent with Paragraph 9. Ex. 48, ¶9. Paragraph 9 is the only provision in the Agreement

that references other jurisdictions, and the parties agree that Paragraph 9 is *unenforceable* and *not legally binding* under Hong Kong law. Dkt. 479-07, ¶ 66; Dkt. 479-22, ¶ 147; Ex. 311 at 266:20-25 [redacted]

Nevertheless, Delta engaged in good faith discussions with Marriott, and throughout those discussions, [redacted] Dkt. 480-24 at ‘603, and that [redacted] *Id.* at ‘601. Delta also noted that [redacted] Dkt. 480-25 at ‘596.

Marriott likewise emphasized that [redacted] Dkt. 480-24 at ‘601; *see also, e.g., id.* at ‘599 [redacted] Despite Delta’s requests, however, Marriott *refused* to give consent for Delta applications

In any event, this statement is not material to Marriott’s laches or related affirmative defenses as Delta’s claims relate to Marriott’s conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255

at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

126. Marriott agreed with DAL in June 2016 that [redacted] and remained

[redacted] Ex. 89, DELTA_00024599 at 00024601.

**<u>RESPONSE 126</u>:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record. Marriott mischaracterizes and selectively quotes the cited email exchange between [redacted] Dkt. 480-15; Dkt. 480-24 at '603. As explained above, Marriott ignores that [redacted] *Id.* Additionally, when Mr. Benjamin responded to the cited June 2016 email, he noted that [redacted] *Id.* at '595. In this email exchange, [redacted]

[redacted] *Id.* at '601; *see also, e.g., id.* at '599 [redacted]

Delta also disputes this statement to the extent Marriott contends the cited e-mail necessarily referred to Paragraph 6, given that the document makes no express reference to Paragraph 6 and the language in the cited document is entirely consistent with Paragraph 9. Dkt. 474-14, ¶9. Paragraph 9 is the only provision in the Agreement that references other jurisdictions, and the parties agree that Paragraph 9 is *unenforceable* and *not legally binding* under Hong Kong law. Dkt. 479-07, ¶ 66; Dkt. 479-22, ¶ 147; Dkt. 479-23 at 112:10-17; Ex. 311 at 266:20-25 [redacted]

Nevertheless, Delta engaged in good faith discussions with Marriott, and throughout those discussions, the parties repeatedly emphasized that [redacted] Dkt. 480-24 at '603, and that [redacted] *Id.* at '601. Delta also noted that [redacted] Dkt. 480-25 at '596.

Marriott likewise emphasized that [redacted], and did not reference Paragraph 6 in this e-mail or any other communications. Dkt. 480-24 at '601; *see also, e.g., id.* at '599 [redacted]

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to

Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

127. In October 2017, DAL (via Mr. Benjamin) told Marriott that it [redacted] Ex. 90, DELTA_00026596.

**<u>RESPONSE 127</u>:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record to the extent Marriott mischaracterizes and selectively quotes the cited email exchange. Specifically, Marriott omits that, [redacted] Dkt. 480-25 at '596.

Delta also disputes this statement to the extent Marriott contends the cited e-mail necessarily referred to Paragraph 6, given that the document makes no express

reference to Paragraph 6 and the language in the cited document is entirely consistent with Paragraph 9. Dkt. 474-14, ¶9. Paragraph 9 is the only provision in the Agreement that references other jurisdictions, and the parties agree that Paragraph 9 is *unenforceable* and *not legally binding* under Hong Kong law. Dkt. 479-07, ¶ 66; Dkt. 479-22, ¶ 147; Dkt. 479-23 at 112:10-17; Ex. 311 at 266:20-25 [redacted]

Nevertheless, Delta engaged in good faith discussions with Marriott, and throughout those discussions, the parties repeatedly emphasized that [redacted] Dkt. 480-24 at ‘603, and that [redacted] *Id.* at ‘601. Delta also noted that [redacted] Dkt. 480-25 at ‘596.

Marriott likewise emphasized that it [redacted] Dkt. 480-24 at ‘601; *see also, e.g., id.* at ‘599 [redacted]

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D

at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

128. On June 1, 2019, DAL (via Mr. Benjamin) told Marriott that [redacted] Ex. 91, DELTA_00059037.

**<u>RESPONSE 128</u>:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record to the extent Marriott selectively quotes the cited email exchange. Delta also disputes this statement to the extent Marriott contends the cited e-mail necessarily referred to Paragraph 6, given that the document makes no express reference to Paragraph 6 and the language in the cited document is entirely consistent with Paragraph 9. Dkt. 474-14, ¶9. Paragraph 9 is the only provision in the Agreement that references other jurisdictions, and the parties agree that Paragraph 9 is *unenforceable* and *not legally binding* under Hong Kong law. Dkt. 479-07, ¶ 66; Dkt. 479-22, ¶ 147; Dkt. 479-23 at 112:10-17; Ex. 311, at 266:20-25 [redacted]

In any event, this statement is not material to Marriott's defenses or counterclaims. Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is

unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

129. In September 2019 DAL [redacted] Ex. 93, DELTA_00059017 at 00059017.

**<u>RESPONSE 129</u>:**

**Disputed.** Delta disputes this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record to the extent Marriot contends Delta asserted its position "for the first time" in September 2019. As an initial matter, [redacted] Dkt. 480-22 at '453-56. Additionally, Greta Moran testified in her deposition that, [redacted] Ex. 311 at 215:18-216:12.

Additionally, throughout the parties' discussions following the execution of the Agreement, the parties repeatedly emphasized that [redacted] Dkt. 480-24 at '603, and that [redacted] *Id.* at '601. Delta also noted that [redacted] Dkt. 480-22 at '596.

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed

facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

130. DAL filed this litigation in the United States in 2020, challenging Marriott's use and registration of DELTA-formative marks in the United States for hotel services. Ex. 8, FAC, Dkt. 30.

**<u>RESPONSE 130</u>:**

**Disputed.** While Delta does not dispute that it filed this litigation in the United States in 2020 challenging Marriott's use and registration of DELTA-formative marks in the United States, its Complaint is not limited to "hotel services." Delta challenged any use by Marriott "in connection with the promotion or sale of its services," including "in connection with travel and related hospitality services." Dkt. 468-13 at 3, 32-34.

131. DAL has filed opposition/cancellation proceedings worldwide against at least 113 Marriott applications/registrations. Ex. 20, Plumpe Report, ¶ 148; Ex. 94, DAL's Objections; Ex. 95, U.S. Oppositions; Exs. 103-13, Records of Proceedings.

**<u>RESPONSE 131</u>:**

**Undisputed.** However, Delta objects to this statement as not material to Marriott's Summary Judgment Motion to the extent it relates to Marriott's applications/registrations filed in foreign jurisdictions. *Abitron Austria,* , 2023 WL 4239255 at *2, *8; *E. Remy Martin*, 756 F.2d at 1531; *Gibson Brands, Inc.,* 2016 WL 7479317, at *4–5; *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368, at *3.

132. DAL refused to consent in writing to 4 Marriott registrations in Colombia and Hong Kong. Ex. 20, Plumpe Report, ¶ 149; Ex. 96, Answer to First Amended Counterclaim, Dkt. 48, ¶ 22; Ex. 24, DAL's Responses to Second Set of RFAs, Nos. 535-38.

**RESPONSE 132:**

**Undisputed**. Though Delta further notes that, despite its requests, Marriott *refused* to give consents a consent for *any* Delta applications..

133. Marriott has [redacted] Marriott lost around the world, including in Colombia, Egypt, and the U.S. based on DAL's refusals to consent, DAL's filing of opposition/cancellation proceedings against Marriott's applications/registrations for DELTA HOTELS marks, and DAL's filing of this litigation. Ex. 20, Plumpe Report, ¶ 11.

**RESPONSE 133:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record. As an initial matter, the cited portion of the report of Marriott's expert, John Plumpe, does not state that [redacted]. Dkt. 479-15, ¶ 11.

Additionally, [redacted], as further detailed in Delta's July 14, 2023 Motion to Exclude John Plumpe. Dkt. 460; Dkt. 479-15

Additionally, Marriott's only evidence in support of its asserted lost profits is Mr. Plumpe's report, but Mr. Plumpe testified that he [redacted]. Ex. 33 at 210:9-211:20, 303:12-306:8; *see also* Ex. 326; Dkt. 462 at 16-19. Marriott produced no evidence showing [redacted] were caused solely by [redacted]. *Triad Drywall, LLC v. Bldg. Materials Wholesale, Inc.*, 300 Ga. App. 745, 746, 686 S.E.2d 364, 365 (2009) (holding that under OCGA § 13–6–8, "remote and consequential damages, such as the claim of lost profits in this case, must be 'traced solely to the breach' and must be capable of 'exact computation'"); *Lowe's Home Centers, Inc. v. Gen. Elec. Co.*, 381 F.3d 1091, 1096 (11th Cir. 2004), certified question answered, 279 Ga. 77, 608 S.E.2d 636 (2005) (holding that "lost profits of a commercial venture are not recoverable as they are too speculative, remote, and uncertain,"); *Super98, LLC v. Delta Air Lines, Inc.*, No. 1:16-CV-1535-LMM, 2018 WL 2287129, at *5 (N.D. Ga. Mar. 7, 2018) (holding that "[u]nder Georgia law, profits lost on

collateral business opportunities are 'consequential' damages", and the Georgia UCC does not allow recovery for consequential damages).

134. Marriott has incurred legal expenses defending its rights worldwide against DAL's proceedings, including [redacted] and counting in this litigation alone. *Id.*

**<u>RESPONSE 134</u>:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation. Aside from the say-so Marriott's expert John Plumpe (whom Delta moved to exclude from testifying), Marriott does not cite any evidence to support this statement. Ex. 357 at 44; Dkt. 460. And as Delta's expert Julie Davis noted, [redacted] Ex. 357, at 44; Dkt. 479-15.

Delta also objects to this statement as not material to Marriott's Summary Judgment Motion, as such expenses are not available as damages under Georgia law; *Doe v. Drummond Co.,* 782 F.3d 576, 593 n.24 (11th Cir. 2015) (explaining that holding "defendant civilly liable for all damages, including those on foreign soil…could result in the type of impermissible interference with foreign sovereigns that the presumption against extraterritoriality prohibits). Additionally, Delta objects to this statement as not material to the extent Mr. Plumpe's calculations are based

on legal expenses in jurisdictions where Delta has not opposed Marriott's trademark efforts, and ignore any potential mitigation Marriott could have engaged in by ceasing its use of the allegedly infringing trademarks and continuing to open new hotels.

135. The parties' Hong Kong law experts agree that the [redacted] Ex. 55, Houghton Depo. at 25:8-13; Ex. 97, Tam Depo. at 100:3-5.

**RESPONSE 135:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, to the extent that Marriott failed to provide the cited portion of Mr. Houghton's deposition as part of Exhibit 55. Delta further clarifies that Mr. Houghton testified he [redacted]. Ex. 317 at 25:8-13; *see also* Ex. 36, ¶113 [redacted] *Bond Tak (Holdings Ltd v King Fame Trading Ltd* (2020) HKCFI 1509, at § 25(3)

136. The only question that divides the parties is whether the obligations Paragraph 6 imposes on DAL apply worldwide or are limited to Hong Kong and China. Ex. 52, Houghton Rebuttal Report, ¶¶ 58-59; Ex. 55, Houghton Depo. at 93:3-94:6.

**RESPONSE 136:**

**Disputed.** Delta objects to the extent the asserted statement is not one of fact but rather is attorney argument.

137. The parties' Hong Kong law experts agree that [redacted] Ex. 54, Houghton Report, ¶¶ 37.4, 88; Ex. 55, Houghton Depo. at 151:13-25; Ex. 97, Tam Depo. at 104:3-23.

**<u>RESPONSE 137</u>:**

**Disputed.** Delta does not dispute that the parties' experts agree that [redacted] Dkt. 479-22, ¶¶ 37.4, 88; Dkt. 479-23 at 151:13-25; Dkt. 480-29 at 104:3-23. However, as Mr. Houghton explained, [redacted] Ex. 36, at ¶ 52 (citing *Lewiston* Treatise). To the extent Marriott asserts the parties' experts agree that [redacted] that assertion is unsupported by Marriott's citation. Based on Hong Kong law, Delta's expert Anthony Houghton [redacted] Dkt. 479-22, ¶ 41 (citing Chitty on Contracts §15-056 ("The 'available background' is limited to facts that were known or reasonably available to both (or all) of the parties

to the contract at or before the time of entry into the contract"); *see also Channel Green Ltd v Huge Grand Ltd* [2015] 1 HKLRD 655 at para. 34-37 (evidence that "merely reflect[s] the aspirations of one or other of the parties" is irrelevant and inadmissible under Hong Kong law).

138. Marriott has been prejudiced in the amount of at least [redacted] Ex. 20, Plumpe Report, Tabs 8-9.

**RESPONSE 138:**

**Disputed.** Delta objects to the extent the asserted statement is not one of fact but rather is attorney argument. As an initial matter, this statement is not supported by Marriott's citation to Tabs 8 and 9 of Mr. Plumpe's report. Delta also objects to the extent that Marriott's citation does not support this statement. LR 56.1(B)(2)(a)(2)(iii). Other than the assertion of its expert John Plumpe (whom Delta moved to exclude from testifying), Marriott provides no factual evidence to support its claim that it was "prejudiced" by Delta. Dkt. 462. Marriott intentionally chose to acquire the "Delta" brand, expand it to the U.S. under the DELTA HOTELS marks, and change its logo to mimic Delta's, and in fact, Marriott [redacted] Ex. 2 at '885; Ex. 22 at 56:18-58:3; Ex. 9 at 3-5; Ex. 54 at '177. Moreover, Marriott continued to open hotels after Delta objected, and there is no evidence Marriott would have changed anything had Delta objected earlier. Ex. 54 at '181; Ex. 52

In any event, this statement is not material to Marriott's Summary Judgment Motion because it is legally irrelevant to the extent Mr. Plumpe's calculation of "prejudice" is based on expenditures made outside of the proper delay period, which began in [redacted] when Delta first discovered Marriott's infringing acts in the U.S. and promptly communicated its objections to Marriott [redacted]. Ex. 51, DELTA_00023711; Ex. 357 (J. Davis Rebuttal Report) at 56-59; *Angel Flight*, 424 F. Supp. 2d at 1370 (delay period starts when "the plaintiff 'knows or should know she has a provable claim for infringement'" and stops when "the defendant is notified of plaintiff's objections"). This statement is also immaterial to the extent it includes expenditures for projects outside of the United States. Dkt. 479-15 ¶154; *Drummond Co.,* 782 F.3d at 593 n.24 (explaining that holding "defendant civilly liable for all damages, including those on foreign soil…could result in the type of impermissible interference with foreign sovereigns that the presumption against extraterritoriality prohibits).

139. [redacted] Ex. 12, Silverman Depo. at 242:20-243:9, 258:6-13, 272:21-273:14.

**RESPONSE 139:**

**Disputed.** Delta objects that Marriott's citation does not support this statement, and is directly refuted by the undisputed evidentiary record. Mr.

Silverman did not testify that [redacted]. Dkt. 479-10, at 242:20-243:9, 258:6-13, 272:21-273:14. This statement is also directly refuted by the undisputed record. [redacted] Ex. 42 at ’689. Moreover, Marriott’s statement also is directly refuted by the fact that the [redacted] Ex. 42 at ‘688; Ex. 358. [redacted] The record also shows [redacted] changing the logo to more closely match Delta’s, and expanding to the U.S. under the DELTA HOTELS Marks. Ex. 2 at ’885; Ex. 22 at 56:18-58:3; Ex. 9 at 3-5; Ex. 54 at ‘177; Dkt. 3174-80 (Ex. K to Schoettelkotte Daubert); *see also* Ex. 353 (MARRIOTT0015454 at 0015470).

Delta also objects to this statement as not material to Marriott's Summary Judgment Motion to the extent that a party's subjective understanding of a contract is irrelevant for purposes of interpreting the meaning of a contract under Hong Kong law: Dkt. 479-22, ¶70, 73 (citing *Chevalier (Aluminium Engineering) Hong Kong Ltd v Sun Properties Co Ltd* [2020] HKCFI 1313).

140. Mr. Arnold testified that DAL [redacted] Ex. 46, 7/7/23 Arnold Depo. at 367:22-368:13.

**<u>RESPONSE 140</u>:**

**Disputed.** Delta objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record. Marriott's partial quotes from Mr. Arnold's deposition transcript are misleading and do not support Marriott's contention. Mr. Arnold did not testify that [redacted] Dkt. 479-18 at 367:22-368:13.

Delta further objects to this statement as unsupported by Marriott's citation, and directly refuted by the undisputed evidentiary record to the extent Marriott contends Mr. Arnold's testimony that [redacted] referred to Paragraph 6, as the nature of the discussions were entirely consistent with Paragraph 9. Ex. 48, ¶9. Paragraph 9 is the only

provision in the Agreement that references other jurisdictions, and the parties agree that Paragraph 9 is *unenforceable* and *not legally binding* under Hong Kong law. Dkt. 479-07, ¶¶ 65-66; Dkt. 479-22, ¶ 21; 479-23, (Houghton Depo.) at 110:24-111:17; Ex. 311 (Moran Depo.), at 266:20-25 (Paragraph 9 [redacted]

The undisputed record shows that Delta engaged in good faith discussions with Marriott, and throughout those discussions, the parties repeatedly emphasized that they [redacted], Dkt. 480-24 at '603, [redacted] *Id.* at '601. Delta also noted that [redacted] Dkt. 480-25 at '596.

Marriott likewise emphasized that it [redacted] and did not reference Paragraph 6 in its communications. Dkt. 480-24 at '601; *see also, e.g., id.* at '599 [redacted]

In any event, this statement is not material to Marriott's laches or related affirmative defenses as Delta's claims relate to Marriott's conduct in the United States, not foreign jurisdictions. *See also, e.g.*, *Abitron Austria,* 2023 WL 4239255 at *2 (holding that Lanham Act provisions "are not extraterritorial and that they extend only to claims where the claimed infringing use in commerce is domestic"); *Id.* at *8 ("In nearly all countries, including the United States, trademark law is territorial," a "principle [that] has long been enshrined in international law."); *E. Remy Martin*, 756 F.2d at 1531 (holding it is error for district court to rely on foreign use, goodwill or rights); *Gibson Brands, Inc.*, 2016 WL 7479317 at *4 (laches period began once use in U.S. began, not "when a potentially infringing product is identified extraterritorially"); *Jarabes Veracruzanos, Inc.,* 2016 WL 7486368 at *3 (rejecting knowledge of foreign use as relevant to laches and acquiescence). Nor is it material to Marriott's counterclaim and defenses relating to the Agreement, as the undisputed facts and applicable law establish that the Agreement is unambiguously limited to Hong Kong and China. *L Schuler AG v Wickman Machine Tool Sales Ltd* [1974] AC 235 at 261, Ex. 221 (evidence of subsequent conduct inadmissible for purposes of interpreting a contract under Hong Kong law); *Ltd v Yatin Development Ltd* (2008) 11 HKCFAR 222 at §22; *Unruh v Seeberger & Anor* [2007] 2 HKC 609 at 652A-D

at §79(1)-(2) (estoppel by convention requires a "common assumption" shared by the parties that is "clear and unequivocal").

141. The parties' Hong Kong law experts agree that [redacted] Ex. 9, Tam Report ¶¶ 36, 66; Ex. 52, Houghton Rebuttal, ¶ 66; Ex. 55, Houghton Depo. at 214:17-21.

**RESPONSE 141:**

**Disputed.** Delta does not dispute that the parties' experts agree [redacted] But to the extent Marriott suggests that the first sentence of Paragraph 9 in any way shows that the obligations imposed in other paragraphs of the Agreement are to apply outside of Hong Kong and China, this suggestion is wholly unsupported by Marriott's cited evidence and refuted by the Agreement.

Dated: August 4, 2023

*/s/ Samuel R. Rutherford*
SAMUEL R. RUTHERFORD
Georgia Bar No. 159079
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000

*/s/ Dale M. Cendali*
DALE M. CENDALI
(Admitted *Pro Hac Vice*)
CLAUDIA RAY
(Admitted *Pro Hac Vice*)
SHANTI SADTLER CONWAY
(Admitted *Pro Hac Vice*)

Fax: (404) 881-7777
sam.rutherford@alston.com

DIANA M. TORRES
(Admitted *Pro Hac Vice*)
ALLISON W. BUCHNER
(Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2049 Century Park East
Los Angeles, CA 90067
Tel.: (310) 552-4200
Fax: (310) 552-5900
diana.torres@kirkland.com
allison.buchner@kirkland.com

ROBIN ANN MCCUE
(Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, IL 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200
robin.mccue@kirkland.com

MARY MAZZELLO
(Admitted *Pro Hac Vice*)
JOHANNA SCHMITT
(Admitted *Pro Hac Vice*)
JONATHAN D. BRIT
(Admitted *Pro Hac Vice*)
JUSTIN TAYLOR
(Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
Fax: (212) 446-6460
dale.cendali@kirkland.com
claudia.ray@kirkland.com
shanti.conway@kirkland.com
mary.mazzello@kirkland.com
johanna.schmitt@kirkland.com
jonathan.brit@kirkland.com
justin.taylor@kirkland.com

LAUREN J. SCHWEITZER
(Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Tel.: (213) 680-8400
Fax: (213) 680-8500
lauren.schweitzer@kirkland.com

*Attorneys for Plaintiff and Counterclaim Defendant*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Northern District of Georgia Local Rules 5.1C and 7.1D, I hereby certify that the foregoing was prepared in Times New Roman 14-point font, double-spaced, with a top margin of not less of 1.5 inches and a left margin of not less than 1 inch.

This 4th day of August, 2023

/s/ Dale M. Cendali
DALE M. CENDALI
(Admitted *Pro Hac Vice*)
dale.cendali@kirkland.com

## CERTIFICATE OF SERVICE

Counsel for Plaintiff and Counterclaim Defendant Delta Air Lines, Inc. hereby certifies that on August 4, 2023 the foregoing DELTA'S RESPONSE TO MARRIOT'S STATEMENT OF UNDISPUTED MATERIAL FACTS was filed electronically with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all attorneys of record.

Dated: August 4, 2023

*/s/ Samuel R. Rutherford*
SAMUEL R. RUTHERFORD
Georgia Bar No. 159079
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777
sam.rutherford@alston.com

DIANA M. TORRES
(Admitted *Pro Hac Vice*)
ALLISON W. BUCHNER
(Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
2049 Century Park East
Los Angeles, CA 90067
Tel.: (310) 552-4200
Fax: (310) 552-5900
diana.torres@kirkland.com
allison.buchner@kirkland.com

ROBIN ANN MCCUE
(Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle

*/s/ Dale M. Cendali*
DALE M. CENDALI
(Admitted *Pro Hac Vice*)
CLAUDIA RAY
(Admitted *Pro Hac Vice*)
SHANTI SADTLER CONWAY
(Admitted *Pro Hac Vice*)
MARY MAZZELLO
(Admitted *Pro Hac Vice*)
JOHANNA SCHMITT
(Admitted *Pro Hac Vice*)
JONATHAN D. BRIT
(Admitted *Pro Hac Vice*)
JUSTIN TAYLOR
(Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
Fax: (212) 446-6460
dale.cendali@kirkland.com
claudia.ray@kirkland.com
shanti.conway@kirkland.com
mary.mazzello@kirkland.com
johanna.schmitt@kirkland.com
jonathan.brit@kirkland.com

Chicago, IL 60654
Tel.: (312) 862-2000
Fax: (312) 862-2200
robin.mccue@kirkland.com

justin.taylor@kirkland.com

LAUREN J. SCHWEITZER
(Admitted *Pro Hac Vice*)
**KIRKLAND & ELLIS LLP**
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Tel.: (213) 680-8400
Fax: (213) 680-8500
lauren.schweitzer@kirkland.com

*Attorneys for Plaintiff and Counterclaim Defendant*